UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DANYELL THOMAS,  RASHAUN F. FRAZER ,
ANDRAE WHALEY, AND ELENI MIGLIS,
INDIVIDUALLY AND ON BEHALF OF ALL OTHER
EMPLOYEES SIMILARLY SITUATED,

                                        Plaintiffs,

                    - against -

BED BATH AND BEYOND, INC.

                                        Defendants.

Case No.

**COLLECTIVE & CLASS
ACTION COMPLAINT AND
JURY TRIAL DEMAND**

Plaintiffs Danyell Thomas ( "Thomas") ,  Rashaun F. Frazer ( "Frazer"), Andrae Whaley

(" Whaley") and Eleni Miglis ("Miglis") ("Plaintiffs" collectively) , on their own behalf and on

behalf of all others similarly situated, by and through their undersigned attorneys, Hang &

Associates, PLLC, hereby file this complaint against the Defendant BED BATH AND BEYOND,

INC. ( "Bed Bath and Beyond" or "Defendant"), allege and show the Court the following:

## INTRODUCTION

1.  This is an action brought by Plaintiffs on their own behalf and on behalf of similarly

    situated employees, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201

    et seq. ("FLSA") and the New York Labor Law, arising from Defendants' various willful

    and unlawful employment policies, patterns and/or practices.

2.  Upon information and belief, Defendant has willfully and intentionally committed

    widespread violations of the FLSA and NYLL by engaging in a pattern and practice of

failing to properly pay their employees, including Plaintiffs overtime compensation for all hours worked over forty (40) each workweek.

3.  Upon information and belief, during the relevant period, Defendant classified Plaintiffs and all other members of the proposed Classes, at all times in which they worked as Department Manages ("DM") as non-exempt employee under the FLSA and acknowledged their entitlement to overtime for hours they worked over forty in a work week.

4.  Plaintiffs and the similarly situated DMs performed similar job duties, were compensated pursuant to centralized pay policies, and were subjected to similar pay practices while employed as DMs at BED BATH AND BEYOND.

5.  Upon information and belief, Defendant paid Plaintiffs and all other members of the proposed Classes, at all times in which they worked as Department Manages ("DM") under the same centralized and uniformly applied compensation model known as the "Fluctuating Work Week"[1] ("FWW").

6.  Under 29 C.F.R. § 778.114, employers may use the FWW method only if all of the following five condition are met: 1) the employee's hours fluctuate from week to week; 2) the employee receives a fixed weekly salary which remains the same regardless of the number of hours the employee works during the week (excluding overtime premiums); 3) the fixed amount is sufficient to provide compensation at a regular rate not less than the legal minimum wage; 4) the employer and employee have a clear mutual understanding that the employer will pay the employee a fixed salary regardless of the number of hours

---

[1] None of the Plaintiffs in the case understood how their compensation, especially their overtime pay, was calculated. They only know that their overtime compensation would be calculated under a diminished rate, rather than under the normal 1.5 overtime premium rate. Plaintiffs made inquiries, to Defendant's Human Resources Department, about the calculation of their compensation but failed to receive any satisfactory explanation.

worked; and 5) the employee receives a fifty percent (50%) overtime premium in addition to the fixed weekly salary for all hours worked in excess of 40 during the week.

7.  Because Defendant cannot meet all the above pre-requisite to adopt the FWW, Defendant's use of FWW was improper and unlawful and such unlawful practice resulted in insufficient overtime compensation for DMs.

8.  Upon information and belief, Plaintiffs' weekly work hours as DMs did not meaningfully fluctuate, their scheduled work hours and the actually hours they worked, including the numbers of overtime hours, were largely consistent from week to week.

9.  Because the DMs' weekly work hours were substantially the same from week to week, Defendant unlawful applied the FWW model to avoid paying the DMs their overtime compensation under the regular 1.5 overtime premium.

