UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
                                                                          :
DANYELL THOMAS, RASHAUN F. FRAZER,                   :
ANDRAE WHALEY and ELENI MIGLIS,
individually and on behalf of all other employees
similarly situated

      Plaintiffs

                                                                          :
                v.                                   :     Civil Action No. 16-cv-8160
                                                                          :
BED BATH AND BEYOND, INC.                            :

      Defendant.

                                                                          :
-------------------------------------------------------------------------x

### DECLARATION OF LAUREN ALVAREZ

      I, Lauren Alvarez, based on my personal knowledge of the facts stated herein, testify by Declaration as follows:

      1.     I am over the age of 18 and am otherwise competent to testify to the matters contained in this Declaration, and if so called, would testify to the facts below.

      2.     All of the statements in this Declaration are true and accurate to the best of my knowledge.

      3.     The facts set forth in this Declaration are based on my own personal knowledge from my thirteen (13) years of experience with Bed Bath and Beyond Inc. ("BBB") and those stores in which I have experience.

      4.     I became employed by BBB in 2004. In 2012, I became the Regional Human Resources Director for New York City and I currently serve in that role. There are 7 stores in my Region.

1

5.      New York City is part of the Northeast Region. The Northeast Region has fifteen (15) Districts and encompasses stores in Connecticut, Maine, Massachusetts, New Hampshire, New York, Rhode Island, Vermont, and part of New Jersey.

6.      Of the fifteen (15) Districts in the Northeast Region, New York City is its own District. Unlike other Districts, the New York City District has its own separate Human Resources function and effectively functions as its own Region. I am the Regional Human Resources Director for the New York City District while Judy Cohen is the Regional Human Resources Director for the remaining Districts in the Northeast Region.

7.      The New York City District has 7 stores. Of the 7 stores in the New York City District are Stores 42 and 361 in Manhattan, which are some of the highest volume stores in the Company. The New York City District also includes one (1) store in the Bronx and one (1) store in Brooklyn.

8.      From 2011 – 2015, Department Managers' overtime compensation was calculated pursuant to the Fluctuating Workweek methodology ("FWW").

9.      In my Region, for the period 2011 – 2015 when hiring a Department Manager, we only used designated Recruiters from the Human Resources Department to make offers. Recruiters were always at the management level in Human Resources. For offers made over the telephone, Recruiters would explain to the Department Manager what their salary would be and how their overtime would be calculated using the FWW. When Department Managers were internally promoted, or an external offer was made in-person, Recruiters would walk through the Department Manager Level compensation form with the Department Manager. The form, which all Department Managers were required to sign and return, had two (2) components showing

their base weekly salary as well as what their pay would be if they worked 47 hours per week. In going over this form, the Recruiter explained the FWW to the Department Manager candidates.

10.     For the period 2011 – 2015, the Human Resources personnel in my Region had approximately 100 conversations with Department Manager candidates relating to their compensation. These conversations do not include further conversations that occurred in connection with the Department Manager's receipt of Annual Pay Rate Acknowledgements.

11.     In my Region, for the period 2011 – 2015, my stores hired or promoted approximately 100 Department Managers. Of those 100 Department Managers hired or promoted for the period 2011 – 2015, approximately 35 were hired or promoted in Store 42 and approximately 25 were hired or promoted in Store 361.

12.     Upon being hired, very few Department Managers had questions about how their pay was calculated. Approximately 95% of Department Managers who wanted to discuss their salaries with me wanted to know the minimum number of hours they had to work in order to reach a dollar amount they hoped to make in *total* compensation. From 2011 – 2015 I had approximately 5 of these follow up conversations. None of these Department Managers told me that they were confused over how their overtime pay was calculated.

13.     The Department Manager Plaintiffs in this matter all worked in Stores 42 and 361, both of which are in my Region in Manhattan. Upon being hired, each of the Department Manager Plaintiffs received and signed a Department Level Manager Compensation acknowledgement ("DM Compensation Acknowledgement"). True and accurate copies of Danyell Thomas, Rashaun Frazer, Andrae Whaley, and Hector Caraballo's signed DM Compensation Acknowledgement forms are attached hereto as Exhibits 1, 2, 3, and 4, respectively.

3

14.     Along with the DM Compensation Acknowledgement, all DMs were also given an example pay stub, explaining how the Fluctuating Workweek worked, with clear examples. A true and accurate copy of an example pay stub given to DMs is attached hereto as Exhibit 5.

15.     All Department Managers in my stores were also given a Notice and Acknowledgement of Pay Rate form ("Annual Pay Acknowledgement") pursuant to the New York Wage Theft Prevention Act. Each of the DM Plaintiffs in this action signed Annual Pay Acknowledgements. True and accurate copies of Danyell Thomas, Rashaun Frazer, Andrae Whaley, and Hector Caraballo's signed Annual Pay Acknowledgement forms are attached hereto as Exhibits 6, 7, 8, and 9, respectively.

16.     Hector Caraballo was eventually promoted to the position of Assistant Store Manager in 2012. When Assistant Store Managers warn or discipline associates, they must do so in writing, and copies of the same are maintained in the personnel files of the associates that receive the warning or discipline. Attached hereto as Exhibit 10 are true and accurate copies of documents from various associates' personnel files of Caraballo's warning and disciplining of associates.

17.     Assistant Store Managers are also required to complete performance reviews for the associates they supervise. Copies of these performance reviews are also maintained in the personnel files of the associates that receive the performance reviews. Attached hereto as Exhibit 11 are true and accurate copies from various associates' personnel files of performance reviews conducted by Caraballo.

18.     Assistant Store Managers complete self-evaluations. Copies of their self-evaluations are maintained in the Assistant Store Manager's personnel file. Attached hereto as Exhibit 12 are true and accurate copies of Caraballo's self-evaluations.

4

19.     When Assistant Store Managers are disciplined, Store Managers usually document the discipline and a copy of the warning or discipline is maintained in the Assistant Store Manager's personnel file. Caraballo was disciplined on more than one occasion, and ultimately terminated. True and accurate copies of discipline and termination-related documents from Caraballo's personnel file are attached hereto as Exhibit 13.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 07 day of April, 2017.

By: Lauren Alvarez

Lauren Alvarez
Regional Human Resources Director
Bed Bath and Beyond Inc.

5