UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ x
                                 :

DANYELL THOMAS, RASHAUN F. FRAZER,      :
ANDRAE WHALEY, ELENI MIGLIS, CHERYL A.   :    Civil Action No. 16-cv-8160
STRYCHARZ, and DANIELLE BROWN, individually and :
on behalf of all other employees similarly situated,    :
                                 :

       Plaintiffs,                        :

v.                                       :

   BED BATH AND BEYOND, INC.            :

       Defendant.                      x
------------------------------------------------------------------

## JOINT STATEMENT OF UNDISPUTED FACTS

Plaintiffs and Defendant Bed Bath and Beyond Inc. ("BBB"), by and through their respective attorneys, hereby stipulate and agree to the facts set forth herein.[1]

**A.**     **Background**

1.      Bed Bath & Beyond Inc. ("BBB") is a retailer in the home furnishing industry.

2.      BBB is a New York corporation with its principal place of business located at 650 Liberty Avenue, Union, New Jersey 07083.

3.      During the relevant time period, BBB employed Department Managers ("DMs") in its retail stores.

4.      All DMs were classified as non-exempt employees and were paid overtime for all hours worked over 40.

5.      Prior to March of 2015, BBB paid its DMs in New York, New Jersey, and Connecticut overtime pursuant to the Fluctuating WorkWeek ("FWW") methodology as set forth in

---

[1] The parties stipulate to the accuracy of the facts set forth herein, but not to whether each and every fact listed is relevant to the claims and defenses in this action.

29 C.F.R. § 778.114. After Mach of 2015, BBB paid its DMs overtime at 1.5 times their regular rate of pay for all hours worked over 40.

6.    Upon being hired or promoted to the position of DM by BBB, the DMs were given documents containing information regarding what their base annual salary would be if they worked 40 (or fewer) hours per week, and what their expected total earnings would be if they worked 47 hours per week, including overtime.

7.    Upon being hired or promoted to the position of DM, the DMs were also provided documents illustrating that the dollar value (per overtime hour) for hours worked above 40 hours would vary due to BBB's use of the FWW.

8.    All DMs received payment at a rate not less than the applicable minimum wage for every hour worked.

9.    All DMs received Department Manager Compensation Acknowledgement forms, which state:

> At the time I was hired, I was told what my anticipated weekly compensation will be and how it will be calculated.
>
> I understand that my weekly compensation consists of two components: (1) a base weekly salary; and (2) an additional amount for all hours over 40 that I work during a week.
>
> I understand that my base weekly salary is compensation for all hours I work in a week. I will be paid this base salary for each week I work, whether or not I work 40 hours in that week, subject to the Company's sick day and leave policies.
>
> I further understand that I will be scheduled for no less than 47 hours per week, but that my actual hours worked will fluctuate depending on the needs of my store.

10.   All DMs also received annual notice and acknowledgement of pay rate forms, each of which state:

> Overtime rate of pay: rate fluctuates based on hours worked in excess of 40*.
>
> *As a Department Manager, your base weekly salary is compensation for all hours you have worked in the week, regardless of the number of hours you work. You will

*also be paid an additional amount for any hours worked over 40 in one week. Please refer to the attached Department Manager's Bi-Weekly Pay Stub for a detailed explanation.*

11.     All DMs also received BBB's employment handbook, which sets forth BBB's open door policy for employees to raise complaints or concerns about anything, including their pay. Specifically, BBB's employment handbook states:

> We encourage you to take advantage of our OPEN DOOR POLICY by letting your manager, or any other manager, talk through any questions or concerns you that you may have. If the situation can not be resolved at this level, or if the circumstances are such that speaking to your direct supervisor is not appropriate, you should feel free to speak to another manager, a Human Resources Manager, or even to a Vice President or to the CEO of our Company, if necessary.

12.     DMs received pay stubs from BBB each pay period setting forth their pay. (*See e.g.*, **Exhibit 1**, P00218GD).

13.     Beginning in 2011, DMs received written notice of wage rates upon being hired. (*See e.g.*, **Exhibit 2**, P00250GD).

14.     BBB also employs Assistant Store Managers in its retail stores. Assistant Store Managers are classified as exempt and do not receive overtime for hours worked over 40. Assistant Store Managers also receive(d) pay stubs from BBB each pay period. (*See e.g.*, **Exhibit 3**, P00147RK).

15.     Beginning in 2011, Assistant Store Managers received written notice of wage rates upon being hired. (*See e.g.*, **Exhibit 4**).

**B.     Plaintiff Rashaun Frazer**

16.     Rashaun Frazer worked as a DM for BBB.

17.     Rashaun Frazer worked in Store 361 in Manhattan, New York throughout his entire time as a DM, other than for the two to three months he worked in a BBB store located in Westbury, New York.

18.     On October 31, 2011, Rashaun Frazer received and signed a DM Compensation Acknowledgement form, which states:

> At the time I was hired, I was told what my anticipated weekly compensation will be and how it will be calculated.
>
> I understand that my weekly compensation consists of two components: (1) a base weekly salary; and (2) an additional amount for all hours over 40 that I work during a week.
>
> I understand that my base weekly salary is compensation for all hours I work in a week. I will be paid this base salary for each week I work, whether or not I work 40 hours in that week, subject to the Company's sick day and leave policies.
>
> I further understand that I will be scheduled for no less than 47 hours per week, but that my actual hours worked will fluctuate depending on the needs of my store. (*See* **Exhibit 5**).

19.     On June 20, 2017, Rashaun Frazer testified that he received and signed the DM Compensation Acknowledgement form. (Frazer Dep., 47:7 – 9).

20.     On October 31, 2011, January 6, 2012, January 2, 2013, December 4, 2013, and January 21, 2014, Rashaun Frazer also received annual notice and acknowledgement of pay rate forms, each of which state:

> Overtime rate of pay: rate fluctuates based on hours worked in excess of 40*.
>
> *As a Department Manager, your base weekly salary is compensation for all hours you have worked in the week, regardless of the number of hours you work. You will also be paid an additional amount for any hours worked over 40 in one week. Please refer to the attached Department Manager's Bi-Weekly Pay Stub for a detailed explanation.* (*See* **Exhibit 6**).

21.     On June 20, 2017, Rashaun Frazer testified that he received and signed the notice and acknowledgement of pay rate forms. (Frazer Dep., 59:6; 62:8; 64:4; 66:6; 68:4).

