UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- x
                                             :

DANYELL THOMAS, RASHAUN F. FRAZER,
ANDRAE WHALEY, ELENI MIGLIS, CHERYL A.
STRYCHARZ, and DANIELLE BROWN, individually
and on behalf of all other employees similarly situated,

      Plaintiffs,

v.

  BED BATH AND BEYOND, INC.

      Defendant.
-------------------------------------------------------------------- x

Civil Action No. 16-cv-8160

## BED BATH & BEYOND INC.'S MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND IN
## FURTHER SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

GREENBERG TRAURIG, LLP
*Attorneys for Defendant*
*Bed Bath and Beyond Inc.*
200 Park Avenue
New York, New York 10166
212.801.9200

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

UNDISPUTED FACTS .........................................................................................................5

ARGUMENT .........................................................................................................................6

      I.      Plaintiffs Fail to Dispute *Any* of BBB's Facts or Evidence .................................... 6

      II.     BBB Lawfully Paid DM's Under the FWW Methodology ................................... 7

            A.      The DM Plaintiffs' Hours Fluctuated From Week to Week...................... 8

            B.      The DM Plaintiffs Received a Fixed Weekly Salary, Regardless of the Number of Hours They Worked During the Week............................ 12

            C.      BBB and the DM Plaintiffs Had a Clear, Mutual Understanding that BBB Would Pay the DM Plaintiffs a Fixed Weekly Salary Regardless of the Number of Hours Worked........................................... 24

      III.    The DM Plaintiffs Have Failed to Demonstrate that BBB "Willfully" Violated the FLSA ................................................................................................ 27

CONCLUSION.....................................................................................................................29

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                        **Page(s)**

*Aiken v. Cnty. of Hampton*,
   172 F.3d 43, 1998 WL 957458 (4th Cir. 1998) .................................................................9, 12

*Blotzer v. L-3 Commc'ns. Corp.*,
   No. 11 Civ. 274 (TUC), 2012 WL 6086931 (D. Ariz. Dec. 6, 2012) ..........................9, 11, 12

*Brumley v. Camin Cargo Control, Inc.*,
   No. 08 Civ. 1798 (JLL), 2010 WL 1644066 (D.N.J. April 22, 2010) ....................................22

*Chevron Corp. v. Donziger*,
   886 F. Supp. 2d 235 (S.D.N.Y. 2012) .....................................................................................6

*Clarke v. JPMorgan Chase Bank, N.A.*,
   No. 08 Civ. 2400 (CM), 2010 WL 1379778 (S.D.N.Y. Mar. 26, 2010) ...........................28, 29

*Condo v. Sysco Corp.*,
   1 F.3d 599 (7th Cir. 1993) ................................................................................................9, 12

*Costello v. Home Depot USA, Inc.*,
   944 F. Supp. 2d 199 (D. Conn. 2013) ...................................................................9, 10, 11, 12

*El v. Potter*,
   No. 01 Civ. 6125 (RWS), 2004 WL 2793166 (S.D.N.Y. Dec. 6, 2004) ...............................28

*F.D.I.C. v. Great Am. Ins. Co.*,
   607 F.3d 288 (2d Cir. 2010) ....................................................................................................6

*Greenwich Films Prods., S.A. v. DRG Records, Inc.*,
   No. 91 Civ. 0546 (JSM), 1995 WL 312477 (S.D.N.Y. May 22, 1995) .................................25

*Griffin v. Wake Cnty.*,
   142 F.3d 712 (4th Cir. 1998) .................................................................................................26

*Gubitosi v. Kapica*,
   154 F.3d 30 (2d Cir. 1998) ......................................................................................................6

*Hasan v. GPM Investments, LLC*,
   896 F .........................................................................................................................9, 10, 11, 12

*Heder v. City of Two Rivers*,
   295 F.3d 777 (7th Cir. 2002) .............................................................................................9, 12

*Hunter v. Sprint Corp.*,
   453 F. Supp. 2d 44 (D.D.C. 2006) ................................................................................ *passim*

*Kelly v. City of New York*,
   No. 91 Civ. 2567 (JFK), 2000 WL 1154062 (S.D.N.Y. Aug. 15, 2000).................................23

*Lund v. Chem. Bank*,
   797 F. Supp. 259 (S.D.N.Y. 1992) .......................................................................................25

*Martinez v. Refinery Terminal Fire Co.*,
   No. 11 Civ. 295 (NGR), 2014 WL 7188777 (S.D. Tex. Dec. 16, 2014) ...............................13

*McLaughlin v. Richland Shoe Co.*,
   486 U.S. 128 (1988).............................................................................................................29

*Medley v. Southern health Partners, Inc.*, ...................................................................................21
   No. 17 Civ. 00003 (AT), 2017 WL 3485641 (M.D. Tenn., Aug. 15, 2017)

*Mitchell v. Abercrombie & Fitch, Co.*,
   428 F. Supp. 2d 725 (S.D. Oh. 2006) ...............................................................................9, 12

*Moore v. Pender EMS and Fire, Inc.*,
   No. 16 Civ. 130 (FL), 2016 WL 7046753 (E.D.N.C. Dec. 2, 2016) .....................................21

*Mu Yan Lin v. Burlington Ins. Co.*,
   No. 11 Civ. 33 (PGG), 2012 WL 967633 (S.D.N.Y. Mar. 21, 2012).......................................6

*Newsom v. NPC Intern., Inc.*,
   2003 WL 23849758 (W.D. Tenn. Sept. 29, 2003)............................................................9, 12

*Philip Morris, Inc. v. Nat'l Asbestos Workers Medical Fund*,
   214 F.3d 132 – 35 (2000)........................................................................................................8

*R.G. Group, Inc. v. Horn & Hardart Co.*,
   751 F.2d 69 (2d Cir. 1984).......................................................................................................7

*Ramos v. Telgian Corp.*,
   176 F. Supp. 3d 181 (E.D.N.Y. 2016) ........................................................................... *passim*

*Ramos v. Telgian Corp.*,
   No. 14 Civ. 3422 (PK), 2016 WL 1959746 (E.D.N.Y. May 3, 2016)....................................10

*Riddick v. Thomas*,
   No. 11 Civ. 2986 (KBF), 2012 WL 919328 (S.D.N.Y. Mar. 15, 2012) ...................................6

*Robinson v. Pan Am. World Airways, Inc.*,
   650 F. Supp. 125 (S.D.N.Y. 1986) .....................................................................................4, 25

*Samson v. Apollo Resources, Inc.*,
   242 F.3d 629 (5th Cir. 2001) ...............................................................................................3, 19

iii

*Saunders v. City of N.Y.*,
  594 F. Supp. 2d 346 (S.D.N.Y. 2008)...........................................................................27, 28

*Spataro v. Gov't Employers Ins. Co.*,
  No. 13 Civ. 5020 (JS), 2014 WL 3890222 (E.D.N.Y. Aug. 6, 2014)...........................9, 11, 12

*Stein v. Guardsmark, LLC*,
  No. 12 Civ. 4739 (JPO), 2013 WL 3809463 (S.D.N.Y. July 23, 2013). ........................ *passim*

*T.Y. v. New York City Dep't of Educ.*,
  584 F.3d 412 (2d Cir. 2009)...........................................................................................1

*Teblum v. Eckerd Corp. of Fla, Inc.*,
  2006 WL 288932 (M.D. Fla. Feb. 7, 2006) ......................................................................9, 12

*Wills v. RadioShack Corp.*,
  981 F. Supp. 2d 245 (S.D.N.Y. 2013)........................................................................2, 4, 7, 24

*Young Chul Kim v. Capital Dental Tech. Lab., Inc.*,
  No. 14 Civ. 5014 (EEB), 2017 WL 4357386 (N.D. Ill. Oct. 2, 2017)....................................20

*Young v. Cooper Cameron Corp.*,
  586 F.3d 201 (2d Cir. 2009).............................................................................................27

**Statutes**

Family Medical Leave Act.................................................................................3, 13, 14, 18

Fair Labor Standards Act ............................................................................................ *passim*

New York Labor Law .......................................................................................................1

**Other Authorities**

29 C.F.R. § 541.602 .........................................................................................................3

29 C.F.R. § 778.114 .........................................................................................................8

Fed. R. Civ. P. 56...........................................................................................................6, 7

Local Rule 56.1.....................................................................................................1, 5, 6, 25

Rule 12(b)(6)................................................................................................................11, 21

Rule 23(c)(2) ...................................................................................................................8

Rule 30(b)(6).................................................................................................................15, 28

*Wage and Hour Div. Opinion Letter*, FLSA 2009 – 3 (Jan. 14, 2009)........................................26

## INTRODUCTION

Bed Bath and Beyond Inc. ("BBB" or the "Company") respectfully submits this Memorandum of Law in opposition to Plaintiffs' summary judgment motion and in further support of BBB's motion for summary judgment as to the Department Manager ("DM") Plaintiffs. On the undisputed facts and under the governing law, BBB is entitled to summary judgment and the DM Plaintiffs' motion should be denied.