10. Upon information and belief, despite of the representation to the DMs that the base salary was a fixed lump sum compensation for the work week regardless of the hours they worked, Plaintiffs were informed that they would not be paid for the hours if they failed to work the full scheduled hours of work and they do not have available "paid-absence" hours (paid vacation or sick leave ) to make up the difference. For instance, if a DM is scheduled to work 47.5 hours per week and she only worked 40 hours due to personal emergency and she already exhausted all the paid leave to make up the 7.5 hours difference, she would not be able to receive the full promised fix base salary for that week.

11. As a result, Defendant and its employees did not have a clear mutual understanding that Bed Bath and Beyond will pay them a fixed salary regardless of the number of hours worked.

12. For the same reason, DMs were not promised a fixed weekly salary which remains the same regardless of the number of hours they works during the week.

13. Upon information and belief, holiday pay is paid as a set amount basing on the hours scheduled for that day at a rate calculated using the hours worked for the two-week work period, without regard to whether the DM worked overtime hours, and/or the number of overtime hours worked for the specific week that the holiday pay accrued.

14. Upon information and belief, in addition to the supposedly fixed base salary, Defendant paid its employee additional "Referral Bonus" at a set amount if an employee referred a DM candidate to the Defendant and Defendant ultimately hired that Candidate and such bonus would be part of the employee's salary and renders that employee's salary for that period different from the others.

15. Plaintiff Miglis and the similarly situated Assistant Managers ("AM") performed similar job duties, were compensated pursuant to centralized pay policies, and were subjected to similar pay practices while employed as AMs at BED BATH AND BEYOND.

16. Upon information and belief, during the relevant period, Defendant willfully and intentionally misclassified Plaintiff Miglis and all other members of the proposed Classes as salaried, exempt employees, at all times in which they worked as AM. The primary duties of these employees do not fall under any exemption, and Defendant's improper classification resulted in the failure to compensate its AMs with overtime pay as required under applicable federal law.

17. Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants: (1) unpaid overtime wages, (2) liquidated damages, (3) prejudgment and post-judgment interest; and (4) attorneys' fees and costs.

18. Plaintiffs further allege pursuant to New York Labor Law § 650 et seq. and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") that they are entitled to recover from the Defendants: (1) unpaid overtime compensation, (2) compensation for failure to provide proper wage notice at the time of hiring and failure to provide proper paystubs in violation of the NYLL (3) liquidated damages equal to the sum of unpaid overtime pursuant to the NY Wage Theft Prevention Act; (4) prejudgment and post-judgment interest; and (5) attorney's fees and costs.

## JURISDICTION AND VENUE

19. This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331, and has supplemental jurisdiction over the New York Labor Law claims pursuant to 28 U.S.C. § 1367(a).

20. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b) and (c), because Defendants conduct business in this District, and the acts and omissions giving rise to the claims herein alleged took place in this District.

## PLAINTIFFS

21. Plaintiff Danyell Thomas ("Thomas") is a resident of Brooklyn, NY and was employed by Bed Bath and Beyond Inc. as a DM from December 2010 to May, 11, 2015, she first worked at Defendant's store located at 620 6th Ave, New York, NY 10011-10065 ( Store # 42) and then was transferred to work at Defendants' store located at 410 E. 61 St. New York, NY 10065 ( Store # 361) in June 2011 and worked at this store location until the end of her employment.

22. Plaintiff Rashaun F. Frazer ("Frazer") is a resident of Nassau County, NY and was employed by Bed Bath and Beyond Inc. as a DM at Defendant's store located at 410 E. 61 St. New York, NY 10065 ( Store # 361) from October 2011 to January 2015.

23. Plaintiff Andrae Whaley is a resident of New York, NY and was employed by Bed Bath and Beyond Inc. as a DM at Defendant's store located at 620 6th Ave, New York, NY 10011-10065 ( Store # 42) from July 17, 2011 to July 23, 2016.