22.     Rashaun Frazer also testified in his deposition that he did not ask questions about the Notice and Acknowledgement of Pay Rate form that he signed, he never complained to anyone at BBB about the salary he received, and he did not ask anyone from the Human Resources

department about why his pay changed from week to week. (Frazer Dep., 48:15 – 18; 52:16 – 19; 54:21 – 23; 61:17 – 20; 69:7 – 9; 91:13 – 15).

23.　　The number of hours Rashaun Frazer worked as a DM varied from week to week. (Frazer Dep., 52:24 – 53:9).

24.　　Rashaun Frazer received pay stubs from BBB each pay period during his employment as a DM.

25.　　On January 17, 2015, Rashaun Frazer voluntarily resigned from BBB.

**C.　　Plaintiff Danyell Thomas**

26.　　Danyell Thomas worked as a DM for BBB.

27.　　During her employment Danyell Thomas worked as a DM in Store 361 in Manhattan New York and in Store 42 in Manhattan, New York.

28.　　On January 6, 2010, Danyell Thomas received and signed a DM Compensation Acknowledgement form, which states:

> At the time I was hired, I was told what my anticipated weekly compensation will be and how it will be calculated.
>
> I understand that my weekly compensation consists of two components: (1) a base weekly salary; and (2) an additional amount for all hours over 40 that I work during a week.
>
> I understand that my base weekly salary is compensation for all hours I work in a week. I will be paid this base salary for each week I work, whether or not I work 40 hours in that week, subject to the Company's sick day and leave policies.
>
> I further understand that I will be scheduled for no less than 47 hours per week, but that my actual hours worked will fluctuate depending on the needs of my store. (*See* **Exhibit 7**).

29.　　On June 19, 2017, Danyell Thomas testified that she received and signed the DM Compensation Acknowledgement form. (Thomas Dep., 50:22 – 23).

30.     On January 6, 2012, January 2, 2013, December 6, 2013, and January 16, 2014, Danyell Thomas also received annual notice and acknowledgement of pay rate forms, each of which state:

> Overtime rate of pay: rate fluctuates based on hours worked in excess of 40*.
>
> *As a Department Manager, your base weekly salary is compensation for all hours you have worked in the week, regardless of the number of hours you work. You will also be paid an additional amount for any hours worked over 40 in one week. Please refer to the attached Department Manager's Bi-Weekly Pay Stub for a detailed explanation. (See **Exhibit 8**).*

31.     On June 19, 2017, Danyell Thomas testified that she received and signed the notice and acknowledgement of pay rate forms. (Thomas Dep., 90:7 – 9; 92:22; 95:10; 98:5).

32.     Danyell Thomas also testified in her deposition she never asked for clarification of the DM compensation acknowledgement form and never told anyone that the DM compensation acknowledgement form she signed contained inaccurate information, she never asked for an explanation of her paychecks, she knew she could have gone to Human Resources to complain about her paychecks but she did not, and she knew the company has a 1-800 number she could have called to complain about her pay but she never did. (Thomas Dep., 35:22 – 25; 44:14 – 45:15; 51:12 – 52:53:9; 87:21 – 24; 88:10 – 17).

33.     Danyell Thomas testified in her deposition that she understood she was getting paid "Chinese overtime" for all the hours she worked over 40. (Thomas Dep., 60:22 – 61:2; 64:6 – 14; 86:22 – 87:2).

34.     Danyell Thomas received pay stubs from BBB each pay period during her employment as a DM.

35.     On May 11, 2015, Danyell Thomas was terminated. (Thomas Dep., 11:11 – 25).

**D.     Plaintiff Andrae Whaley**

36.     Andrae Whaley worked as a DM for BBB.

6

37.     During his employment at BBB, Andrae Whaley worked as a DM in Store 42 in Manhattan, New York and Store 105 in Manhasset, New York.

38.     On July 18, 2011, Andrae Whaley received and signed a DM Compensation Acknowledgement form, which states:

> At the time I was hired, I was told what my anticipated weekly compensation will be and how it will be calculated.
>
> I understand that my weekly compensation consists of two components: (1) a base weekly salary; and (2) an additional amount for all hours over 40 that I work during a week.
>
> I understand that my base weekly salary is compensation for all hours I work in a week. I will be paid this base salary for each week I work, whether or not I work 40 hours in that week, subject to the Company's sick day and leave policies.
>
> I further understand that I will be scheduled for no less than 47 hours per week, but that my actual hours worked will fluctuate depending on the needs of my store. (*See* **Exhibit 9**).

39.     On July 19, 2017, Andrae Whaley testified that he received and signed the DM Compensation Acknowledgement form. (Whaley Dep., 61:22 – 23).

40.     On July 18, 2011, January 4, 2012, January 1, 2013, August 9, 2013, and January 21, 2014, Andrae Whaley also received annual notice and acknowledgement of pay rate forms, each of which state:

> Overtime rate of pay: rate fluctuates based on hours worked in excess of 40*.
>
> *As a Department Manager, your base weekly salary is compensation for all hours you have worked in the week, regardless of the number of hours you work. You will also be paid an additional amount for any hours worked over 40 in one week. Please refer to the attached Department Manager's Bi-Weekly Pay Stub for a detailed explanation. (*See* **Exhibit 10**).

41.     On July 19, 2017, Andrae Whaley testified that he received and signed the notice and acknowledgement of pay rate forms. (Whaley Dep., 65:11; 65:21; 66:7; 66:25; 67:17).

42.     Andrae Whaley also testified in his deposition that he once asked Human Resources for an explanation of his pay because he did not understand why "the more hours [he did], the less [he got] paid" overtime. (Whaley Dep., 73:2 – 12).

43.     Andrae Whaley testified that he did not speak to anyone else at BBB about his pay other than the one conversation with Human Resources, and he did not complain about the way he was being paid. (Whaley Dep., 71:11 – 72:25; 79:18 – 24).

44.     Andrae Whaley testified in his deposition that he occasionally worked more than 50 hours, there were weeks he worked more than 55 hours, there were weeks when he worked more than 60 hours, and there were weeks when he worked less than 50 hours. (Whaley Dep., 75:17 – 76:25).

45.     Andrae Whaley received pay stubs from BBB each pay period during his employment as a DM.

46.     On July 23, 2016, Andrae Whaley voluntarily resigned from BBB.

**E.     Plaintiff Cheryl Strycharz**

47.     Cheryl Strycharz worked as a DM for BBB.

48.     Cheryl Strycharz worked as a DM in Store 507 in Oceanside, New York during her entire time as a DM.

49.     On June 27, 2005, Cheryl Strycharz received and signed a DM Compensation Acknowledgement form, which states:

> At the time I was hired, I was told what my anticipated weekly compensation will be and how it will be calculated.
>
> I understand that my weekly compensation consists of two components: (1) a base weekly salary; and (2) an additional amount for all hours over 40 that I work during a week.
>
> I understand that my base weekly salary is compensation for all hours I work in a week. I will be paid this base salary for each week I work, whether or not I work 40 hours in that week, subject to the Company's sick day and leave policies.