The uncontested facts establish that BBB properly paid Department Managers ("DMs") overtime under the Fluctuating WorkWeek ("FWW") methodology under both the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL").[1] Here, Plaintiffs do not contest any of BBB's material facts. They do not set forth any competing facts in support of their own motion. Indeed, the DM Plaintiffs have failed to submit any response to BBB's Local Rule 56.1 Statement of Undisputed Facts.

The law is plain:

> A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible. In the typical case, failure to respond results in a grant of summary judgment once the court assures itself that Rule 56's other requirements have been met.

*T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009) (internal citation omitted).

The **undisputed** facts and evidence in this record show that BBB fully and lawfully complied with the FWW pay method. The **uncontested** record evidence is that: (1) the DM Plaintiffs' hours fluctuated from week to week; (2) that DM Plaintiffs received a fixed weekly salary regardless of the number of hours they worked during the week; (3) their fixed weekly

---

[1] Plaintiffs concede that BBB is entitled to summary judgment against all Plaintiffs on Counts III and IV of the Complaint relating to proper wage notices and statements under the New York Labor Law. (Plaintiffs' Brief, at p. 2). Accordingly, BBB does not address those counts here. This Court should dismiss them with prejudice.

salary provided compensation above the applicable minimum wage; (4) BBB and the DM Plaintiffs had a clear, mutual understanding that BBB would pay the DM Plaintiffs a fixed weekly salary regardless of the number of hours they worked; and (5) the DM Plaintiffs received, in addition to their fixed weekly salaries, a fifty percent (50%) or "halftime" overtime premium for all hours worked in excess of 40 hours during the week.

In short, BBB met every FWW requirement. *See e.g., Wills v. RadioShack Corp*., 981 F. Supp. 2d 245, 255 (S.D.N.Y. 2013). Failing to put forth evidence establishing a disputed issue of material fact, Plaintiffs' summary judgment papers are based on legal arguments that defy the plain language of the FWW regulations, the controlling case law, and common sense.

First, Plaintiffs claim that their hours did not fluctuate "in the manner" prescribed by the FWW because the regulation's reference to long workweeks as well as short ones—according to Plaintiffs—can only be "referring to weeks where an individual works over and under forty hours in a week." (Plaintiffs' Brief, pp. 21; 23). But exactly this argument—by the same counsel—was explicitly rejected by the Court in *Ramos v. Telgian Corp*., 176 F. Supp. 3d 181, 195 (E.D.N.Y. 2016)[2] and also rejected by Judge Oetken in *Stein v. Guardsmark, LLC*, No. 12 Civ. 4739 (JPO), 2013 WL 3809463 (S.D.N.Y. July 23, 2013). (Plaintiffs' Brief, at p. 24) ("It is respectfully submitted that the analysis … provided by the Stein court is incorrect."). As aptly recognized by Judge Oetken as well as the Court in *Telgian*, the FWW does ***not*** require the DM Plaintiffs' hours to have varied above and below 40 hours; it merely requires that their hours fluctuate from week-to-week which they indisputably did. (BBB's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("SMF"), at ¶ 5).

---

[2] *Motion to certify appeal granted*, 2016 WL 1959746 (E.D.N.Y. May 3, 2016), *reconsideration denied*, 2016 WL 8711360 (E.D.N.Y. June 3, 2016), and *motion to certify appeal denied*, 2016 WL 8711360 (E.D.N.Y. June 3, 2016), and *on reconsideration in part*, 2017 WL 354200 (E.D.N.Y. Jan. 24, 2017).

Second, Plaintiffs claim that they did not receive their fixed weekly salaries each week because they were subject to "docking" when the DM worked less than 40 hours per week and had run out of paid time off, and/or because they were provided "supplemental" paid time off for holiday or off-day work. (Plaintiffs' Brief, pp. 13 – 20).

Again ignoring Judge Oetken who extensively referred to the exemption regulations in determining whether the *Stein* Plaintiff was paid a fixed weekly salary, Plaintiffs claim that 29 C.F.R. § 541.602 "has no application here, since workers paid using the FWW are *not* exempt from overtime requirements, and *cannot* have their weekly salary reduced due to absences during the workweek." (Plaintiffs' Brief, at p. 18) (emphasis in original).

Instead, Plaintiffs contend that because their salaries were fixed, the DM Plaintiffs were entitled to their pay each week no matter the circumstances. **According to Plaintiffs' theory, a DM Plaintiff would have had their pay "docked" if they were not paid for a full 12-week Family Medical Leave Act ("FMLA") leave and/or a six-month long vacation**.

Taken to its conclusion, Plaintiffs' assertion would require every employer who pays employees under the FWW to offer **unlimited** paid time off and **unlimited** paid leave in order to come within the ambit of paying a fixed weekly salary. This is not only contrary to what the law requires, but is against common sense. As the Fifth Circuit explained in *Samson v. Apollo Resources, Inc*., 242 F.3d 629, 639 (5th Cir. 2001), the fixed salary requirement does not mean:

> that the employer must pay the full salary even though the employee decides not to work all the hours that he is called upon to work. To hold otherwise would allow for a tremendous abuse of the FWW method by employees.

Then, after essentially arguing that BBB provided an *insufficient* amount of paid time off because it is not unlimited, Plaintiffs also claim that they were not paid a fixed weekly salary because BBB gave them *additional* paid time off for working holidays or off-days. With no

citation to evidence of record or applicable precedent, Plaintiffs assert—without any evidence or support—that additional paid time off is the equivalent of an hours-based compensation bonus violative of the fixed weekly salary requirement.

Even assuming that paid time off could somehow be construed as a monetary bonus (which it cannot), it is irrelevant to determining whether a DM Plaintiff received his or her fixed weekly salary each week. *See e.g.*, *Wills*, 981 F. Supp. 2d at 261 (finding that the FWW is "not offended where the worker has received performance-based bonuses, for these *do not* cause a weekly salary to vary by hours worked.") (emphasis in original).

Third, despite representing to this Court and to BBB in their pre-motion conference letter that Plaintiffs do not dispute that the DM Plaintiffs and BBB had a clear mutual understanding that they would receive a fixed weekly salary each week regardless of the number of hours worked (Dkt. 141), Plaintiffs now claim that their testimony is "sufficient to raise a triable issue of fact as to whether Plaintiffs had the requisite clear mutual understanding about the fixed salary being paid regardless of the number of hours work [sic]." (Plaintiffs' Brief, p. 28).

Plaintiffs are equitably estopped from contesting the clear mutual understanding prong because of their representation to the Court. *Robinson v. Pan Am. World Airways, Inc.*, 650 F. Supp. 125, 127 (S.D.N.Y. 1986). Indeed, Plaintiffs failed to contest BBB's statement of material facts which unequivocally states (with evidentiary support) that "BBB and the DM Plaintiffs had a clear mutual understanding that BBB would pay the DM Plaintiffs their fixed weekly salary each week, regardless of the number of hours they worked." (SMF, at ¶ 3). And, in any event, as we showed in our initial memorandum, as a matter of law, based on plain documentary evidence, clear mutual understanding is established here. (JSF, ¶¶ 18, 20, 28, 30, 38, 40, 49, 51, 59, 61, 71,

73, 81, 82, 86, 93, 95, 103, 105, 113, 115, 124, 126, 134, 136, 145, 147, 155, 156, 162, 164, 172, 174, 179, 180, 182, 183, 185, 186, 188, 189, 191, 192, at Exhibits 5 – 46).