24. Plaintiff Eleni Miglis ("Miglis") is a resident of Nassau County, NY and was employed by Bed Bath and Beyond Inc. from February 2008 to March 15, 2015. She first worked as a DM from 2008 to 2009 and then as an AM from 2010 to March 15, 2015. Miglis initially worked at Defendant's store located at 3640 Long Beach Rd, Oceanside, NY 11572, she then transferred, in 2011, to work at Defendants' store located at Americana Manhasset, 2103 Northern Blvd, Manhasset, NY 11030.

## DEFENDANT

25. Defendant, Bed Bath & Beyond, Inc. is a national chain of domestic merchandise retail stores with stores across the states and has its principal executive offices at 650 Liberty Avenue, Union, New Jersey 07083.

26. Upon information and belief, Defendants had gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year. Upon information and belief, Defendants purchased and handled goods moved in interstate commerce.

27. At all times relevant herein, Defendants were, and continue to be, an "enterprise engaged in commerce" within the meaning of FLSA.

28. At all relevant times, the work performed by Plaintiffs were directly essential to the business operated by Defendants.

29. At all relevant times, Defendant knowingly and willfully failed to pay Plaintiffs their lawfully earned  overtime  compensation, and failed to provide them a wage notice at the time of hiring in violation of the NYLL.

30. Plaintiffs have fulfilled all conditions precedent to the institution of this action and/ or conditions have been waived.

### STATEMENT OF FACTS

31. Defendant committed the following alleged acts knowingly, intentionally and willfully.

*Facts Applicable to All Plaintiffs[2] Worked as DM*

32. The tasks that Plaintiffs regularly performed as a DM include but are not limited to: receive, process and put away freight, back stock freight, process damaged goods, stock/ sale floor rotations, building fixtures, registering and escorting brides, putting out displays and merchandising, dusting, opening and closing registers, ringing and doing returns, replenish merchandises at the sales floor, clean, organize and fixing stockroom, gift packaging, getting together orders for online pickup, packing, sorting and shipping damaged goods (Plaintiffs have to clean up the returned goods and either send back to the vendor or reprice it and resell it), going outside to shipping trailers and getting items to replenish the store with, mopping and sweeping the store floor, clean the bathroom, organize the sales floor, order merchandise, handle customers and customer service issues.

33. Plaintiffs' primary duties as DM did not include: hiring, firing, managing or disciplining other employees.

34. Plaintiffs' duties as DM did not differ substantially from the duties of normal hourly paid

---

[2] Miglis's employment with Defendant as a DM (2008-2009) is outside the relevant period for this action.

store employees, who also perform many of the responsibilities previously described.

35. Plaintiffs did not exercise a meaningful degree of independent discretion with respect to the exercise of their duties.

36. Consistent with Defendant's policy and pattern or practice, Plaintiffs regularly worked in excess of 40 hours per workweek without being paid at premium overtime rate 1.5 times of their respective regular rate of compensation for the hours they worked in excess of 40 per workweek.

37. Defendant knew that the improper payment of overtime pay, and failure to provide proper required wage notice at the time of hiring and the proper wage statement for each pay period would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

*Facts for Individual Plaintiffs Worked as DM*

*Plaintiff Thomas*

38. From December 2010 to May 2011, Thomas was hired by Defendant to work as a DM at Defendants store located at 620 6th Ave, New York, NY 1001110065 ( Store # 42), Thomas was later transferred to work as a DM at Defendants' store located at 410 E. 61 St. New York, NY 10065 ( Store # 361) in June 2011.

39. Thomas worked five days a week with one day off on one of the five week days and the other day off on either Saturday or Sunday.

40. Thomas normally worked any one of the following three shifts each work day: 7:00 am to 5: 30 pm (early shift), 10:00 am to 8: 30 pm (mid-shift) and 1:00 pm to 11: 30 pm (late shift), she normally took an one-hour break each day, Thomas therefore worked about forty-seven and a half ( 47.50) hours per week.