I further understand that I will be scheduled for no less than 47 hours per week, but that my actual hours worked will fluctuate depending on the needs of my store. (*See* **Exhibit 11**).

50.     On August 9, 2017, Cheryl Strycharz testified that she received and signed the DM Compensation Acknowledgement form. (Strycharz Dep., 15:25).

51.     On January 9, 2012, Cheryl Strycharz also received an annual notice and acknowledgement of pay rate form, which states:

Overtime rate of pay: rate fluctuates based on hours worked in excess of 40**\***.

*\*As a Department Manager, your base weekly salary is compensation for all hours you have worked in the week, regardless of the number of hours you work. You will also be paid an additional amount for any hours worked over 40 in one week. Please refer to the attached Department Manager's Bi-Weekly Pay Stub for a detailed explanation. (*See* **Exhibit 12**).

52.     On August 9, 2017, Cheryl Strycharz testified that she received and signed the notice and acknowledgement of pay rate form. (Strycharz Dep., 17:7).

53.     On August 9, 2017, Cheryl Strycharz further testified that she knew she could go to the Human Resources department to complain about her pay but, for "no reason" she "just didn't." (Strycharz Dep., 33:20 – 25).

54.     The number of hours Cheryl Strycharz worked as a DM fluctuated from week to week.

55.     Cheryl Strycharz received pay stubs from BBB each pay period during her employment as a DM.

56.     On July 20, 2012, Cheryl Strycharz was terminated for violating company policy.

**F.     Plaintiff Danielle Brown**

57.     Danielle Brown worked as a DM for BBB.

58.     During her employment with BBB, Danielle Brown worked as a DM in Store 260 in Westbury, New York, in Store 105 in Manhasset, New York, and in Store 754 in Plainview, New York.

59.     On November 27, 2006, Danielle Brown received and signed a DM Compensation Acknowledgement form, which states:

> At the time I was hired, I was told what my anticipated weekly compensation will be and how it will be calculated.
>
> I understand that my weekly compensation consists of two components: (1) a base weekly salary; and (2) an additional amount for all hours over 40 that I work during a week.
>
> I understand that my base weekly salary is compensation for all hours I work in a week. I will be paid this base salary for each week I work, whether or not I work 40 hours in that week, subject to the Company's sick day and leave policies.
>
> I further understand that I will be scheduled for no less than 47 hours per week, but that my actual hours worked will fluctuate depending on the needs of my store. (*See* **Exhibit 13**).

60.     On July 12, 2017, Danielle Brown testified that she received and signed the DM Compensation Acknowledgement form. (Brown Dep., 18:3).

61.     On January 2, 2012, Danielle Brown also received an annual notice and acknowledgement of pay rate form, which states:

> Overtime rate of pay: rate fluctuates based on hours worked in excess of 40*.
>
> *As a Department Manager, your base weekly salary is compensation for all hours you have worked in the week, regardless of the number of hours you work. You will also be paid an additional amount for any hours worked over 40 in one week. Please refer to the attached Department Manager's Bi-Weekly Pay Stub for a detailed explanation.* (*See* **Exhibit 14**).

62.     On July 12, 2017, Danielle Brown testified that she received and signed the notice and acknowledgement of pay rate forms. (Brown Dep., 22:23).

63.     Danielle Brown also testified that she never asked anyone in the Human Resources department or her Store Manager about how to calculate her pay even though she knew she could. (Brown Dep., 19:11 – 20:12).

64.     Danielle Brown testified that she understood DMs "got paid something for whatever hours you worked over the hours that you were supposed to be working." (Brown Dep., 25:17 – 21).

65.     Danielle Brown testified that her hours varied from week to week. (Brown Dep., 52:4-20).

66.     Danielle Brown received pay stubs from BBB each pay period during her employment as a DM.

67.     On July 5, 2012, Danielle Brown voluntarily resigned from BBB.

**G.     Opt-in Plaintiff Radica Kutwaru**

68.     Radica Kutwaru worked as a DM for BBB.

69.     During her employment with BBB, Radica Kutwaru worked as a DM in Store 42 in Manhattan New York and in Store 103 in Georgia.

70.     At some point during her employment with BBB, Radica Kutwaru was promoted to the position of Assistant Store Manager.

71.     On April 9, 2012, Radica Kutwaru received and signed a DM Compensation Acknowledgement form, which states:

> At the time I was hired, I was told what my anticipated weekly compensation will be and how it will be calculated.
>
> I understand that my weekly compensation consists of two components: (1) a base weekly salary; and (2) an additional amount for all hours over 40 that I work during a week.
>
> I understand that my base weekly salary is compensation for all hours I work in a week. I will be paid this base salary for each week I work, whether or not I work 40 hours in that week, subject to the Company's sick day and leave policies.

I further understand that I will be scheduled for no less than 47 hours per week, but that my actual hours worked will fluctuate depending on the needs of my store. (*See* **Exhibit 15**).

72.     On June 21, 2017, Radica Kutwaru testified that she received and signed the DM Compensation Acknowledgement form. (Kutwaru Dep., 29:10).

73.     On April 9, 2012, January 20, 2013, September 1, 2013, April 23, 2013, and April 23, 2014, Radica Kutwaru also received annual notice and acknowledgement of pay rate forms, each of which state:

Overtime rate of pay: rate fluctuates based on hours worked in excess of 40*.

*\*As a Department Manager, your base weekly salary is compensation for all hours you have worked in the week, regardless of the number of hours you work. You will also be paid an additional amount for any hours worked over 40 in one week. Please refer to the attached Department Manager's Bi-Weekly Pay Stub for a detailed explanation. (See* **Exhibit 16**).

74.     On June 21, 2017, Radica Kutwaru testified that she received and signed the notice and acknowledgement of pay rate forms. (Kutwaru Dep., 32:15; 34:19; 35:5; 35:11; 35:18).

75.     Radica Kutwaru testified in her deposition that she knew how to contact the Human Resources department but that she never asked anyone in Human Resources questions about how her pay was calculated and she never complained about her pay to Human Resources. (Kutwaru Dep., 23:9 – 11; 23:23 – 25; 24:6 – 10).