Finally, because Plaintiffs have failed to demonstrate that BBB violated the FWW, BBB is entitled to summary judgment dismissing Plaintiffs' claim that BBB "willfully" violated the FLSA.

## UNDISPUTED FACTS

The relevant facts and record evidence underlying BBB's entitlement to summary judgment have been set forth at length in the parties' joint stipulation of material facts and BBB's statement of undisputed material facts, including the exhibits and papers annexed thereto. Because Plaintiffs have failed to respond to BBB's statement of material facts in accordance with Local Rule 56.1, *all* of the facts set forth therein are now uncontroverted, and therefore deemed admitted, including among others the following material facts:

- BBB and the DM Plaintiffs had a clear mutual understanding that BBB would pay the DM Plaintiffs their fixed weekly salary each week, regardless of the number of hours they worked. (SMF, ¶ 3).

- The DM Plaintiffs' fixed weekly salaries were sufficient to provide compensation at a regular rate not less than the legal minimum wage. (SMF, ¶ 4).

- The actual number of hours worked by the DM Plaintiffs fluctuated from week to week. (SMF, ¶¶ 5, 18, 20, 22, 24, 29, 31, 33, 35, 37, 39, 44, 46, 48, 50, 55, 57, 59, 64, 66, 68).

- The DM Plaintiffs received their fixed weekly salaries each week, regardless of the number of hours they worked. (SMF, ¶¶ 6, 17, 19, 21, 23, 25, 28, 30, 32, 34, 36, 38, 40, 43, 45, 47, 49, 51, 54, 56, 58, 60, 63, 65, 67, 69).

- The DM Plaintiffs received a fifty percent (50%) overtime premium in addition to their fixed weekly salary for all hours worked over 40 during each work week. (SMF, ¶¶ 7, 17, 19, 21, 23, 28, 30, 32, 34, 36, 38, 43, 45, 47, 49, 54, 56, 58, 63, 65, 67).

The uncontroverted and extensive facts set forth in BBB's Rule 56.1 statement—each supported by a substantial evidentiary record—establishes that BBB lawfully complied with the FWW.

## ARGUMENT

### I.    Plaintiffs Fail to Dispute *Any* of BBB's Facts or Evidence

Because Plaintiffs have failed to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact[,]" *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010), BBB is entitled to summary judgment. By failing to controvert *any* of BBB's separately stated material facts, Plaintiffs have admitted to each and every one of them. L.R. 56.1(c) ("Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party ***will be deemed to be admitted*** for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.") (emphasis added); *Chevron Corp. v. Donziger*, 886 F. Supp. 2d 235, 264 (S.D.N.Y. 2012) ("the effect of their failure to file the statement required by Local Civil Rule 56.1 in response to [the movant's] 56.1 Statement, according to the plain terms of the rule, ***is that they are deemed … admitted*** for purposes of this motion." (internal quotation marks omitted) (emphasis added)); *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998) (accepting "as true the material facts contained in defendants' [statement of material facts] because plaintiff failed to file a response"); *Mu Yan Lin v. Burlington Ins. Co.*, No. 11 Civ. 33 (PGG), 2012 WL 967633, at *1 n.1 (S.D.N.Y. Mar. 21, 2012); *Riddick v. Thomas*, No. 11 Civ. 2986 (KBF), 2012 WL 919328, at *1 (S.D.N.Y. Mar. 15, 2012).

Plaintiffs also did not submit their own statement of material facts with their cross-motion, which is "grounds for denial of [such] motion" pursuant to Local Rule 56.1(a) and Fed. R. Civ. P. 56. Indeed, Plaintiffs' not only failed to offer a *separate* statement of facts as required by the Rules, but their memorandum of law likewise proposes no alternative inferences to be

drawn from BBB's facts, and offers no other factual basis upon which a challenge to BBB's facts may be sustained. Plaintiffs do not even cite the parties' Joint Statement of Undisputed Facts submitted pursuant to this Court's September 14th Order (Dkt. 144).

All Plaintiffs rely on are declarations from a handful of the named and opt-in Plaintiffs that were submitted in conjunction with Plaintiffs' motion(s) for conditional certification.[3] (Dkt. 29, at Exhibits, D, E, F, G, H; and Dkt. 107, at Exhibits H, S). However, the "facts" set forth in the Plaintiffs' declarations are demonstrably untrue and/or are used by Plaintiffs to support the notion that the DM Plaintiffs lacked a clear mutual understanding—facts that Plaintiffs indicated are not at issue in this motion.

Federal Rule of Civil Procedure 56 requires a party attempting to raise a disputed issue of material fact to "provide '*concrete particulars*' showing that a trial is needed, and '[i]t is not sufficient merely to assert a conclusion without supplying supporting arguments or facts in opposition to that motion.'" *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978) (emphasis added)). There are no such "concrete particulars" here.

## II.     BBB Lawfully Paid DM's Under the FWW Methodology

As this Court observed in *Wills*, 981 F. Supp. 2d at 255 "…employers may use the FWW method if the following five conditions are met:

> (1) the employee's hours fluctuate from week to week;

> (2) the employee receives a fixed weekly salary which remains the same regardless of the number of hours the employee works during the week (excluding overtime premiums);

---

[3] Of the handful of declarations contained within Plaintiffs' filing, one of them is from Plaintiff Eleni Miglis who admits that her claims under the FWW are time-barred. (Dkt. 90, n. 3 "Miglis's employment with Defendant as a DM (2008 – 2009) is outside the relevant period for [the FWW claims].")

(3) the fixed amount is sufficient to provide compensation at a regular rate not less than the legal minimum wage;

(4) the employer and employee have a clear mutual understanding that the employer will pay the employee a fixed salary regardless of the number of hours worked; and

(5) the employee receives a fifty percent (50%) overtime premium in addition to the fixed weekly salary for all hours worked in excess of 40 during the week."

(citations omitted); 29 C.F.R. § 778.114.

The DM Plaintiffs claim that: (1) their hours did not regularly fluctuate above and below 40 hours in a workweek (Plaintiffs' Brief, pp. 21 – 25); (2) they did not receive a fixed weekly salary each week because their pay was subject to "docking" when they worked less than 40 hours per week and/or their pay was not fixed because it was subject to a "bonus" in the form of additional paid time off (Plaintiffs' Brief, pp. 13 – 20); and (3) that BBB and the DM Plaintiffs did not have a clear mutual understanding that the DM Plaintiffs would receive their fixed weekly salary each week regardless of the number of hours worked (Plaintiffs' Brief, pp. 27 – 28).[4]

In turn, we show why each of these contentions fail.

## A.   *The DM Plaintiffs' Hours Fluctuated From Week to Week*

In order for the FWW to apply, the DM Plaintiffs' hours must simply "vary, from workweek to workweek." *Stein*, 2013 WL 3809463, at *4 (quoting *Flood v. New Hanover Cnty.*, 125 F.3d 249, 253 (4th Cir. 1997)). There is no requirement of any particular degree of

---

[4] Plaintiffs put the cart before the horse, and seek summary judgment for themselves and "all others similarly situated." (Plaintiffs' Brief, at p. 1). As an initial matter, Plaintiffs have set forth no evidence pertaining to putative class members. As BBB pointed out in its opposition to Plaintiffs' motion for conditional certification, determining whether BBB properly applied the FWW requires an individualized inquiry. Further, Plaintiffs cannot represent "all others similarly situated" before a class is certified, as doing so would violate Rule 23(c)(2) which prohibits one-way intervention—in other words, a no lose situation for putative class members who can remain in the class if the Court rules in their favor, but opt out if the Court makes an unfavorable merits ruling. *See, e.g., Philip Morris, Inc. v. Nat'l Asbestos Workers Medical Fund*, 214 F.3d 132, 134 – 35 (2000). The doctrine of one-way intervention is precisely the reason why BBB moved for summary judgment as to the named DM Plaintiffs only, and not with respect to all putative class members.

fluctuation. Courts *in this District* have held that hours fluctuating from 50 to 55 week to week satisfy this requirement. *Id*.