41. Thomas's work hours were largely the same throughout her employment with the Defendant except for busy holiday seasons, for about two weeks around Christmas she had to work for about half an hour extra beyond the scheduled shift and her weekly working hours for those two weeks are about fifty hours (50).

42. Thomas's starting base salary was about $55,000 and that was raised to $58,000 at the time of her departure, it was Thomas' understanding that she had to work the full 47.5 hours, unless she has available "paid absence" hours, to be paid the full weekly base salary and the hours she worked in excess of forty were paid at an overtime rate calculated according to Defendants' FWW compensation model.

*Plaintiff Frazer*

43. Frazer was employed by Bed Bath and Beyond Inc. as a DM at Defendant's store located at 410 E. 61 St. New York, NY 10065 ( Store # 361) from October 2011 to January 2015.

44. Frazer worked five days a week with normally Wednesday and Sunday off.

45. Frazer normally worked any one of the following three shifts and the schedule for each shift is: 7:00 am to 5: 30 pm (early shift), 10:00 am to 8: 30 pm (mid-shift) and 1:00 pm to 11: 30 pm (late shift). Despite of the scheduled shift hours, Frazer actually worked from 7:00 am to 7: 00 pm for the early shift, and from 10:00 am to 9: 00 pm for the mid-shift. Most of the week Frazer were assigned to work the morning shift, sometimes he would work four (4)  morning shifts and one late shift in a week, regardless of the shifts arrangement for the week, he only work one late shift every week. He normally took a one-

hour break each day, Frazer therefore worked about fifty-one and a half (51.50) hours per week[3].

46. Frazer's starting base salary was about $56,500 and that was $57,600 at the time of his departure, it is Frazer's understanding that he had to work the full scheduled hours, unless he has available "paid absence" hours, to be paid his base salary and the hours he worked in excess of forty were paid at the overtime rate calculated according to Defendant's FWW compensation model.

*Plaintiff Whaley*

47. Whaley was employed by Bed Bath and Beyond Inc. as a DM at Defendant's store located at 620 6th Ave, New York, NY 10011-10065 ( Store # 42) from July 17, 2011 to July 23, 2016[4].

48. Whaley worked five days a week with normally Wednesday and Sunday off.

49. Whaley normally worked any one of the following three shifts and the schedule for each shift is: 7:00 am to 5: 30 pm (early shift), 10:00 am to 8: 30 pm (mid-shift) and 1:00 pm to 11: 30 pm (late shift). Despite of the scheduled shift hours, Whaley actually worked from 7:00 am to 6: 30 pm for the early shift, and from 10:00 am to 9: 30 pm for the mid-shift. Whaley normally would work three early shifts, one mid-shift and one late shift for a work week and he normally took a one-hour break each day. Whaley therefore worked about fifty-one and a half (51.50) hours per week.

50. Whaley's starting base salary was about $63,000 and that was about $67,000 at the time of his departure, it is Whaley's understanding that he had to work the full scheduled 47.5

---

[3] Two morning shifts, two mid shifts and one late shift for a workweek.
[4] Upon information and belief, on or about March 2015, Defendant changed its compensation practice for the DMs and this complaint does not seek claims rise after March 2015.

hours, unless he has available "paid absence" hours, to be paid his full base salary and the hours he worked in excess of forty were paid at the overtime rate calculated according to Defendant's FWW compensation model.

*Facts for Individual Plaintiff Worked as AM*

*Plaintiff Eleni Miglis*

51. Plaintiff Miglis worked for the Defendant as an AM from 2010 to March 15, 2015 first at Defendant's store located at 3640 Long Beach Rd, Oceanside, NY 11572, she then transferred, in 2011, to work at Defendants' store located at Americana Manhasset, 2103 Northern Blvd, Manhasset, NY 11030.

52. The tasks that Miglis regularly performed as an AM were substantially the same with her responsibilities as a DM as we previously described, in addition, as an AM, she had access to email, was able to approve merchandise orders and order supplies, and was able to close the stores.

53. Miglis worked five days a week with one day off on one of the five week days and the other day off on either Saturday or Sunday.