76.     Radica Kutwaru received pay stubs from BBB each pay period during her employment as a DM.

77.     On February 27, 2017, Radica Kutwaru was terminated from BBB in her role as Assistant Store Manager for violating company procedure.

**H.      Opt-in Plaintiff Guy-Robert Desir**

78.     Guy-Robert Desir worked as a DM for BBB.

79.    During his employment with BBB, Guy-Robert Desir worked as a DM in Store 105 in Manhasset, New York and in Store 260 in Westbury, New York.

80.    At some point during his employment with BBB, Guy-Robert Desir was promoted to the position of Assistant Store Manager.

81.    On June 4, 2012, Guy-Robert Desir received and signed a DM Compensation Acknowledgement form, which states:

> At the time I was hired, I was told what my anticipated weekly compensation will be and how it will be calculated.
>
> I understand that my weekly compensation consists of two components: (1) a base weekly salary; and (2) an additional amount for all hours over 40 that I work during a week.
>
> I understand that my base weekly salary is compensation for all hours I work in a week. I will be paid this base salary for each week I work, whether or not I work 40 hours in that week, subject to the Company's sick day and leave policies.
>
> I further understand that I will be scheduled for no less than 47 hours per week, but that my actual hours worked will fluctuate depending on the needs of my store. (*See* **Exhibit 17**).

82.    On June 4, 2012, January 14, 2013, July 12, 2013, and January 22, 2014, Guy-Robert Desir also received and signed annual notice and acknowledgement of pay rate forms, each of which state:

> Overtime rate of pay: rate fluctuates based on hours worked in excess of 40*.
>
> *As a Department Manager, your base weekly salary is compensation for all hours you have worked in the week, regardless of the number of hours you work. You will also be paid an additional amount for any hours worked over 40 in one week. Please refer to the attached Department Manager's Bi-Weekly Pay Stub for a detailed explanation.* (*See* **Exhibit 18**).

**I.    Opt-in Plaintiff Bryan LaForest**

83.    Bryan LaForest worked as a DM for BBB.

84.    During his employment with BBB, Bryan LaForest worked as a DM in Store 467 in Brooklyn, New York, Store 43 in Farmington Hills, Michigan, Store 234 in Ann Arbor, Michigan,

Store 565 in Manhattan, New York, Store 1194 in Manhattan, New York, and Store 42 in Manhattan, New York.

85.     At some point during his employment with BBB, Bryan LaForest was promoted to the position of Assistant Store Manager.

86.     On November 23, 2010, Bryan LaForest received and signed a DM Compensation Acknowledgement form, which states:

> At the time I was hired, I was told what my anticipated weekly compensation will be and how it will be calculated.
>
> I understand that my weekly compensation consists of two components: (1) a base weekly salary; and (2) an additional amount for all hours over 40 that I work during a week.
>
> I understand that my base weekly salary is compensation for all hours I work in a week. I will be paid this base salary for each week I work, whether or not I work 40 hours in that week, subject to the Company's sick day and leave policies.
>
> I further understand that I will be scheduled for no less than 47 hours per week, but that my actual hours worked will fluctuate depending on the needs of my store. (*See* **Exhibit 19**).

87.     On August 10, 2017, Bryan LaForest testified that he received and signed the DM Compensation Acknowledgement form. (LaForest Dep., 24:6).

88.     Bryan LaForest also testified that he did not ask anyone at BBB questions about the DM compensation acknowledgement form nor did he tell anyone that it was inaccurate. (LaForest Dep., 24:17 – 20; 25:4 – 6).

89.     Bryan LaForest received pay stubs from BBB each pay period during his employment as a DM.

90.     On April 14, 2017, BBB terminated Bryan LaForest in his role as Assistant Store Manager stating misconduct.

**J.     Opt-in Plaintiff Karla Reynosa**

91.     Karla Reynosa worked as a DM for BBB.

92.     During her employment with BBB, Karla Reynosa worked as a DM in Store 42 in Manhattan, New York, and Store 1194 in Manhattan, New York.

93.     On May 20, 2013, Karla Reynosa received and signed a DM Compensation Acknowledgement form, which states:

> At the time I was hired, I was told what my anticipated weekly compensation will be and how it will be calculated.
>
> I understand that my weekly compensation consists of two components: (1) a base weekly salary; and (2) an additional amount for all hours over 40 that I work during a week.
>
> I understand that my base weekly salary is compensation for all hours I work in a week. I will be paid this base salary for each week I work, whether or not I work 40 hours in that week, subject to the Company's sick day and leave policies.
>
> I further understand that I will be scheduled for no less than 47 hours per week, but that my actual hours worked will fluctuate depending on the needs of my store. (*See* **Exhibit 20**).

94.     On July 10, 2017, Karla Reynosa testified that she received and signed the DM Compensation Acknowledgement form. (Reynosa Dep., 20:4).

95.     On May 20, 2013 and January 28, 2014, Karla Reynosa also received annual notice and acknowledgement of pay rate forms, each of which state:

> Overtime rate of pay: rate fluctuates based on hours worked in excess of 40*.
>
> *\*As a Department Manager, your base weekly salary is compensation for all hours you have worked in the week, regardless of the number of hours you work. You will also be paid an additional amount for any hours worked over 40 in one week. Please refer to the attached Department Manager's Bi-Weekly Pay Stub for a detailed explanation.* (*See* **Exhibit 21**).

96.     On July 10, 2017, Karla Reynosa testified that she received and signed the notice and acknowledgement of pay rate forms. (Reynosa Dep., 24:8; 32:11).

97.     Karla Reynosa also testified that at the time she was hired, someone from BBB explained to her over the phone how her pay was calculated and Karla Reynosa did the math along with the BBB representative over the phone. (Reynosa Dep., 21:9 – 21:25).

98.     Karla Reynosa further testified that she never complained about her pay at BBB. (Reynosa Dep., 37:19 – 22).

99.     Karla Reynosa received pay stubs from BBB each pay period during her employment as a DM.

100.    On February 5, 2015, BBB terminated Karla Reynosa stating poor performance.

**K.      Opt-in Plaintiff Elizabeth Padilla**

101.    Elizabeth Padilla worked as a DM for BBB.

102.    Elizabeth Padilla worked in Store 361 in Manhattan, New York during her entire time as a DM.

103.    On December 10, 2012, Elizabeth Padilla received and signed a DM Compensation Acknowledgement form, which states:

> At the time I was hired, I was told what my anticipated weekly compensation will be and how it will be calculated.