BBB pointed out in its moving papers that numerous other District and Circuit Courts have held in accord. *See Telgian*, 176 F. Supp. 3d at 195; *Mitchell v. Abercrombie & Fitch, Co*., 428 F. Supp. 2d 725, 735 (S.D. Oh. 2006) ("neither existing authority nor the language of 29 C.F.R. § 778.114(a) supports Plaintiffs' argument that an employee's hours mu[st] fluctuate above and below 40 for the fluctuating workweek method of computing overtime to apply."); *Condo v. Sysco Corp*., 1 F.3d 599, 603 (7th Cir. 1993) (although work did not fall below 40 hours per week, plaintiff worked varying amounts of overtime hours and number of hours worked therefore "fluctuated"); *Aiken v. Cnty. of Hampton*, 172 F.3d 43, 1998 WL 957458, at *3 (4th Cir. 1998) (finding "unavailing" plaintiff's claim that fluctuation requires "working fewer than 40 … hours in a given week"); *Teblum v. Eckerd Corp. of Fla, Inc*., 2006 WL 288932, at *5 (M.D. Fla. Feb. 7, 2006) (finding no dispute of fact that employer satisfied fluctuation prong of FWW where plaintiff's "hours generally fluctuated only above forty hours per week"); *Newsom v. NPC Intern., Inc*., 2003 WL 23849758, at *4 (W.D. Tenn. Sept. 29, 2003) ("the Court finds that an employee's hours need not vary both above and below forty hours per week in order for an employer to utilize the fluctuating work week method of calculating overtime").

Rather than attempting to distinguish any of the well-reasoned cases cited by BBB holding that hours need not fluctuate above and below 40 in order for the FWW to be properly applied, Plaintiffs instead ask this Court to ignore them all together. In doing so, Plaintiffs argue that the Court should "follow the reasoning of <u>Spataro</u>, <u>Heder</u>, <u>Hunter</u>, <u>Blotzer</u>, <u>Hasan</u>, and <u>Costello</u> in rejecting [BBB's cases]." (Plaintiffs' Brief, p. 25).[5]

---

[5] *Spataro v. Gov't Employers Ins. Co*., No. 13 Civ. 5020 (JS), 2014 WL 3890222 (E.D.N.Y. Aug. 6, 2014); *Heder v. City of Two Rivers*, 295 F.3d 777 (7th Cir. 2002); *Hunter v. Sprint Corp*., 453 F. Supp. 2d 44 (D.D.C. 2006); *Blotzer*

The *Telgian* Court rejected this identical argument, fully considering each case cited by Plaintiffs here:

> The Court is persuaded by the argument and case law cited by Defendant, and concludes that there is no genuine issue of material fact with respect to whether Plaintiffs' hours fluctuated as contemplated by the FWW scheme. They did.

*Telgian*, 176 F. Supp. 3d at 195.

When the Plaintiffs in *Telgian* sought leave to file an interlocutory appeal on this issue, the Court reiterated again that it "believes that it has correctly interpreted the FWW regulation[.]" *Ramos v. Telgian Corp.*, No. 14 Civ. 3422 (PK) (CLB), 2016 WL 1959746, at *3 (E.D.N.Y. May 3, 2016).

The *Telgian* Court did not simply distinguish the cases Plaintiffs cite again here, but instead Judge Chen carefully traced through the regulations in detail and found that "requiring an employee's work hours to fluctuate both above and below 40 hours in a week to come within the rule[ ] ***finds no support in its implementing regulation***[.]" *Telgian*, 176 F. Supp. 3d at 195 (emphasis added). The Court said this is so because "the FWW scheme requires that the employee's fixed salary 'compensate the employee at straight time rates for *whatever* hours are worked in the workweek[.]" *Id.* at 196 (emphasis in original) (quoting 29 C.F.R. § 778.114(a)); *see also*, *Stein*, 2013 WL 3809463, at *4 (concluding that fluctuation requirement was met where plaintiff's hours fluctuated between 50–55+ hours per week).

The *Telgian* Court acknowledged that while the reference in the regulation to the number of hours worked whether "'few or many' reasonably may be interpreted as referring to work hours both below and above a standard workweek, *i.e.*, 40 hours, that reference clearly does not impose, or even suggest, a *requirement* that an employee's hours must vary in both directions in

---

*v. L-3 Commc'ns. Corp.*, No. 11 Civ. 274 (TUC), 2012 WL 6086931 (D. Ariz. Dec. 6, 2012); *Hasan v. GPM Investments, LLC*, 896 F, Supp. 2d 145 (D. Conn. 2012); *Costello v. Home Depot USA, Inc.*, 944 F. Supp. 2d 199 (D. Conn. 2013).

order to come within the FWW rule." *Telgian*, 176 F. Supp. 3d at 195 (emphasis in original). The

Court went on to explain:

> This interpretation is confirmed by the next sentence, which discusses a fixed
> salary that pays for 'hours worked each workweek, *whatever their number*, rather
> than for working 40 hours or some other fixed weekly work period.' Again, the
> regulation does not specify that the weekly work-hour deviation must be in both
> directions; the phrase 'whatever the number' plainly contemplates that an
> employee's work hours could be either more or less than the 40-hour or other
> fixed workweek, or both.

*Id.*, at 195–96 (emphasis in original).

Here, as Judge Chen wrote, there is no justification for "reading into the regulation ***a***

***requirement that otherwise does not exist***." *Id.* (emphasis added). The plain meaning of the

DOL regulations calls for rejection of Plaintiffs' argument.

Moreover, as recognized by *Telgian*, none of the cases relied upon by the DM Plaintiffs

are persuasive.

For example, in *Spataro*—a case decided on a motion to dismiss and not on the merits—

the Court made a fleeting reference to a requirement of fluctuation above and below 40 hours ***in***

***dicta*** when determining whether the plaintiff had plausibly stated a claim for relief under Rule

12(b)(6). *Spataro*, 2014 WL 3890222, at *3.

Equally unpersuasive is *Hasan*, where the FWW was before the Court in order to

determine "the proper formula for calculating an award [of damages] should a jury find in the

plaintiffs' favor" on their misclassification claims. *Hasan*, 896 F. Supp. 2d 145. The Courts'

analyses of the FWW in *Hunter*, *Blotzer*, and *Costello* also pertained to evaluating the proper

damages for employees alleging misclassification. *Hunter*, 453 F. Supp. 44 (finding that the

FWW would be inapplicable for damages "[s]hould it turn out that [plaintiff] was not exempt

from the FLSA…"); *Blotzer*, 2012 WL 6086931 (evaluating an award of damages after

concluding "that Defendant misclassified Plaintiffs as exempt…"); *Costello*, 944 F. Supp. 2d 199 (finding the employer's attempt to calculate damages using the FWW method to be "at odds in the misclassification context[.]") In other words, similar to *Spataro*, the Courts in *Hasan*, *Hunter*, *Blotzer,* and *Costello* were not evaluating the merits of whether an employer properly applied the FWW.

Similarly, the facts in *Heder* and the Court's corresponding holding there are inapplicable here. The plaintiffs in *Heder* were firefighters who "[did not] work an ordinary 40-hour week" but instead had a different "workweek" over which their time was calculated—"216 hours on the job over a span of 27 days." *Heder*, 295 F.3d at 779. Thus, the Court did not engage in any analysis of whether the FWW requires fluctuation of hours above and below 40 workweek to workweek.

In sum, **none** of the cases upon which the DM Plaintiffs ask this Court to rely involve an analysis on the merits of whether an employer properly applied the FWW in paying employees overtime. Consequently, Plaintiffs' request to impose a new requirement of fluctuation above and below 40 hours not only lacks support in the regulations, but finds no support in the caselaw.

Based on the record evidence and Plaintiffs' own admission that the DM Plaintiffs' hours fluctuated, there is no disputed issue of material fact that BBB has satisfied the fluctuation prong under *Telgian*, *Stein, Mitchell, Condo, Aiken, Teblum, and Newsom, supra*.

> **B.**     ***The DM Plaintiffs Received a Fixed Weekly Salary, Regardless of the Number of Hours They Worked During the Week***

The uncontested facts here are that the DM Plaintiffs were compensated with a fixed weekly salary that remained the same regardless of the number of hours they worked. (SMF, ¶ 6; Declaration of Lauren Alvarez ("Alvarez Dec."), ¶ 4, **Exhibits** 25 – 28; 30 – 35; 37 – 40; 42 – 44; 46 – 48; 50 – 52; 54 – 55).