54. Miglis normally worked any one of the following four (4) shifts and the schedule for each shift is: 6:00 am to 4: 00 pm (early shift), 7:00 am to 5: 00 pm (mid-shift), 8:00 am to 6: 00 pm (late shift) and 1:00 pm to 10:00 (closing shift). Despite of the scheduled shift hours, Miglis in fact generally worked from 6:00 am to 6: 00 pm for the early shift, from 7:00 am to 7: 00 pm for the mid-shift, from 8:00 am to 8: 00 pm for the late shift and from 1:00 pm to 1:00 am for the night shift. Miglis normally took a half-hour break each day, she therefore worked at least about fifty-seven and a half (57.50) hours per week.

55. Despite of the fact that her responsibilities largely were the same as a DM, Plaintiff was classified as exempted employee when she worked as an AM and did not receive any overtime compensation for the hours she worked over forty.

56. Because Miglis was wrongfully classified as exempted employee, she received fixed annual salary regardless of the hours she worked.

57. Defendant committed the following alleged acts knowingly, intentionally and willfully.

58. At all relevant times, Plaintiffs, FLSA Collective Plaintiffs and Class members regularly worked over forty (40) hours per week, but Defendants failed to pay them the proper overtime compensation in violation of the FLSA and NYLL.

59. Defendants knew that the improper payment of overtime would economically injure Plaintiffs and the DM Class Members by their violation of federal and state laws.

60. While employed by Defendants, Plaintiff Miglis and the AM Class Members were not actually exempted under federal and state laws requiring employers to pay employees overtime.

61. Defendants did not provide Plaintiff and other Class members with proper written notices about the terms and conditions of their employment upon hire in relation to their rate of pay, regular pay cycle and rate of overtime pay.

62. At no time during the relevant time periods did Defendants provide Plaintiffs or Class members with proper wage and hour notices or wage statements as required by NYLL.

63. Defendants committed the foregoing acts against the Plaintiffs, the FLSA Collective Plaintiffs, and the Class.

## COLLECTIVE ACTION ALLEGATIONS

64. Pursuant to 29 U.S.C. §207, Plaintiffs seek to prosecute his FLSA claim as a collective action on behalf of all persons who are or were formerly employed by Defendant as a DM and/or AM and other similarly situated current and former employee holding comparable positions but different titles, at any time from October 2013 to the entry of judgment in this case (the "Collective Action Period").

65. Defendant is liable under the FLSA for, *inter alia,* failing to properly compensate Plaintiffs, other DMs and AMs.

66. There are many similarly situated current and former Bed Bath and Beyond DMs and AMs (and other employees holding comparable positions but different titles) who have been underpaid in violation of the FLSA and who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.  This, Notice should be sent to the FLSA Collective pursuant to 29 U.S.C. §216 (b).

67. Those similarly situated employees are known to Defendant, is readily identifiable and can be located through Defendants' records.

68. Defendant knowingly and willfully operated its business with a policy of not making proper overtime payment to Plaintiffs and other similarly situated employees either the FLSA overtime rate (of time and one-half), or the New York State overtime rate (of time and one-half), in violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations.

69. Upon information and belief, the Collection Action Members are so numerous the joinder of all members is impracticable. The identity and precise number of such persons are

unknown, and the facts upon which the calculations of that number may be ascertained are presently within the sole control of the Defendants. Upon information and belief, there are more than forty (40) Collective Action members, who have worked for or have continued to work for the Defendants during the Collective Action Period, most of whom would not likely file individual suits because they fear retaliation, lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiffs submit that this case should be certified as a collection action under the FLSA, 29 U.S.C. §216(b).

70. Plaintiffs will fairly and adequately protect the interests of the Collective Action Members, and have retained counsel that is experienced and competent in the field of employment law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

71. This action should be certified as collective action because the prosecution of separate action by individual members of the collective action would risk creating either inconsistent or varying adjudication with respect to individual members of this class that would as a practical matter be dispositive of the interest of the other members not party to the adjudication, or subsequently impair or impede their ability to protect their interests.