> I understand that my weekly compensation consists of two components: (1) a base weekly salary; and (2) an additional amount for all hours over 40 that I work during a week.

> I understand that my base weekly salary is compensation for all hours I work in a week. I will be paid this base salary for each week I work, whether or not I work 40 hours in that week, subject to the Company's sick day and leave policies.

> I further understand that I will be scheduled for no less than 47 hours per week, but that my actual hours worked will fluctuate depending on the needs of my store. (*See* **Exhibit 22**).

104.    On June 15, 2017, Elizabeth Padilla testified that she received and signed the DM Compensation Acknowledgement form. (Padilla Dep., 37:14).

105.    On January 9, 2011, January 16, 2013, and January 17, 2014, Elizabeth Padilla also received annual notice and acknowledgement of pay rate forms, each of which state:

> Overtime rate of pay: rate fluctuates based on hours worked in excess of 40*.

*As a Department Manager, your base weekly salary is compensation for all hours you have worked in the week, regardless of the number of hours you work. You will also be paid an additional amount for any hours worked over 40 in one week. Please refer to the attached Department Manager's Bi-Weekly Pay Stub for a detailed explanation. (See* **Exhibit 23**).

106.    On June 15, 2017, Elizabeth Padilla testified that she received and signed the notice and acknowledgement of pay rate forms. (Padilla Dep., 38:17; 40:25; 42:14).

107.    Elizabeth Padilla also testified in her deposition that she knew she was being paid overtime for hours worked over 40, but that she never complained about her pay and never asked anyone in Human Resources or any of her superiors what "Chinese overtime" meant. (Padilla Dep., 53:25 – 54:19).

108.    Elizabeth Padilla testified that she worked between 47.5 to somewhere between 50 and 60 hours per week as a DM. (Padilla Dep., 79:5 – 80:9).

109.    Elizabeth Padilla received pay stubs from BBB each pay period during her employment as a DM.

110.    On February 20, 2016, Elizabeth Padilla resigned from BBB due to medical reasons.

**L.    Opt-in Plaintiff Cuthbert Baptiste**

111.    Cuthbert Baptiste worked as a DM for BBB.

112.    During his employment with BBB, Cuthbert Baptiste worked as a DM in Store 361 in Manhattan, New York and Store 42 in Manhattan, New York.

113.    On August 4, 2008, Cuthbert Baptiste received and signed a DM Compensation Acknowledgement form, which states:

At the time I was hired, I was told what my anticipated weekly compensation will be and how it will be calculated.

I understand that my weekly compensation consists of two components: (1) a base weekly salary; and (2) an additional amount for all hours over 40 that I work during a week.

I understand that my base weekly salary is compensation for all hours I work in a week. I will be paid this base salary for each week I work, whether or not I work 40 hours in that week, subject to the Company's sick day and leave policies.

I further understand that I will be scheduled for no less than 47 hours per week, but that my actual hours worked will fluctuate depending on the needs of my store. (*See* **Exhibit 24**).

114.    On July 10, 2017, Cuthbert Baptiste testified that he received and signed the DM Compensation Acknowledgement form. (Baptiste Dep., 65:14 – 25).

115.    On January 2, 2012, January 1, 2013, December 8, 2013, and January 23, 2014, Cuthbert Baptiste also received annual notice and acknowledgement of pay rate forms, each of which state:

Overtime rate of pay: rate fluctuates based on hours worked in excess of 40*.

*\*As a Department Manager, your base weekly salary is compensation for all hours you have worked in the week, regardless of the number of hours you work. You will also be paid an additional amount for any hours worked over 40 in one week. Please refer to the attached Department Manager's Bi-Weekly Pay Stub for a detailed explanation.* (*See* **Exhibit 25**).

116.    On July 10, 2017, Cuthbert Baptiste testified that he received and signed the notice and acknowledgement of pay rate forms. (Baptiste Dep., 37:23 – 24; 40:12; 44:18; 45:12 – 13).

117.    Cuthbert Baptiste also testified in his deposition that, each time he signed the notice and acknowledgement of pay rate forms, he did not ask anyone at BBB for an explanation of the forms or how his pay was calculated. Cuthbert Baptiste further testified that he knew he could ask the Human Resources department about his pay, but he never complained. (Baptiste Dep., 39:22 – 24; 41:4 – 9; 42:8 – 10; 44:19 – 25; 45:20 – 46:2).

118.    Cuthbert Baptiste testified that he "couldn't understand the math" associated with his overtime pay, but that he understood "[w]hen [he] work[ed] less, [he] would get less. And when [he] worked more, [he] would get a couple dollars more[.]" (Baptiste Dep., 50:18 – 24).

119.    Cuthbert Baptiste received pay stubs from BBB each pay period during his employment as a DM.

120.    On October 27, 2015, Cuthbert Baptiste voluntarily resigned from BBB.

**M.    Opt-in Plaintiff Hector Caraballo**

121.    Hector Caraballo worked as a DM for BBB.

122.    During his employment with BBB, Hector Caraballo worked as a DM in Store 361 in Manhattan New York and Store 42 in Manhattan, New York.

123.    At some point during his employment with BBB Hector Caraballo was promoted to the position of Assistant Store Manager.

124.    On October 13, 2008, Hector Caraballo received and signed a DM Compensation Acknowledgement form, which states:

> At the time I was hired, I was told what my anticipated weekly compensation will be and how it will be calculated.
>
> I understand that my weekly compensation consists of two components: (1) a base weekly salary; and (2) an additional amount for all hours over 40 that I work during a week.
>
> I understand that my base weekly salary is compensation for all hours I work in a week. I will be paid this base salary for each week I work, whether or not I work 40 hours in that week, subject to the Company's sick day and leave policies.
>
> I further understand that I will be scheduled for no less than 47 hours per week, but that my actual hours worked will fluctuate depending on the needs of my store. (*See* **Exhibit 26**).

125.    On June 14, 2017, Hector Caraballo testified that he received and signed the DM Compensation Acknowledgement form. (Caraballo Dep., 42:10).

126.    On January 2, 2012, Hector Caraballo also received an annual notice and acknowledgement of pay rate form, which states:

> Overtime rate of pay: rate fluctuates based on hours worked in excess of 40*.

*As a Department Manager, your base weekly salary is compensation for all hours you have worked in the week, regardless of the number of hours you work. You will also be paid an additional amount for any hours worked over 40 in one week. Please refer to the attached Department Manager's Bi-Weekly Pay Stub for a detailed explanation. (See* **Exhibit 27**).