In their motion, Plaintiffs assert that in 12 instances certain DM's salaries were not fixed, but rather were subject to what they label as "docking" when they worked fewer than 40 hours in a week. Plaintiffs appear to conflate the requirement of a fixed weekly salary with that of being guaranteed pay regardless of whether an individual works at all. (Plaintiffs' Brief, p. 16) (claiming that "when a FWW employee has run out of paid time off, *they must be paid the full amount for that week anyway*." (emphasis in original)).

For example, under Plaintiffs' theory, an employer who does not pay for FMLA leave which, by the statute's own terms may be unpaid, 29 U.S.C. §§ 2612(c), would engage in improper "docking." In addition to asking this Court to find requirements in the FWW regulations that simply do not exist, Plaintiffs are apparently also asking that the Court create a new exception to unpaid leave under the FMLA for individuals paid under the FWW.

The 12 earnings statements referenced by Plaintiffs[6] do not give rise to a disputed issue of material fact because for each of those weeks, the DM or opt-in Plaintiff was not entitled to receive a full weekly salary amount for lawful reasons.

First, and as admitted by Plaintiffs, half of the 12 weeks at issue involve weeks in which no work was performed. (Plaintiffs' Brief, p. 16)[7]. Plaintiffs' own-cited case law makes clear that "[u]nder the FWW method, *an employer is not required to pay an employee for weeks in which no hours are worked*." *Martinez v. Refinery Terminal Fire Co*., No. 11 Civ. 295 (NGR), 2014 WL 7188777, at *6 (S.D. Tex. Dec. 16, 2014) (emphasis added). Thus, unquestionably, the following instances in which the DM Plaintiff or opt-in did not receive their fixed weekly salary

---

[6] *See* Declaration of James Emmet Murphy ("Murphy Dec.") (Dkt. 160), at ¶ 8.
[7] Plaintiffs' incorrectly assert that seven (rather than six) earnings statements reflect weeks in which work was performed by an individual DM. One of these seven weeks relied on by Plaintiffs is week 2 of the pay period ending September 1, 2013 for Karla Reynosa; however, Plaintiffs' assertion is belied by the face of Ms. Reynosa's earning statement.

for ***not working at all*** cannot create any disputed issue of material fact relating to the fixed weekly salary prong:

- Week 2 of the pay period ending July 22, 2012, in which Danielle Brown did not work a single day because she was on vacation;

- Week 1 of the pay period ending November 10, 2013, where Rashaun Frazer did not work a single day because he was on FMLA leave for the birth of his child (Alvarez Dec., ¶ 16, Exhibits 6; 19; 20);

- Week 1 of the pay period ending June 24, 2012, where Radica Kutwaru did not work a single day because she was on FMLA leave due to an injury she sustained (Alvarez Dec., ¶ 17, Exhibits 7; 19; 21);

- Week 1 of the pay period ending August 4, 2013, where Radica Kutwaru did not work a single day because she took a personal leave of absence to move from Georgia to New York (Alvarez Dec., ¶ 18, Exhibit 8);

- Week 1 of the pay period ending August 4, 2013, where Karla Reynosa did not work a single day because she took a vacation that was planned prior to her hire (Alvarez Dec, ¶ 19, Exhibits 9; 10; 11; 22); and

- Week 2 of the pay period ending September 1, 2013, where Karla Reynosa did not work a single day because she took a vacation that was planned prior to her hire (*Id.*).

And, of these six weeks where no work was performed, only ***one*** is within the three year limitations period under the FLSA (Rashaun Frazer), and ***none*** are within the two year limitations period that should govern in light of Plaintiffs' failure to demonstrate that BBB willfully violated the FLSA as set forth more fully below.

Equally, the six other earnings statements Plaintiffs cite fail to raise any disputed issue of material fact. Plaintiffs again ask this Court to ignore Judge Oetken. That is inappropriate. In *Stein*, Judge Oetken turned to the salary basis definition regulations in analyzing whether the plaintiff was paid a fixed weekly salary. *Stein*, 2013 WL 3809463, at *5 ("DOL regulations that define what it means to be paid on a 'salary basis' are instructive on this point[.]")

14

As the regulations set forth, an employee is considered to be paid on a salary basis where he/she receives a predetermined amount of pay on a weekly basis, the amount of which "is not subject to reduction *because of variations in the quality or quantity of work performed*…" *Id*. (quoting 29 C.F.R. § 541.602) (emphasis added). Indeed, inherent in the word "docking" is the notion that an individual is legally entitled to their pay, but is deprived of receiving it for some unlawful reason—*i.e*., variations in quality or quantity of work.

Here, a leave policy such as BBB's does not reduce or "dock" salary because of variations in quality or quantity, and none of the DM Plaintiffs had their pay "docked" for any unlawful reason. (*Id*.). BBB's Rule 30(b)(6) witness, Lauren Alvarez, testified that even where a DM had exhausted their leave time or vacation time, their pay was never "docked" if they did not show up for a shift:

> Q: With respect to the time period between 2010 and 2015 in New York, department managers who had exhausted their personal days or vacation days and didn't come in to work for a shift, what would be the result of them not coming to work that day?

> [Ms. Alvarez]: They would be documented for not meeting their work schedule maybe, depending.

> Q: How would their pay be impacted?

> [Ms. Alvarez]: *It wouldn't. They would be paid*, but they would be documented based on whatever their work history was.
> …
> Q: If it was just because they decided not to come in that day?

> [Ms. Alvarez]: If they just decided not to come in that day, then yeah, it would be anywhere from a conversation, to a written documentation, to whatnot.
> …
> Q: During your time as a district manager … how often did that occur that the department managers would not show up to work after having already exhausted their vacation time and personal time?
> …
> [Ms. Alvarez]: I would say very infrequently.

Q: ***Do you recall any instances?***

[Ms. Alvarez]: ***None specifically, no.***

(Murphy Dec., at Exhibit C) (Alvarez Dep., 64:5 – 65:17) (emphasis added).

Michael Furlong, a regional recruiter and district HR manager, testified in accord with

Ms. Alvarez that no "docking" occurred regarding DMs' paid time off:

Q: What would be the minimum amount of paid time off that was offered to a department manager between 2010 and 2015?

[Mr. Furlong]: It varied depending on the time they started. It was an accrued paid time off for vacation time, so that would vary depending on the time that they started.

…

Q: Was there also sick time offered?

[Mr. Furlong]: Yes.

Q: How would that accrue?

[Mr. Furlong]: It didn't accrue. It was an unlimited amount of sick time.

…

Q: ***That was paid time?***

[Mr. Furlong]: ***Yes.***

Q: So when you say an unlimited amount of sick time, could someone not come in to work for four months and get paid because they had an unlimited amount of sick time?

[Mr. Furlong]: If someone was going to be out for an extended period of time, that would be a leave, it wouldn't be out sick. So that wouldn't be relevant.

Q: When would a sick time period become a leave period?

[Mr. Furlong]: If someone was going to be out for more than a week's period of time, then they would apply for a Family Medical Leave Act.

…

Q: Did individuals also have any other kinds of paid time off?

[Mr. Furlong]: Yes. They would receive personal days.

16

Q: And how many personal days would the department managers receive?

[Mr. Furlong]: After their second year with the company, they would accrue two personal days per calendar year.

…

Q: If someone started in January as a fresh department manager, they just started on January 1, how would they go about accruing vacation time as [a] department manager?

[Mr. Furlong]: If they started in January of that year, they would receive the full amount of vacation time for that calendar year. So it would be 10 days of vacation time for that first year. It accrues monthly, so it would be 10 days divided by 12. However, *if they in February were taking a week's vacation that was preplanned, we would allow them to take that full week with the paid vacation time so they would essentially be borrowing against time that was not yet accrued*.

…

Q: If you know, if an individual had used up all their accrued vacation time and did not have personal days, and said I need to take off for the next two days because my daughter is sick, as a department manager, what would happen with their pay for those days?