72. A collective action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as collective action.

73. Questions of law and fact common to members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the questions of fact common to Plaintiffs and other Collective Action Members are:

   a. Whether the Defendants employed Collective Action members within the meaning of the FLSA;

   b. Whether the Defendant satisfied all the pre-requisites to use the FWW compensation model

   c. Whether the Defendant's FWW compensation model was in compliance with the law if Defendant can properly adopt the FWW

   d. Whether the Defendant failed to pay the Collective Action Members proper overtime wages for all hours worked above forty (40) each workweek in violation of the FLSA and the regulation promulgated thereunder;

   e. Whether the Defendant failed to comply with the notice and record keeping requirements of the FLSA;

   f. Whether the Defendant has a policy of misclassifying AMs as exempt from the coverage of the overtime provisions of the FLSA;

   g. Whether the Defendant's violations of the FLSA are willful as that terms is used within the context of the FLSA; and,

   h. Whether the Defendant is liable for all damages claimed hereunder, including but not limited to compensatory, punitive, and statutory damages, interest, costs and disbursements and attorneys' fees.

74. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

75. Plaintiffs and others similarly situated have been substantially damaged by Defendant's unlawful conduct.

## CLASS ACTION ALLEGATIONS

76. Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("F. R. C. P.") Rule 23, on behalf of all non-exempt persons employed by Defendants Bed Bath and Beyond, Inc. on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

77. All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held, and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants.  Notice can be provided by means permissible under said F.R.C.P 23.

78. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parities and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than forty (40) members of the class.

79. Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each

member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendant, as alleged herein, of failing to pay overtime compensation. Defendant's corporation wide policies and practices, including but not limited to their failure to provide proper wage notice at the time of hiring, affected all Class members similarly, and Defendant benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

80. Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in representing plaintiffs in both class action and wage and hour employment litigation cases.

81. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where individual Class members lack the financial resources to vigorously prosecute corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. The losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, thus the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The

adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

82. Upon information and belief, defendant implemented its unlawful wage and hour practice in all of its stores throughout the state in violation of the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

83. There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a. Whether Defendant employed Plaintiffs and the Class within the meaning of the New York law;

b. Whether Defendant failed to properly pay Plaintiffs and Class members the New York overtime rate for all hours worked in excess of 40 hours per week;

c. Whether Defendant maintained a policy, pattern and/or practice of willfully misclassifying Plaintiff Miglis and the AM Class/Collective Action Members as exempt from the requirements of the NYLL;

d. Whether the Defendant failed to fully comply with the notice and record keeping requirements of NYLL §§198(b) and 198(d);

e. At what common rate, or rates subject to common method of calculation were and are the Defendants required to pay the Class members for their work.

**STATEMENT OF CLAIM**
**COUNT I**

**[Violations of the Fair Labor Standards Act—Overtime Wage**

**Brought on behalf of the Plaintiffs and the FLSA Collective]**

84. Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

85. The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 USC §207(a).

86. The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 USC §216(b).

87. Defendant's unlawful application of the FWW to pay DMs resulted in improper overtime payment to Plaintiffs and the FLSA Collective Action Members in violation of the FLSA.

88. Defendant's unlawful misclassification of AMs resulted in none payment of overtime to Plaintiff Miglis and the FLSA Collective Action Members in violation of the FLSA.

89. At all relevant times, Defendant had, and continue to has, a policy of practice of improper pay of overtime compensation to Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, et seq., including 29 U.S.C. §§207(a)(1) and 215(a).

90. The FLSA and supporting regulations required employers to notify employees of employment law requires employers to notify employment law requirements. 29 C.F.R. §516.4.

91. Defendant willfully failed to properly notify Plaintiffs and FLSA Collective Action Members of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collectives' labor.