127.    On June 14, 2017, Hector Caraballo testified that he received and signed the notice and acknowledgement of pay rate form. (Caraballo Dep., 43:6).

128.    Hector Caraballo testified that, after receiving his first paycheck, he went to the Human Resources department for an explanation of his pay, but he "couldn't understand whatever the hell she said" in response. (Caraballo Dep., 55:16 – 56:9).

129.    Hector Caraballo further testified that he worked between 49 and 56 hours per week as a DM. (Caraballo Dep., 34:2-4).

130.    Hector Caraballo received pay stubs from BBB each pay period during his employment as a DM.

131.    On March 26, 2015, BBB terminated Hector Caraballo in his role as Assistant Store Manager stating poor performance.

**N.      Opt-in Plaintiff Byron Villacres**

132.    Byron Villacres worked as a DM for BBB.

133.    During his employment with BBB, Byron Villacres worked as a DM in Store 565 in Manhattan, New York, and Store 361 in Manhattan, New York.

134.    On October 3, 2011, Byron Villacres received and signed a DM Compensation Acknowledgement form, which states:

At the time I was hired, I was told what my anticipated weekly compensation will be and how it will be calculated.

I understand that my weekly compensation consists of two components: (1) a base weekly salary; and (2) an additional amount for all hours over 40 that I work during a week.

I understand that my base weekly salary is compensation for all hours I work in a week. I will be paid this base salary for each week I work, whether or not I work 40 hours in that week, subject to the Company's sick day and leave policies.

I further understand that I will be scheduled for no less than 47 hours per week, but that my actual hours worked will fluctuate depending on the needs of my store. (*See* **Exhibit 28**).

135.    On July 20, 2017, Byron Villacres testified that he received and signed the DM Compensation Acknowledgement form. (Villacres Dep., 84:7).

136.    On October 3, 2011, January 3, 2012, January 23, 2013, December 6, 2013, and January 27, 2014, Byron Villacres also received annual notice and acknowledgement of pay rate forms, each of which states:

Overtime rate of pay: rate fluctuates based on hours worked in excess of 40*.

*As a Department Manager, your base weekly salary is compensation for all hours you have worked in the week, regardless of the number of hours you work. You will also be paid an additional amount for any hours worked over 40 in one week. Please refer to the attached Department Manager's Bi-Weekly Pay Stub for a detailed explanation. (*See* **Exhibit 29**).*

137.    On July 20, 2017, Byron Villacres testified that he received and signed the notice and acknowledgement of pay rate forms. (Villacres Dep., 78:8; 102:6; 102:13; 102:16).

138.    Byron Villacres also testified that he never complained about the calculation of his pay during his time as a DM even though he knew he could. (Villacres Dep., 108:17 – 21; 110:8 – 19).

139.    The number of hours Byron Villacres worked as a DM varied from week to week.

140.    Byron Villacres received pay stubs from BBB each pay period during his employment as a DM.

141.    On August 25, 2014, Byron Villacres voluntarily resigned from BBB due to personal reasons.

## O.    Opt-in Plaintiff Andrew Certoma

142.    Andrew Certoma worked as a DM for BBB.

143.    During his employment with BBB, Andrew Certoma worked as a DM in Florida stores, Store 42 in Manhattan, New York and Store 565 in Manhattan, New York.

144.    At some point during his employment with BBB, Andrew Certoma was promoted to the position of Assistant Store Manager.

145.    On September 21, 2007, Andrew Certoma received and signed a DM Compensation Acknowledgement form, which states:

> At the time I was hired, I was told what my anticipated weekly compensation will be and how it will be calculated.
>
> I understand that my weekly compensation consists of two components: (1) a base weekly salary; and (2) an additional amount for all hours over 40 that I work during a week.
>
> I understand that my base weekly salary is compensation for all hours I work in a week. I will be paid this base salary for each week I work, whether or not I work 40 hours in that week, subject to the Company's sick day and leave policies.
>
> I further understand that I will be scheduled for no less than 47 hours per week, but that my actual hours worked will fluctuate depending on the needs of my store. (*See* **Exhibit 30**).

146.    On August 8, 2017, Andrew Certoma testified that he received and signed the DM Compensation Acknowledgement form. (Certoma Dep., 14:17).

147.    On June 4, 2012, Andrew Certoma also received an annual notice and acknowledgement of pay rate form, which states:

> Overtime rate of pay: rate fluctuates based on hours worked in excess of 40*.
>
> *As a Department Manager, your base weekly salary is compensation for all hours you have worked in the week, regardless of the number of hours you work. You will also be paid an additional amount for any hours worked over 40 in one week. Please refer to the attached Department Manager's Bi-Weekly Pay Stub for a detailed explanation. (*See* **Exhibit 31**).

148.    On August 8, 2017, Andrew Certoma testified that he received and signed the notice and acknowledgement of pay rate forms. (Certoma Dep., 26:18; 28:3).

149.    Andrew Certoma also testified that he never asked questions about his pay rate forms and did not have any reason to believe that they did not contain accurate statements. (Certoma Dep., 29:1 – 13).

150.    Andrew Certoma received pay stubs from BBB each pay period during his employment as a DM.

151.    On May 30, 2014, Andrew Certoma voluntarily resigned from BBB in his role as Assistant Store Manager.

**P.      Opt-in Plaintiff John Cutajar**

152.    John Cutajar worked as a DM for BBB.

153.    During his employment with BBB, John Cutajar worked as a DM in Store 105 in Manhasset, New York, and Store 260 in Westbury, New York.

154.    At some point during his employment with BBB, John Cutajar was promoted to the position of Assistant Store Manager.

155.    On October 11, 2010, John Cutajar received and signed a DM Compensation Acknowledgement form, which states:

> At the time I was hired, I was told what my anticipated weekly compensation will be and how it will be calculated.
>
> I understand that my weekly compensation consists of two components: (1) a base weekly salary; and (2) an additional amount for all hours over 40 that I work during a week.
>
> I understand that my base weekly salary is compensation for all hours I work in a week. I will be paid this base salary for each week I work, whether or not I work 40 hours in that week, subject to the Company's sick day and leave policies.
>
> I further understand that I will be scheduled for no less than 47 hours per week, but that my actual hours worked will fluctuate depending on the needs of my store. (*See* **Exhibit 32**).

156.    On January 1, 2012, January 8, 2013, and January 15, 2014, John Cutajar also received annual notice and acknowledgement of pay rate forms, each of which state:

Overtime rate of pay: rate fluctuates based on hours worked in excess of 40*.