[Mr. Furlong]: They could apply for a personal leave if they had a special circumstance in which they would need to take additional time off and had exhausted all of their time.

…

Q: What would happen if that request was denied?

[Mr. Furlong]: We would explain to them why it was denied.

Q: And what would happen if they then took the time off anyway?

[Mr. Furlong]: *I can't recall any such case.*

…

Q: To your knowledge, at any point did Bed Bath and Beyond make any deductions from the pay of department managers?

[Mr. Furlong]: *No, no deductions*.

(Declaration of Justin F. Keith ("Keith Dec"), at Exhibit 1) (Furlong Dep., 74:7 – 79:14; 139:9 – 12) (emphasis added).

17

None of the remaining six earnings statements relied upon by the Plaintiffs show any "docking" or deviations from this lawful policy.

Specifically, Karla Reynosa did not receive her full pay in week 1 of the pay period ending February 14, 2015 because her last day of employment with the Company was on February 5, 2015 and she therefore did not work for the full week. (Alvarez Dec., ¶ 24, Exhibit 13). The Department of Labor has made clear that "an employee employed on a fixed salary basis … may be paid a pro rata share of his/her salary in the initial or terminal week of his/her employment when he/she is not in payroll status for the entire week." U.S. Department of Labor Field Operations Handbook § 32b04b(c).

Similarly, Plaintiffs' reliance on week 2 of the pay period ending May 25, 2014 and week 2 of the pay period ending June 8, 2014 for Karla Reynosa as being two weeks in which she worked but did not receive full pay is simply incorrect. As BBB made clear in its moving brief, a payroll error occurred in the pay period ending May 25, 2014, for which Karla Reynosa was given cash from the register in order to make her whole until the error was corrected and reflected in the next pay period ending June 8, 2014—she received her full salary in the form of a check plus cash. (Alvarez Dec., ¶¶ 22 – 23, Exhibits 14; 15; 23; 24). This is also evidenced by the fact that Karla Reynosa received two separate earnings statements for the pay period ending June 8, 2014—one reflecting the reimbursement (Alvarez Dec., Exhibit 16) and the other reflecting her regular salary for that pay period (Alvarez Dec., Exhibit 17).

Further, week 2 of the pay period ending November 10, 2013 (which is outside the two year limitations period under the FLSA), where Rashaun Frazer worked 39.75 hours, does not reflect any impermissible "docking" of pay where Rashaun Frazer remained out on unpaid FMLA leave through the Monday of that workweek. (Alvarez Dec., ¶ 16, Exhibits 6; 19; 20).

Week 1 of the pay period ending July 7, 2013 (which is also outside the limitations period under the FLSA) where Karla Reynosa worked 28.75 hours similarly fails to reflect any improper "docking," where Ms. Reynosa and the Company agreed at the time of her hire that she would take this time unpaid in light of a previously scheduled vacation. (Alvarez Dec, ¶ 19, Exhibits 9; 10; 11; 22). In other words, Ms. Reynosa agreed at the very start of her employment relationship that she was not entitled to this pay such that it could have been thereafter "docked." This scenario is no different than an employee who is in his/her initial or terminal week of employment and is simply "not in payroll status for the entire week." *Id*. at § 32b04b(c).

The prohibitions on "docking" are meant to ensure that employees are paid their full salary when their schedules are fluctuating or are beyond their control; however, this prohibition on "docking" does not cover a prospective arrangement between an employee and the Company where the Company agrees to a request from the employee for time off due to personal reasons:

> deductions for willful absences or tardiness do not run afoul of the guidelines governing the FWW method… [The fixed weekly salary requirement] does not mean … that the employer must pay the full salary even though the employee decides not to work all the hours that he is called upon to work.

*Samson*, 242 F.3d at 639; *see also*, U.S. Department of Labor Field Operations Handbook § 32b04b(b) (noting that occasional deductions for willful absences are permissible under the FWW).

The cases relied upon by the Plaintiffs do not hold otherwise. Plaintiffs dedicate an entire page of their brief to a block quote from *Hunter v. Sprint Corp*., 453 F. Supp. 2d 44 (D.D.C. 2006) in an effort to show that the FWW requires a fixed weekly salary no matter the circumstances. (Plaintiffs' Brief, pp. 14 – 15). In *Hunter*, however, the Court was analyzing the FWW in the context of a damages calculation relating to a misclassification claim. And, in doing so, the Court did not find that the employer violated the fixed weekly salary prong of the FWW,

but found that the parties lacked a clear mutual understanding that the plaintiff would receive a fixed weekly salary each week in light of ***an express company policy*** "that, unless an employee utilized earned leave (e.g., vacation or 'floating holiday' time), it would deduct a full or partial day's pay in the event that either (1) the employee was required to attend a court proceeding as a defendant or witness, or (2) the employee was unable to report to work due to inclement weather." *Hunter*, 453 F. Supp. 2d at 60.[8]

BBB has no express policy of the sort described in *Hunter*. In fact, BBB's policy is quite the opposite of that described in *Hunter*. As explained by Michael Furlong: "So if there was inclement weather and the store closed, and that particular [department] manager needed to leave early because the store was closing due to inclement weather … ***they're still paid for those hours***[.]" (Keith Dec., at Exhibit 1) (Furlong Dep., 129:3 – 10) (emphasis added).

The remaining cases relied upon by Plaintiffs fare no better. In *Young Chul Kim v. Capital Dental Tech. Lab., Inc*., No. 14 Civ. 5014 (EEB), 2017 WL 4357386 (N.D. Ill. Oct. 2, 2017) the Court was, yet again, analyzing the FWW in the context of whether it could be used as a damages calculation for a plaintiff alleging misclassification. There, in finding an issue of fact as to how overtime damages should be calculated, the Court found that defendant made "no effort at all to explain" certain deductions caused by the ***employer's*** lack of work available to the plaintiffs, as well as unexplained full-day absences and bonuses reflected in plaintiffs' paychecks. *Id*. at *6. Here, there is no allegation whatsoever that any particular DM worked fewer (and was paid for fewer) than 40 hours per week as a result of ***BBB's*** scheduling or lack of

---

[8] In sharp contrast here, each DM Plaintiff executed a document stating their salary would be subject to BBB's leave policies. (JSF, ¶¶ 18, 28, 38, 49, 59, 71, 81, 86, 93, 103, 113, 124, 134, 145, 155, 162, 172, 179, 182, 185, 188, 191, at Exhibits 5, 7, 9, 11, 13, 15, 17, 19, 20, 22, 24, 26, 28, 30, 32, 34, 36, 38, 40, 42, 44, and 46) ("I understand that my base salary is compensation for all hours I work in a week. I will be paid this base salary for each week I work, whether or not I work 40 hours in that week, subject to the Company's sick day and leave policies.").

available hours to them. Rather, here, it was two DMs themselves in just *two weeks* where work was performed who requested the particular time off at issue.

Similarly, in *Moore v. Pender EMS and Fire, Inc*., No. 16 Civ. 130 (FL), 2016 WL 7046753 (E.D.N.C. Dec. 2, 2016), the Court did not analyze the merits of the employer's FWW application, but whether the plaintiffs had pled sufficient facts to withstand a Rule 12(b)(6) motion to dismiss. In doing so, the Court considered whether the plaintiffs plausibly alleged a FWW violation in pleading that during "weeks in which plaintiffs ***were directed to*** work less than 40 hours per week, defendant paid to plaintiffs a sum less than the fixed salary." *Id*. at *1 (emphasis added). Again, a situation where individuals alleged they were paid for less than 40 hours per week because they were forced to work for fewer than 40 hours per the direction of ***their employer***—facts that simply do not exist here.

Moreover, in *Medley v. Southern health Partners, Inc*., No. 17 Civ. 00003 (AT), 2017 WL 3485641 (M.D. Tenn., Aug. 15, 2017) the Court was analyzing the FWW in deciding whether to conditionally certify a class. There, the defendant company had an ***express policy*** that if "an employee requests more PTO than has been accumulated and it is approved or paid inadvertently, the overpayment will be deducted from the employee's pay as soon as the overdraw is identified." *Id*. at *10. Based on the early stage of the litigation and because discovery was still ongoing, the Court accepted "as true, for purposes of the plaintiff's Motion to Certify, that [the defendant] deducted some portion of the plaintiff's salary as a result of her taking unaccrued PTO leave" in deciding whether to issue notice. *Id*. In addition to there being no determination on the merits in *Medley*, the express policy at issue there is directly at odds with BBB's policy here as evidenced by the testimony of Ms. Alvarez and Mr. Furlong.