92. Defendant knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to properly compensate Plaintiffs and Collective Action Members the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

**COUNT II**
**[Violation of New York Labor Law—Overtime Pay**
**Brought on behalf of Plaintiff and the Rule 23 Class]**

93. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

94. Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay proper overtime compensation shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

95. Defendant's failure to properly pay Plaintiffs and the Rule 23 Class their overtime pay violated the NYLL.

96. Defendant's failure to properly pay Plaintiffs and the Rule 23 Class overtime was not in good faith.

**COUNT III**
**[Violation of New York Labor Law—Time of Hire Wage Notice Requirement]**

97. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

98. The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

99. Defendants intentionally failed to provide conforming notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the

employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on his or her first day of employment.

100.     Defendant provided deficient notice to each employee at Time of Hire, and failed to provide conforming notice to Plaintiffs even after the fact.

101.     Due to Defendant's violations of New York Labor Law, Plaintiff is entitled to recover from Defendant, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

**COUNT IV**
**[Violation of New York Labor Law—New York Pay Stub Requirement]**

102.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

103.     The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-1(d).

104.     Defendant has failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and provided a deficient and confusing paystub on or after each Plaintiff's payday.

105.     Due to Defendant's violations of New York Labor Law, each Plaintiffs are entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law N.Y. Lab. Law §198(1-d).

**Prayer For Relief**

WHEREFORE, Plaintiffs, on behalf of themselves, and the FLSA collective Plaintiffs and Rule 23 class, respectfully request that this court enter a judgment providing the following relief:

a)  Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the court issue such notice, to all persons who are presently, or have been employed by defendants as DMs and/or AMs. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied proper hourly compensation and premium overtime wages;

b)  Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

c)  Designation of Plaintiffs as representatives of the Rule 23 Class, and counsel of record as Class counsel;

d)  Certification of this case as a collective action pursuant to FLSA;

e)  Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiff and his counsel to represent the Collective Action Members;

f)  A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

g)  An injunction against Bed Bath and Beyond, Inc., its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

h)    An award of unpaid overtime wages due under FLSA and New York Labor Law;

i)    An award of damages for Defendants' failure to provide proper wage notice at the time of hiring as required under the New York Labor Law.

j)    An award of liquidated and/or punitive damages as a result of Defendant's knowing and willful failure to pay proper overtime compensation pursuant to 29 U.S.C. §216;

k)    An award of liquidated and/ or punitive damages as a result of Defendants' willful failure to pay proper overtime compensation premium pursuant to New York Labor Law;

l)    An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

m)    The cost and disbursements of this action;

n)    An award of prejudgment and post-judgment fees;

h)    Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

i)    Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

## **JURY TRIAL DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, the Plaintiffs, on behalf of themselves, and the Collective Action Members and members of the Class, demands a trial by jury on all questions of fact raised by the complaint.

Dated:  Flushing, New York October 18, 2016          HANG & ASSOCIATES, PLLC.

_/S/_ JIAN HANG

Jian Hang, Esq.

136-18 39th Ave., Suite 1003
Flushing, New York 11354
Tel: 718.353.8588
jhang@hanglaw.com
_Attorneys for Plaintiff_

# EXHIBIT 1

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by Bed Bath & Beyond Inc. and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

_LASHAUN Frazer_
Full Legal Name (Print)

_Lash Far_
Signature

_9-14-2016_
Date

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

I am an employee currently or formerly employed by Bed Bath & Beyond Inc. and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages.  I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

*Eleni Miglis*
Full Legal Name (Print)

*[signature]*
Signature

*9/2/16*
Date

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by Bed Bath & Beyond Inc. and/or related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

Donell Thomas
Full Legal Name (Print)

Signature

9/14/16
Date

## CONSENT TO SUE UNDER
## FEDERAL FAIR LABOR STANDARDS ACT

I am an employee currently or formerly employed by Bed Bath & Beyond Inc. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

Andrue Whaley
Full Legal Name (Print)

Signature

O10/17/16.
Date