*As a Department Manager, your base weekly salary is compensation for all hours you have worked in the week, regardless of the number of hours you work. You will also be paid an additional amount for any hours worked over 40 in one week. Please refer to the attached Department Manager's Bi-Weekly Pay Stub for a detailed explanation. (*See* **Exhibit 33**).*

157.     John Cutajar received pay stubs from BBB each pay period during his employment as a DM.

158.     On June 28, 2017, John Cutajar voluntarily resigned from BBB in his role as an Assistant Store Manager.

**Q.      Opt-in Plaintiff Alexis Carree**

159.     Alexis Carree worked as a DM for BBB.

160.     During her employment with BBB, Alexis Carree worked as a DM in Store 565 in Manhattan New York, and Store 42 in Manhattan, New York.

161.     At some point during her employment with BBB, Alexis Carree was promoted to the position of Assistant Store Manager.

162.     On May 23, 2011, Alexis Carree received and signed a DM Compensation Acknowledgement form, which states:

At the time I was hired, I was told what my anticipated weekly compensation will be and how it will be calculated.

I understand that my weekly compensation consists of two components: (1) a base weekly salary; and (2) an additional amount for all hours over 40 that I work during a week.

I understand that my base weekly salary is compensation for all hours I work in a week. I will be paid this base salary for each week I work, whether or not I work 40 hours in that week, subject to the Company's sick day and leave policies.

I further understand that I will be scheduled for no less than 47 hours per week, but that my actual hours worked will fluctuate depending on the needs of my store. (*See* **Exhibit 34**).

163.   On August 10, 2017, Alexis Carree testified that she received and signed the DM Compensation Acknowledgement form. (Carree Dep., 80:9).

164.   On January 3, 2012, January 1, 2013, May 3, 2013, January 24, 2014, May 2, 2014, and May 9, 2014, Alexis Carree also received annual notice and acknowledgement of pay rate forms, each of which states:

Overtime rate of pay: rate fluctuates based on hours worked in excess of 40*.

*As a Department Manager, your base weekly salary is compensation for all hours you have worked in the week, regardless of the number of hours you work. You will also be paid an additional amount for any hours worked over 40 in one week. Please refer to the attached Department Manager's Bi-Weekly Pay Stub for a detailed explanation. (See **Exhibit 35**).

165.   Alexis Carree received another notice and acknowledgement of pay rate form on February 4, 2015.

166.   On August 10, 2017, Alexis Carree testified that she received and signed the notice and acknowledgement of pay rate forms. (Carree Dep., 88:21; 90:22; 92:14; 93:19; 94:21; 95:19).

167.   Alexis Carree also testified that she "didn't understand what [Chinese overtime] meant exactly, but [she] knew that that's how [DMs] were getting paid." (Carree Dep., 87:25 – 88:3).

168.   Alexis Carree testified that she did not go to the Human Resources department at BBB to clarify her pay as a DM and she did not complain about her pay. (Carree Dep., 88:4 – 5).

169.   Alexis Carree received pay stubs from BBB each pay period during her employment as a DM.

**R.**   **Opt-in Plaintiff Anthony Rollock**

170.   Anthony Rollock worked as a DM for BBB.

171.   During his employment with BBB, Anthony Rollock worked as a DM in Store 361 in Manhattan, New York, and Store 565 in Manhattan, New York.

172.    On December 12, 2011, Anthony Rollock received and signed a DM Compensation

Acknowledgement form, which states:

> At the time I was hired, I was told what my anticipated weekly compensation will be and how it will be calculated.
>
> I understand that my weekly compensation consists of two components: (1) a base weekly salary; and (2) an additional amount for all hours over 40 that I work during a week.
>
> I understand that my base weekly salary is compensation for all hours I work in a week. I will be paid this base salary for each week I work, whether or not I work 40 hours in that week, subject to the Company's sick day and leave policies.
>
> I further understand that I will be scheduled for no less than 47 hours per week, but that my actual hours worked will fluctuate depending on the needs of my store. (*See* **Exhibit 36**).

173.    On August 9, 2017, Anthony Rollock testified that he received and signed the DM

Compensation Acknowledgement form. (Rollock Dep., 18:5).

174.    On December 12, 2011, January 6, 2012, January 1, 2013, December 6, 2013, and

January 21, 2014, Anthony Rollock also received annual notice and acknowledgement of pay rate

forms, each of which states:

> Overtime rate of pay: rate fluctuates based on hours worked in excess of 40*.
>
> *As a Department Manager, your base weekly salary is compensation for all hours you have worked in the week, regardless of the number of hours you work. You will also be paid an additional amount for any hours worked over 40 in one week. Please refer to the attached Department Manager's Bi-Weekly Pay Stub for a detailed explanation. (See* **Exhibit 37**).

175.    On August 9, 2017, Anthony Rollock testified that he received and signed the notice

and acknowledgement of pay rate forms. (Rollock Dep., 19:11; 21:9; 22:12; 23:8; 24:8).

176.    Anthony Rollock received pay stubs from BBB each pay period during his

employment as a DM.

177.    On September 26, 2016, BBB terminated Anthony Rollock stating misconduct.

**S.**    **Opt-in Plaintiff Erick Ricardo Olivia**

178.     Erick Ricardo Olivia worked as a DM for BBB.

179.     On July 2, 2007, Erick Ricardo Olivia received and signed a DM Compensation

Acknowledgement form, which states:

> At the time I was hired, I was told what my anticipated weekly compensation will be and how it will be calculated.
>
> I understand that my weekly compensation consists of two components: (1) a base weekly salary; and (2) an additional amount for all hours over 40 that I work during a week.
>
> I understand that my base weekly salary is compensation for all hours I work in a week. I will be paid this base salary for each week I work, whether or not I work 40 hours in that week, subject to the Company's sick day and leave policies.
>
> I further understand that I will be scheduled for no less than 47 hours per week, but that my actual hours worked will fluctuate depending on the needs of my store. (*See* **Exhibit 38**).

180.     On January 17, 2012, January 2, 2013, October 11, 2013, January 17, 2014, and July

10, 2014, Erick Ricardo Olivia also received and signed annual notice and acknowledgement of pay

rate forms, each of which state:

> Overtime rate of pay: rate fluctuates based on hours worked in excess of 40*.
>
> *As a Department Manager, your base weekly salary is compensation for all hours you have worked in the week, regardless of the number of hours you work. You will also be paid an additional amount for any hours worked over 40 in one week. Please refer to the attached Department Manager's Bi-Weekly Pay Stub for a detailed explanation. (*See* **Exhibit 39**).