Finally, in *Brumley v. Camin Cargo Control, Inc.*, No. 08 Civ. 1798 (JLL), 2010 WL 1644066 (D.N.J. April 22, 2010), the defendant **admitted to docking** a plaintiff's salary for an **impermissible** reason. *Id*. at *5.

In sum, none of the Plaintiffs cases are instructive as to whether the earnings statements at issue reflect impermissible deductions from the DM Plaintiffs' pay.

Finally, and as BBB pointed out, the last earning statement reflects one isolated incident where a payroll error appears to have occurred out of the 5.5 years Danyell Thomas was employed (pay period ending January 5, 2014), which resulted in the underpayment of approximately $50. BBB is in the process of issuing a check to rectify this error. (Alvarez Dec., ¶ 21, Exhibit 12).

Here, based on the 12 earnings statements in Plaintiffs' motion, there is no disputed issue of material fact that BBB satisfied the fixed weekly salary prong.[9] The uncontested record evidence shows BBB intended to pay DMs on a salary basis and did not have *an actual practice* of making improper deductions. *Stein,* 2013 WL 3809463 at *6 (noting that the DOL clarified "that the effect of improper deductions depends upon whether the facts demonstrate that the employer *intended* to pay employees on a salary basis" as demonstrated by the words 'actual practice' of making improper deductions rather than the proposed 'pattern and practice' language) (emphasis added).

Of the 1,548 weeks at issue[10], Plaintiffs point to just 12 where they claim docking occurred. Nine of these weeks are plainly irrelevant because they reflect weeks in which no work was performed, a partial week at the end of employment, and two pay statements concerning a

---

[9] The DOL has set forth non-exhaustive relevant factors to consider when determining whether an employer intended to pay an employee on a salary basis, including "the number of improper deductions … [and] whether the employer has a clearly communicated policy permitting or prohibiting improper deductions." *Id*. (quoting 29 C.F.R. § 541.602).

[10] *See* Plaintiffs' Brief, p. 2.

single week where an individual received part of her compensation in cash. Thus, what remains are *three* weeks out of 1,548—*0.19%* of the total weeks at issue. Even if Plaintiffs could show that deductions occurred in those three weeks—which as set forth above they cannot—as Judge Oetken explained in *Stein*:

> courts have looked skeptically on single-incident docking of pay as proof that an employer did not intend to pay an employee on a salary basis. *Id*. at *6

In *Stein*, the Court granted summary judgment to the employer, rejecting the plaintiff's argument that her pay was docked when she was required to pay another employee when leaving early. Nothing like that is present here, particularly where Mr. Furlong testified unequivocally that BBB did not make any deductions from the pay of DMs. (Keith Dec., at Exhibit 1) (Furlong Dep., at 139:12); *See also Kelly v. City of New York*, No. 91 Civ. 2567 (JFK), 2000 WL 1154062, at *10 (S.D.N.Y. Aug. 15, 2000)[11] (collecting cases and stating that "While it is clear that one incident is insufficient to create an actual practice, it appears that there is no certain number or percentage that indicates the existence of an actual practice.")

And, in a last ditch effort to save their claims from dismissal, Plaintiffs conjure up a theory—without any relevant law in support—that providing DMs additional paid time off for working a holiday or off-day somehow constitutes additional monetary compensation in the form of a bonus. (Plaintiffs' Brief, pp. 19 – 20).

As an initial matter, Plaintiffs failed to raise this argument in their pre-motion conference letter and, therefore, it should not be considered for purposes of their motion. In any event, Plaintiffs make no effort to connect, factually or otherwise, the cases interpreting ***monetary payments*** in the form of a bonus as being violative of the FWW with the additional paid time off

---

[11] *Adhered to on reconsideration*, No. 91 Civ. 2567, 2001 WL 1132017 (S.D.N.Y. Sept. 24, 2001), *aff'd sub nom. Abramo v. City of New York*, 54 F. App'x 708 (2d Cir. 2003).

referenced here. Plaintiffs' argument in this regard attempts to compare apples to oranges, and Plaintiffs do not cite a single case where a court found the FWW to be impermissible based on an award of additional time off.

Plaintiffs are unable to reconcile their misplaced argument with the case law they cite because all of the cases referenced in Plaintiffs' brief involved monetary bonus compensation. For example, as this Court observed in *Wills v. RadioShack Corp.*, "the reference to bonuses for working 'undesirable hours' plainly refers to the bonuses for weekend **pay**, night **pay**, and holiday **pay**. **Such bonuses**, as noted, had been widely held inconsistent with the 'fixed weekly salary' requirement." *Wills*, 981 F. Supp. 2d at 259 (emphasis added).

Moreover, even if the award of additional paid time off could somehow take the form of a bonus, the cases relied upon by Plaintiffs "do not support the sweeping conclusion, urged by [the DMs], that any form of bonus … would preclude use of the FWW method." *Id*. at 261. If it did, then any vacation day accruals based on an employee's tenure with a company would also violate the fixed weekly salary prong. Indeed, Plaintiffs must demonstrate that the purported bonus here caused their weekly salary to vary. *Id*. (finding bonuses at issue permissible under the FWW because they "do not cause a weekly salary to vary by hours worked."). Plaintiffs have not offered a shred of evidence showing that any of the DMs here even received a "bonus" causing their fixed weekly salaries to vary as a result.

Accordingly, there is no disputed issue of fact that the DM Plaintiffs' received fixed weekly salaries in satisfaction of the FWW's element 2.

### C.    *BBB and the DM Plaintiffs Had a Clear, Mutual Understanding that BBB Would Pay the DM Plaintiffs a Fixed Weekly Salary Regardless of the Number of Hours Worked*

In their pre-motion conference letter, Plaintiffs represented to the Court and BBB that the clear mutual understanding factor was not in dispute for purposes of summary judgment.

(Dkt. 141). Now, despite this representation, Plaintiffs contend that BBB has failed to meet its burden and that the DM Plaintiffs' declarations and deposition testimony raise a dispute of fact over whether they had a clear mutual understanding that they would be paid a fixed weekly salary each week regardless of the number of hours worked.

As an initial matter, Plaintiffs are estopped from contesting the clear mutual understanding prong in light of their earlier representations that it was not in dispute. (Dkt. 141). As one Court in this District has stated, estoppel is appropriate to "close the mouth of the movant … when good conscience and honest dealing require it." *Robinson* 650 F. Supp. at 127 (citations and internal quotation marks omitted); *Greenwich Films Prods., S.A. v. DRG Records, Inc*., No. 91 Civ. 0546 (JSM), 1995 WL 312477, at *1 (S.D.N.Y. May 22, 1995) (noting that equitable estoppel is a "special tool to do justice in individual cases … and like other equitable remedies, it springs from the need to give relief where the strict enforcement of the rules of law would be inadequate[.]" (citation omitted)); *Lund v. Chem. Bank*, 797 F. Supp. 259, 273 (S.D.N.Y. 1992) (equitable estoppel does not lend itself to universal application, "but instead rests on the facts and circumstances of a particular case."). The DM Plaintiffs' inconsistent position here is the precise type of dealing that equitable estoppel is intended to prevent.

In any event, and as evidenced by the Plaintiffs' own admission to each of the facts set forth in BBB's Rule 56.1 Statement, there is no dispute of material fact that BBB and the DM Plaintiffs had a clear, mutual understanding that BBB would pay them a fixed salary regardless of the number of hours worked. (SMF, at ¶ 3) ("BBB and the DM Plaintiffs had a clear mutual understanding that BBB would pay the DM Plaintiffs their fixed weekly salary each week, regardless of the number of hours they worked. (*See* JSF, at Exhibits 5–47; Alvarez Dec., ¶ 7)").