**T.     Opt-in Plaintiff Jose Alberto Cassia**

181.     Jose Alberto Cassia worked as a DM for BBB.

182.     On February 18, 2013, Jose Alberto Cassia received and signed a DM Compensation

Acknowledgement form, which states:

> At the time I was hired, I was told what my anticipated weekly compensation will be and how it will be calculated.

I understand that my weekly compensation consists of two components: (1) a base weekly salary; and (2) an additional amount for all hours over 40 that I work during a week.

I understand that my base weekly salary is compensation for all hours I work in a week. I will be paid this base salary for each week I work, whether or not I work 40 hours in that week, subject to the Company's sick day and leave policies.

I further understand that I will be scheduled for no less than 47 hours per week, but that my actual hours worked will fluctuate depending on the needs of my store. (*See* **Exhibit 40**).

183.    On February 18, 2013 and January 16, 2014, Jose Alberto Cassia also received and signed annual notice and acknowledgement of pay rate forms, each of which state:

Overtime rate of pay: rate fluctuates based on hours worked in excess of 40*.

*\*As a Department Manager, your base weekly salary is compensation for all hours you have worked in the week, regardless of the number of hours you work. You will also be paid an additional amount for any hours worked over 40 in one week. Please refer to the attached Department Manager's Bi-Weekly Pay Stub for a detailed explanation.* (*See* **Exhibit 41**).

## U.    <u>Opt-in Plaintiff Latia Diaz</u>

184.    Latia Diaz worked as a DM for BBB.

185.    On July 30, 2010, Latia Diaz received and signed a DM Compensation Acknowledgement form, which states:

At the time I was hired, I was told what my anticipated weekly compensation will be and how it will be calculated.

I understand that my weekly compensation consists of two components: (1) a base weekly salary; and (2) an additional amount for all hours over 40 that I work during a week.

I understand that my base weekly salary is compensation for all hours I work in a week. I will be paid this base salary for each week I work, whether or not I work 40 hours in that week, subject to the Company's sick day and leave policies.

I further understand that I will be scheduled for no less than 47 hours per week, but that my actual hours worked will fluctuate depending on the needs of my store. (*See* **Exhibit 42**).

186.    On January 4, 2012, January 1, 2013, July 25, 2013, February 4, 2014, and August 5,

2014, Latia Diaz also received and signed annual notice and acknowledgement of pay rate forms,

each of which state:

> Overtime rate of pay: rate fluctuates based on hours worked in excess of 40*.

> *As a Department Manager, your base weekly salary is compensation for all hours you have worked in the week, regardless of the number of hours you work. You will also be paid an additional amount for any hours worked over 40 in one week. Please refer to the attached Department Manager's Bi-Weekly Pay Stub for a detailed explanation.* (*See* **Exhibit 43**).

## V.    Opt-in Plaintiff LeRoy Clarke

187.    LeRoy Clarke worked as a DM for BBB.

188.    On July 5, 2011, LeRoy Clarke received and signed a DM Compensation

Acknowledgement form, which states:

> At the time I was hired, I was told what my anticipated weekly compensation will be and how it will be calculated.

> I understand that my weekly compensation consists of two components: (1) a base weekly salary; and (2) an additional amount for all hours over 40 that I work during a week.

> I understand that my base weekly salary is compensation for all hours I work in a week. I will be paid this base salary for each week I work, whether or not I work 40 hours in that week, subject to the Company's sick day and leave policies.

> I further understand that I will be scheduled for no less than 47 hours per week, but that my actual hours worked will fluctuate depending on the needs of my store. (*See* **Exhibit 44**).

189.    On July 5, 2011, January 3, 2012, December 26, 2012, August 12, 2013, January 24,

2014, and July 23, 2014, LeRoy Clarke also received and signed annual notice and

acknowledgement of pay rate forms, each of which state:

> Overtime rate of pay: rate fluctuates based on hours worked in excess of 40*.

> *As a Department Manager, your base weekly salary is compensation for all hours you have worked in the week, regardless of the number of hours you work. You will also be paid an additional amount for any hours worked over 40 in one week. Please*

*refer to the attached Department Manager's Bi-Weekly Pay Stub for a detailed explanation.* (*See* **Exhibit 45**).

**W.    Opt-in Plaintiff Tomika Boyd**

190.    Tomika Boyd worked as a DM for BBB.

191.    On July 29, 2005, Tomika Boyd received and signed a DM Compensation

Acknowledgement form, which states:

At the time I was hired, I was told what my anticipated weekly compensation will be and how it will be calculated.

I understand that my weekly compensation consists of two components: (1) a base weekly salary; and (2) an additional amount for all hours over 40 that I work during a week.

I understand that my base weekly salary is compensation for all hours I work in a week. I will be paid this base salary for each week I work, whether or not I work 40 hours in that week, subject to the Company's sick day and leave policies.

I further understand that I will be scheduled for no less than 47 hours per week, but that my actual hours worked will fluctuate depending on the needs of my store. (*See* **Exhibit 46**).

192.    On January 2, 2012, April 8, 2013, and January 20, 2014, Tomika Boyd also

received and signed annual notice and acknowledgement of pay rate forms, each of which state:

Overtime rate of pay: rate fluctuates based on hours worked in excess of 40*.

*\*As a Department Manager, your base weekly salary is compensation for all hours you have worked in the week, regardless of the number of hours you work. You will also be paid an additional amount for any hours worked over 40 in one week. Please refer to the attached Department Manager's Bi-Weekly Pay Stub for a detailed explanation.* (*See* **Exhibit 47**).

Respectfully submitted,

PLAINTIFFS,                                           BED BATH AND BEYOND INC.

By their attorneys,                                   By its attorneys,


_/s/ Jian Hang_____                          _/s/ Jonathan L. Sulds_____
Jian Hang                                            Jonathan L. Sulds
Keli Liu                                             Justin F. Keith (admitted _pro hac vice_)
Hang & Associates, PLLC                              Greenberg Traurig LLP
136-18 39th Avenue, Suite 1003                       MetLife Building
Flushing, New York 11354                             200 Park Avenue, 34th Floor
(718) 353-8588                                       New York, NY 10166
                                                     (212) 801-9200
                                                     suldsj@gtlaw.com
_/s/ James Murphy_____                       keithj@gtlaw.com
James E. Murphy
Lloyd R. Ambinder
Virginia & Ambinder, LLP
40 Broad Street, 7th Floor
New York, New York 10004
(212) 943-9080