Indeed, the DM Plaintiffs cannot claim otherwise because BBB provided the DM Plaintiffs with a clear and unequivocal explanation of their method of pay upon being hired in the DM Compensation Acknowledgement form, which included express language that they would be paid a fixed salary regardless of the number of hours they worked. (JSF, at ¶¶ 6 – 7). The DM Plaintiffs also received a sample paystub calculation and signed multiple Annual Pay Acknowledgement forms that, again, expressly informed the DM Plaintiffs that they would be paid a fixed weekly salary regardless of the number of hours they worked. (JSF, at ¶¶ 9 – 10).

As set forth in our initial memorandum, BBB and the DM Plaintiffs indisputably had a clear, mutual understanding that BBB would pay them a fixed salary regardless of the number of hours they worked, as evidenced by the forms that the DM Plaintiffs each reviewed and signed numerous times. (BBB's Brief, pp. 21 – 22); *see also, Griffin v. Wake Cnty*., 142 F.3d 712, 717 (4th Cir. 1998) (finding understanding where plaintiffs were aware of the payment method, even though they did not agree with the method); *Wage and Hour Div. Opinion Letter*, FLSA 2009 – 3 (Jan. 14, 2009).

Even if documents plain on their face were somehow insufficient to inform the DM Plaintiffs of their pay arrangement—which they are not—a clear mutual understanding may also be shown through the employee's actions. *Stein*, 2013 WL 3809463, at *7. It is undisputed that none of the DM Plaintiffs here complained about their overtime pay or the Company's use of the FWW, despite all acknowledging that they received the Company handbook setting forth a clear open door policy to do so. (SMF, at ¶ 11). This lack of action on the DM Plaintiffs' part demonstrates that they knew full well how they were being paid. *Stein,* 2013 WL 3809463 (evidence relevant to clear mutual understanding included plaintiffs failure to complain about overtime calculation and communications between plaintiff and employer); *Griffin,* 142 F.3d at

26

717 (where plaintiffs "lived with the fluctuating workweek plan for nearly six years before filing" the lawsuit, it was clear to the Court that they "understood the payment plan in spite of after-the-fact verbal contentions otherwise.").

Even assuming that the declarations of the DM Plaintiffs were somehow credible to show that they each conveniently misunderstood their pay despite signing clear documents to the contrary, the "rule does not require an understanding of how the FWW method works or that overtime will be paid according to this method. Thus, many courts have deemed it irrelevant that an employee did not actually understand the full details of how her employer's FWW program operated." *Stein*, 2013 WL 3809463, at *8 (collecting cases).

Accordingly, there is no disputed issue of fact that BBB has satisfied the clear mutual understanding prong to utilize the FWW.

## III.    The DM Plaintiffs Have Failed to Demonstrate that BBB "Willfully" Violated the FLSA

The DM Plaintiffs argue that BBB "willfully" violated the FLSA. (Plaintiffs' Brief, at p. 25 – 26). Specifically, the DM Plaintiffs claim in a conclusory manner that "BBB knew that it had to pay overtime, knew the requirements for the FWW method, and recklessly disregarded these requirements in establishing the payment scheme." (Plaintiffs' Brief, at p. 26). As discussed above, the DM Plaintiffs grossly misstate the FWW's requirements; thus, BBB cannot have "willfully" violated the law, let alone violated the law at all. However, assuming *arguendo* otherwise, BBB did not willfully violate the FLSA.

Employees who seek to prove a willful FLSA violation bear the burden of proof. *Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009). This burden of proof "requires a ***factual showing*** that the employer either 'knew or showed reckless disregard for … whether its conduct was prohibited by the [FLSA].'" *Saunders v. City of N.Y.*, 594 F. Supp. 2d 346, 358

27

(S.D.N.Y. 2008) (quoting *Porter v. New York Univ. School of Law*, 392 F.3d 530, 531 (2d Cir. 2004) (emphasis added)). The factual showing underlying a claim of willfulness is critical because "'Congress intended to draw a *significant* distinction between ordinary violations and willful violations of the [FLSA].'" *Clarke v. JPMorgan Chase Bank, N.A.*, No. 08 Civ. 2400 (CM), 2010 WL 1379778, at *10 (S.D.N.Y. Mar. 26, 2010) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132 (1988) (emphasis added)).

Here, the DM Plaintiffs have failed to proffer ***any*** facts whatsoever with their motion for summary judgment, and they have accordingly failed to provide the "factual showing" necessary to prove that BBB willfully violated the FLSA. *Saunders*, 594 F. Supp. 2d at 358. The DM Plaintiffs rely solely on the deposition testimony and declaration of BBB's Rule 30(b)(6) witness, Lauren Alvarez, who testified that (1) BBB stopped using the FWW method in March of 2015; (2) there is sometimes human error with respect to processing payroll; and (3) that DM's were typically scheduled to work 47.5 hours per week. (Plaintiffs' Brief, p. 26).

None of these facts support Plaintiffs' claim that BBB consciously disregarded the FWW requirements. First, BBB's decision to stop paying DM's under the FWW has no bearing on whether BBB improperly applied the FWW (willfully or otherwise) during the time it was using it. Second, the very nature of "human error" with respect to payroll evidences—at best— negligent mistakes which BBB always corrected upon detection. *El v. Potter*, No. 01 Civ. 6125 (RWS), 2004 WL 2793166, at *5 (S.D.N.Y. Dec. 6, 2004) ("Willfulness cannot be found where the employer acted negligently or assumed in good faith, but incorrectly, that its conduct complied with the FLSA."). Third, that the DM's were *scheduled* for 47.5 hours is irrelevant

where, as here, it is **undisputed** that the DM Plaintiffs' hours fluctuated week-to-week.[12] (SMF, at ¶ 5).

  The record evidence is clear that BBB did not willfully violate the FLSA. Accordingly, the Court should deny this aspect of Plaintiffs' motion.

## CONCLUSION

  For the foregoing reasons, BBB respectfully requests that the Court grant its motion for summary judgment and deny Plaintiffs' cross-motion for summary judgment in its entirety.

Dated: December 15, 2017

Respectfully submitted,

BED BATH & BEYOND INC.

/s/ *Jonathan L. Sulds*

Justin F. Keith (*pro hac vice*)
Greenberg Traurig, LLP
One International Place, Suite 2000
Boston, MA 02110
Telephone: 617.310.6230
Fax: 617.897.0930
keithj@gtlaw.com

Jonathan L. Sulds
Greenberg Traurig, LLP
MetLife Building
200 Park Avenue, 34th Floor
New York, NY 10166
Telephone: 212.801.9200
Fax: 212.801.6400
suldsj@gtlaw.com

---

[12] Assuming, *arguendo*, that the Court finds in accord with Plaintiffs that the FWW requires fluctuation above and below 40 hours, BBB's scheduling of the DM's for 47 hours per week cannot be found to have been a "willful" violation of the fluctuation prong where, as set forth above, BBB's application of the FWW has been expressly approved by the U.S. Department of Labor and numerous courts. Indeed, the Supreme Court has stated that, "[i]f an employer acts reasonably in determining its legal obligation, its action cannot be deemed willful." *McLaughlin*, 486 U.S. at 135 n.13; *Clarke*, 2010 WL 1379778, at *10 (even an employer that has acted "'unreasonably, but not recklessly, in determining its legal obligation'" cannot be held liable for a willful violation. (quoting *McLaughlin*, 486 U.S. at 135 n.13)).

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x
:
DANYELL THOMAS, RASHAUN F. FRAZER,        :
ANDRAE WHALEY, ELENI MIGLIS, CHERYL A.    :   Civil Action No. 16-cv-8160
STRYCHARZ, and DANIELLE BROWN, individually :
and on behalf of all other employees similarly situated :
:
    Plaintiffs                      :
:
 v.                                       :
:
 BED BATH AND BEYOND, INC.               :
:
    Defendant.                      x
---------------------------------------------------------------

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on December 15, 2017 a true copy of the above document was served upon the attorney of record for each other party by ECF filing.

Dated: December 15, 2017

New York, New York

                               */s/ Jonathan L. Sulds*
                                Jonathan L. Sulds
                                Greenberg Traurig, LLP
                                MetLife Building
                                200 Park Avenue, 34th Floor
                                New York, NY 10166
                                Telephone: 212.801.9200
                                Fax: 212.801.6400
                                suldsj@gtlaw.com