UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANYELL THOMAS, RASHAUN F. FRAZER, ANDRAE WHALEY, ELENI MIGLIS, CHERYL A. STRYCHARZ, and DANIELLE BROWN, individually and on behalf of all other employees similarly situated,<br><br>                                                            Plaintiffs,<br><br>                      - against -<br><br>BED BATH AND BEYOND, INC.<br><br>                                                           Defendant. | Civil Action No. 16-cv-8160 (PAE) |

# PLAINTIFFS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR SUMAMRY JUDGMENT

VIRGINIA & AMBINDER, LLP
Lloyd Ambinder, Esq.
James Murphy, Esq.
40 Broad Street, 7th Floor
New York, New York 10004
Tel: (212) 943-9080
jmurphy@vandallp.com

HANG & ASSOCIATES, PLLC
Jian Hang, Esq.
Keli Liu, Esq.
136-18 39th Avenue, Suite 1003
Flushing, New York 11354
Tel: (718) 353-8588
Email: jhang@hanglaw.com

*Attorneys for Plaintiffs and the Putative Collective*

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................................... iii

POINT I:
PLAINTIFFS DID NOT RECEIVE A FIXED WEEKLY SALARY .....................................1

    A. Defendants Failed to Pay the Fixed Weekly Salary to Plaintiffs Who Worked Fewer Than 40 Hours Without Accrued PTO .........................................................................1

    B. Defendants' Bonus Compensation for Holiday and Off-Day Work Preculdes Application of the FWW ...............................................................................................5

POINT II:
PLAINTIFFS' HOURS DID NOT FLUCTUATE WITHIN THE MEANING OF THE REGULATION ......................................................................................................................8

POINT III:
DEFENDANTS' OVERTIME VIOLATIONS WERE WILLFUL .......................................10

CONCLUSION ......................................................................................................................11

# **TABLE OF AUTHORITIES**

**CASES** **PAGE**

Adeva v. Intertek USA, Inc.,
2010 U.S.Dist.LEXIS 1963 (D.N.J. Jan. 11, 2010) ........................................................................6

Ayers v. SGS Control Servs.,
2007 U.S.Dist.LEXIS 19634 (S.D.N.Y. Feb. 27, 2007) ................................................................7

Banford v. Entergy Nuclear Operations, Inc.,
649 Fed.Appx. 89 (2nd Cir. May 23, 2016) ................................................................................10

Berg v. Sage Envtl. Consulting of Austin, Inc.,
2006 U.S.Dist.LEXIS 62407 (N.D.Texas Aug. 16, 2006) ............................................................8

Black v. Settlepou, P.C.,
732 F.3d 492 (5th Cir. 2013) .........................................................................................................1

Brantley v. Inspectorate Am. Corp.,
821 F.Supp.2d 891 (S.D.Texas 2011) .......................................................................................3, 7

Brumley v. Camin Cargo Control, Inc.,
2010 U.S.Dist.LEXIS 144198 (D.N.J. Apr. 20, 2010) ..................................................................4

Dooley v. Liberty Mutual Insurance Co.,
369 F.Supp.2d 81 (D.Mass. 2005) .............................................................................................5, 7

Hart v. Rick's Cabaret Int'l, Inc.,
967 F.Supp.2d 901 (S.D.N.Y. 2013) ...........................................................................................10

Hasan v. GPM Investments, LLC,
896 F.Supp.2d 145 (D.Conn. 2012) ..............................................................................................8

Hunter v. Sprint Corp.,
453 F.Supp.2d 44 (D.D.C. 2006) ..................................................................................................1

Moore v. Pender EMS & Fire, Inc.,
2016 U.S.Dist.LEXIS 166318 (E.D.N.C., Dec. 2, 2016) ..............................................................4

Martinez v. Refinery Terminal Fire Co.,
2014 U.S.Dist.LEXIS 173234 (S.D.Texas Dec. 16, 2014) ................................................. 2, 10-11

Overnight Motor Transp. Co. v. Missel,
316 U.S. 572 (1942) ......................................................................................................................9

<a>
</a>
<a>
</a>

Quinones v. PRC Mgmt. Co. LLC,
2015 U.S.Dist.LEXIS 88029 (S.D.N.Y. Jul. 7, 2015) ...................................................................6

Ramos v. Telgian Corp.,
2016 U.S.Dist.LEXIS 58574 (E.D.N.Y. May 3, 2016) ..............................................................10

Regan v. City of Charleston,
142 F.Supp.3d 442 (D.S.C., 2015) ................................................................................................7

Robinson v. Food Service of Belton, Inc.,
415 F.Supp.2d 1227 (D.Kan. 2005) ..............................................................................................8

Roche v. Morgan Collection, Inc.,
882 F.Supp.2d 247 (D.Mass. 2012) ..............................................................................................8

Samson v. Apollo Resources, Inc.,
242 F.3d 629 (5th Cir. 2001) ........................................................................................................3

State ex rel. Nilsen v. Oregon State Motor Assoc.,
248 Ore. 133; 432 P.2d 512 (1967) ..............................................................................................6

Stein v. Guardsmark LLC,
2013 U.S.Dist.LEXIS 103131 (S.D.N.Y. July 23, 2013) ....................................................8, 9, 10

Van v. Language Line Services,
2016 U.S.Dist.LEXIS 73510 (N.D.Cal. June 6, 2016) ............................................................. 7-8

ViaHealth v. Johnson,
2009 U.S.Dist.LEXIS 31547 (W.D.N.Y. Apr. 14, 2009) .............................................................7

Warnecke v. Nitrocision, LLC,
2012 U.S.Dist.LEXIS 170656*24 (D.Id. Nov. 29, 2012) .............................................................8

Wills v. RadioShack Corp.,
981 F.Supp.2d 245 (S.D.N.Y. 2013) .........................................................................................2, 7

**STATUTES AND REGULATIONS**

New York Labor Law § 190 ......................................................................................................6, 7

New York Labor Law § 198-c ...................................................................................................6, 7

29 C.F.R. § 514.604 ...................................................................................................................6, 7

29 C.F.R. § 778.114 ................................................................................................................5, 7, 9

**OTHER AUTHORITIES**

DOL Opinion Letter, 1991 WL 11648489 (Aug. 20, 1991) ....................................................2, 11

DOL Opinion Letter, FLSA2006-15, 2006 WL 1488849 (May 12, 2006) ......................................2

U.S. Department of Labor's Field Operations Handbook § 32b04b(b) ..........................................3

"An employee who is expected to work a regular schedule of hours is not typically paid by a FWW method, since by definition the FWW requires that the employee be expected to work fluctuating weekly hours." Black v. Settlepou, P.C., 732 F.3d 492, 500 (5th Cir. 2013). Defendants do not dispute that the Department Manager ("DM") Plaintiffs were regularly scheduled to work 47.5 hours per week. *See* Defendants' Response to Plaintiffs' Rule 56.1 Statement, Docket Number 172, ¶ 1. Nevertheless, Defendants chose to compensate DM's using the FWW method.

Defendants' papers betray a fundamental misunderstanding of the underlying issue in this litigation. "[I]n order to prevent the use of fixed weekly salaries as a means of manipulating an employee's 'regular rate' under the statute, the FWW [fluctuating work week] regulation *strictly limits* the circumstances in which an employer is authorized to treat the employee's 'regular rate' of pay as a variable and thus use the fluctuating overtime calculation method." Hunter v. Sprint Corp., 453 F.Supp.2d 44, 59 (D.D.C. 2006) (emphasis added). These strict limitations are put in place to avoid the precise situation here – where a company uses the FWW as a means to compel employees work far more than 40 hours every week, to avoid paying them proper overtime. Here, Defendants scheduled DM Plaintiffs to work well over 40 hours in a week; admittedly paying them less than their established "fixed weekly salary" when they worked below 40 hours without sufficient accrued paid time off; and had a policy of providing additional regular-time compensation, in the form of additional paid time off, for workers who worked holidays and off-days. Under the circumstances, Plaintiffs' motion for summary judgment must be granted.

## POINT I:

## PLAINTIFFS DID NOT RECEIVE A FIXED WEEKLY SALARY

**A. Defendants Failed to Pay the Fixed Weekly Salary to Plaintiffs Who Worked Fewer Than 40 Hours Without Accrued PTO**

1

Contrary to Defendants' contentions, Plaintiffs are not arguing that the FWW requires "guaranteed pay regardless of whether an individual works at all." (Defendants' Memorandum of Law, filed on January 5, 2018 ("Def. Mem.") p. 12). Rather, in weeks in which workers *do* work, the "fixed weekly salary" requirement of the FWW mandates that they be paid their fixed weekly salary, whether they only work one hour or forty hours. The DOL has stated that an employer "may not make full day deductions from the salary of its fluctuating workweek employees when the employee has exhausted his or her sick leave bank or has not yet earned enough leave to cover the absence," (DOL Opinion Letter, FLSA2006-15, 2006 WL 1488849 (May 12, 2006)). Plaintiffs do not dispute that no payment was required under the FLSA during weeks in which *no work at all* was performed; however, "no reductions may be made from salary provided [an] employee performs any work during the workweek." Martinez v. Refinery Terminal Fire Co., 2014 U.S.Dist.LEXIS 173234*16, 2:11-CV-295 (S.D.Texas Dec. 16, 2014) (Ramos, D.J.), *quoting* DOL Opinion Letter, 1991 WL 11648489 (Aug. 20, 1991).

Defendants' own papers establish that they had no intention of paying "fixed weekly salaries." In their papers, Defendants claim that a worker was properly paid less than his fixed weekly salary "where [he] remained out on unpaid FMLA leave through the Monday of that workweek." (Def. Mem. p. 18). While paid leave is not required under the FMLA, workers compensated pursuant to the FWW method are entitled to receive "a fixed weekly salary for the hours worked each workweek, whatever their number." Wills v. RadioShack Corp., 981 F.Supp.2d 245, 255 (S.D.N.Y. 2013) (Engelmayer, D.J.). Defendants' admitted practice of not paying workers' "fixed weekly salaries" during parts of weeks where they were absent without accrued PTO (*see, e.g.* Def..Mem. p. 18, "Ms. Reynosa and the Company agreed at the time of her hire that she would take this time unpaid") evinces an intent *not* to pay a fixed weekly salary, but rather

2

only to pay that salary when a worker either worked 40 hours in a week or had accrued PTO to use. This is a clear, unequivocal violation of the law. "Under the FWW, employers are not allowed to make deductions to an employee's fixed salary for sick leave or vacation leave, even if the employee has not yet accrued sufficient leave to cover their absence." Brantley v. Inspectorate Am. Corp., 821 F.Supp.2d 879, 891 (S.D.Texas 2011). By admittedly reducing employees' salary when they worked under 40 hours in a week, without any accrued PTO (*see* Def. Mem. p. 18), Defendants failed to provide a bona fide FWW plan involving a "fixed weekly salary." Instead, Defendants simply paid Plaintiffs for the days or hours they actually worked, reducing that salary in proportion to the quantity of work performed. This violates the requirements of the FWW, and precludes Defendants' use of the method.

Defendants rely on Samson v. Apollo Resources, Inc., 242 F.3d 629 (5th Cir. 2001) and the U.S. Department of Labor's Field Operations Handbook § 32b04b(b) for the proposition that "this prohibition on 'docking' does not cover a prospective arrangement between an employee and the Company where the Company agrees to a request from the employee for time off due to personal reasons," (Def. Mem. p. 18). However, this assertion *specifically contradicts* the language of the Field Operations Handbook. The FOH states that payment of the full weekly salary must be made each week "even though *occasional* disciplinary deductions for willful absence or tardiness are made." *See* U.S. Department of Labor's Field Operations Handbook § 32b04b(b). Defendants make no attempt to explain how a situation where a "Company agrees to a request from the employee for time off due to personal reasons" can invoke "disciplinary" measures. In any event, the testimony quoted by Defendants in their papers specifically disclaims that any disciplinary action would be taken for employees who "willfully" took time off, rendering their reliance on the FOH inappropriate. *See* Def. Mem. p. 17, *quoting* Furlong Transcript.

Defendants claim that, after their various explanations for pay shortages in particular periods, "what remains are *three weeks* out of 1,548," (Def. Mem. P. 22), and that this infrequence of pay-docking renders it immaterial[1]. However, in FWW actions, this is simply not the case – what matters is the *intent* to pay workers a flat weekly salary for all hours worked, whether below 40 or above 40. The fact that a worker only worked below 40 hours on rare occasions, but had their "fixed weekly salary" decreased on *each* of those occasions, evinces Defendants' intent that the salary *not* be "fixed" for hours both above and below 40 in a week. One court held that "where plaintiffs allege that defendant did not pay the full fixed salary in three weeks plaintiffs worked fewer than 40 hours [out of sixteen combined years of employment], plaintiffs have stated a claim that defendant did not meet the requirements for a fluctuating workweek pay plan. That is, since plaintiffs' pay was allegedly reduced when plaintiffs worked fewer than 40 hours, it cannot be said that plaintiffs fixed weekly salary remained the same regardless of the number of hours that the employees worked during the week." Moore v. Pender EMS & Fire, Inc., 2016 U.S.Dist.LEXIS 166318*5, 16-CV-130 (FL) (E.D.N.C., Dec. 2, 2016) (internal punctuation omitted). Even a single instance of payment below the fixed weekly salary can preclude usage of the FWW method for an entire collective of employees. Brumley v. Camin Cargo Control, Inc., 2010 U.S.Dist.LEXIS 144198*10-12, 08-1798 (JLL) (D.N.J. Apr. 20, 2010) (Linares, D.J.) ("An employer may deduct from an FWW employee's vacation time bank for workdays missed, but may not deduct from the fixed salary for time an FWW employee misses from work… Here, Defendant concedes that on at least one occasion, it docked a Plaintiff inspector's fixed salary for an impermissible reason. Although it characterizes such an event as statistically insignificant, such an argument goes to

---

[1] Defendants repeatedly cite to pay deductions being outside the two-or-three year statute of limitations periods under the FLSA (*see e.g.* Def. Mem. p. 14). However, Plaintiffs' Complaint states a cause of action for damages under the New York Labor Law, which has a statute of limitations dating back six years, in this case to October 18, 2010.

weight. This Court, therefore, denies summary judgment to Defendants on the issue of whether they complied with the FWW method of paying the Plaintiff inspectors"); *see generally* Dooley v. Liberty Mutual Insurance Co., 369 F.Supp.2d 81, 87 (D.Mass. 2005) (refusing to apply FWW method to individual workers who, unlike other plaintiffs, were never improperly paid, as "[e]ven though those employees may have, in fact, received a fixed salary, they did not have a clear mutual understanding that the employer *will pay* that fixed salary regardless of hours worked, because Liberty Mutual *would not have* paid a 'fixed salary'" had the workers worked on Saturdays) (emphasis in original) (internal punctuation omitted).

Defendants clearly had no intention to pay a fixed weekly salary to Plaintiffs. Plaintiffs who worked less than 40 hours in a week, without any accumulated PTO, had their "fixed weekly salary" proportionately reduced to reflect the actual hours worked. Defendants' stated belief that "unpaid leave" policies, such as the FMLA, allow an employer to pay a worker less than their fixed weekly salary (Def. Mem. p. 12) constitutes clear evidence that they were paying Plaintiffs for the *time that they worked*, rather than a *fixed salary* for whatever hours they worked in a week. This practice violates FWW regulations, which require that the "employer pays the salary even though the workweek is one in which a full schedule of hours is not worked." 29 C.F.R. § 778.114(c).

### B. Defendants' Bonus Compensation for Holiday and Off-Day Work Precludes Application of the FWW

Defendants also fail the "fixed weekly salary" requirement through their policy and practice of granting additional paid time off to workers who worked on holidays and scheduled off-days[2]. Defendants claim that "Plaintiffs make no effort to connect, factually or otherwise, the

---

[2] While Defendants claim that Plaintiffs should be precluded from raising this issue as it was not specifically mentioned in their pre-motion conference letter (Def. Mem. p. 23), Plaintiffs' letter clearly states their intention to move for summary judgment on the issue of whether "the employee receives a fixed weekly salary which remains the same regardless of the number of hours the employee works during the week." *See* pre-motion conference letter, p. 2.

5

cases interpreting monetary payments in the form of a bonus as being violative of the FWW with the additional paid time off referenced here." (Def. Memo, p. 23). Defendants' argument is specious, as the additional paid time off provided by Defendants for holiday work or unscheduled days clearly constitutes additional "hours-based compensation," under the plain meaning of the term "compensation," and will ultimately be remitted to the worker in his or her paycheck as a cash payment. This hours-based compensation precludes the application of a "fixed weekly salary." It is well-settled that where "Plaintiffs' compensation for non-overtime hours varied… Plaintiffs cannot receive the fixed salary required to apply the FWW." Adeva v. Intertek USA, Inc., 2010 U.S.Dist.LEXIS 1963*7, Civil Action No. 09-1096 (SRC) (D.N.J. Jan. 11, 2010).

Here, it is undisputed that Plaintiffs received additional paid time off when they worked on holidays or scheduled days off. "As commonly understood, the term 'wages' as well as the term 'compensation' includes vacation pay." State ex rel. Nilsen v. Oregon State Motor Assoc., 248 Ore. 133, 138; 432 P.2d 512, 515 (1967). Under New York law – clearly applicable to Plaintiffs' New York Labor Law claims – "[t]he term 'wages' also includes benefits or wage supplements,' such as 'health, welfare and retirement benefits; and vacation, separation or holiday pay.' NYLL § 190(1); see NYLL § 198-c(2) (definition of 'benefits or wage supplements')." Quinones v. PRC Mgmt. Co. LLC, 2015 U.S.Dist.LEXIS 88029*15, 14-CV-9064 (VEC) (S.D.N.Y. Jul. 7, 2015) (Caproni, D.J.). Similarly, Federal regulations consider paid time off to be compensation equivalent to monetary pay. See, e.g. 29 C.F.R. § 514.604: "Such additional compensation may be paid on any basis (e.g., flat sum, bonus payment, straight-time hourly amount, time and one-half or any other basis), and may include paid time off."

Caselaw makes clear that additional compensation in the form of hours-based bonuses for working holidays or off-days invalidates the application of the FWW payment method. See, e.g.

6

Wills v. RadioShack Corp., 981 F.Supp.2d 245, 256 (S.D.N.Y. 2013) (Engelmayer, D.J.) ("when an employer pays its employees additional money for hours worked during weekends, holidays, or nights, the employees who work such premium hours will earn more than those who worked normal, non-premium hours. The employees receiving such bonuses thus cannot be said to receive a 'fixed salary' *regardless of hours worked*; on the contrary, employees who worked 'premium' hours would receive more pay") (emphasis in original); Regan v. City of Charleston, 142 F.Supp.3d 442, 460 (D.S.C., 2015) ("Numerous courts have held that paying employees premiums to work on holidays is incompatible with the fixed-salary requirement"); Brantley v. Inspectorate Am. Corp., 821 F.Supp.2d 879, 889 (S.D.Texas 2011) ("Defendant's payments of off-shore, day-off and holiday premiums violates the fixed salary requirement for applying the FWW"); Ayers v. SGS Control Servs., 2007 U.S.Dist.LEXIS 19634* , 03-cv-9078 (RMB) (S.D.N.Y. Feb. 27, 2007) (Berman, D.J.) ("any Plaintiff who received sea pay or day-off pay did not have 'fixed' weekly straight time pay, in violation of 29 C.F.R. § 778.114(a)"); Dooley v. Liberty Mutual Insurance Co., 369 F.Supp.2d 81, 86 (D.Mass. 2005) ("payment of a premium rate for Saturday work when less than 40 hours have been worked precludes application of the fluctuating workweek method").

The New York Labor Law defines paid time off as a "wage" (*see* Labor Law §§ 190(1), 198-c(2)). The U.S. Department of Labor has considered paid time off to be a wage. *See, e.g.* ViaHealth v. Johnson, 2009 U.S.Dist.LEXIS 31547*11, 07-CV-6638T (W.D.N.Y. Apr. 14, 2009) (Telesca, D.J.) ("under the regulations established by the Secretary, paid time off is to be included when determining a hospital[']s average wage"); 29 C.F.R. § 514.604. Other courts have considered paid time off to constitute "wages" under a wide variety of laws. *See, e.g.* Van v. Language Line Services, 2016 U.S.Dist.LEXIS 73510* , 14-CV-03791-LHK (N.D.Cal. June 6, 2016) (Koh, D.J.) ("The Court acknowledges… that vacation time constitutes deferred wages for

7

services rendered") (internal punctuation omitted); Roche v. Morgan Collection, Inc., 882 F.Supp.2d 247, (D.Mass. 2012) ("vacation time is considered a 'wage' under the [Massachusetts Wage] Act"); Warnecke v. Nitrocision, LLC, 2012 U.S.Dist.LEXIS 170656*24, 10-cv-334-CWD (D.Id. Nov. 29, 2012) (Dale, M.J.) ("Paid Time Off ('PTO') constitutes wages under the Idaho Wage Claim Act"); Berg v. Sage Envtl. Consulting of Austin, Inc., 2006 U.S.Dist.LEXIS 62407*42, 05-CV-1215-G ECF (N.D.Texas Aug. 16, 2006) (Fish, C.J.) ("vacation time constitutes 'wages' under the Louisiana statutes"); Robinson v. Food Service of Belton, Inc., 415 F.Supp.2d 1227, (D.Kan. 2005) ("vacation time constituted 'wages' for purposes of the Kansas Wage Payment Act"). As Defendants themselves acknowledge, workers were paid for PTO even in weeks which they did not work (*see examples*, Def. Mem. p. 13), thus establishing that PTO payments were made above the workers' "fixed weekly salary." Pay received from PTO earned while working holidays and off-days constitutes delayed compensation for hours previously worked. A worker who worked on their day off received *additional compensation* for that regular-time work, even though that compensation wasn't actually paid until the PTO was used. This is precisely the practice which this court stated to be incompatible with the FWW in Wills.

## POINT II:

## PLAINTIFFS' HOURS DID NOT FLUCTUATE WITHIN THE MEANING OF THE REGULATION

As Defendants note, there is a split in authority as to whether the FWW payment methodology is appropriate in instances where workers consistently work more than 40 hours in a week. *Compare* Stein v. Guardsmark LLC, 2013 U.S.Dist.LEXIS 103131*14, 12-cv-4739 (JPO) (S.D.N.Y. July 23, 2013) (Oetken, D.J.) (workers' hours "fluctuated" where they varied between 50 and 55 hours in a given week) *against* Hasan v. GPM Investments, LLC, 896 F.Supp.2d 145, 150 (D.Conn. 2012) ("For a fluctuating work week arrangement to make sense to both parties,

8

employees should offset their relative loss from a grueling work week far above forty hours with the benefit of full pay for weeks that clock-in at less than forty hours. Otherwise, employees have not bargained for anything but decreasing marginal pay as they work longer and longer hours at work"). Here, Plaintiffs were scheduled to work 47.5 hours per week, and – as detailed repeatedly by the parties in their papers – only worked fewer than 40 hours per week less than one percent of the time. The governing DOL regulations imply both that workers (such as the Plaintiffs in this case), who are regularly scheduled to work a certain number of hours are not suitable candidates for the FWW; and that employees subject to an FWW employment policy work both "long" and "short" workweeks. *See* 29 C.F.R. § 778.114(c): "Typically, such salaries are paid to employees who do not customarily work a regular schedule of hours and are in amounts agreed on by the parties as adequate straight-time compensation for long workweeks as well as short ones." This is consistent with the Supreme Court's original interpretation of the FWW in Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 577-578 (1942): "although overtime was not flatly prohibited [by the FLSA], financial pressure was applied to spread employment to avoid the extra wage and workers were assured additional pay to compensate them for the burden of a workweek beyond the hours fixed in the Act… Reduction of hours was a part of the plan from the beginning." In addition, the Stein Court's holding, that the FWW encompasses any schedule where a worker's "hours fluctuated in the sense that they varied from day to day, even if they generally amounted to 50 to 55 hours per week" (Stein, *supra*, at *13) would appear to render the "fluctuation" requirement of 29 C.F.R. § 778.114 surplusage, as virtually all work schedules inevitably vary from day to day or week to week, even if only by minutes or fractions of an hour.

      Plaintiffs acknowledge that there is authority supporting both the Defendants' position – that any fluctuation, other than precisely identical schedules each day, meets the "fluctuate"

9

requirement – and the Plaintiffs' position – that hours must regularly fluctuate both above and below 40 hours in a week in order for the FWW to be properly implemented. There is no authority whatsoever from the Second Circuit, which has only mentioned the FWW once, in a summary order which lends no guidance to this issue. *See* Banford v. Entergy Nuclear Operations, Inc., 649 Fed.Appx. 89 (2nd Cir. May 23, 2016). This is precisely why Judge Chen, in Ramos v. Telgian Corp., 2016 U.S.Dist.LEXIS 58574*7, 14-CV-3422 (PKC) (LB) (E.D.N.Y. May 3, 2016), certified this issue for interlocutory appeal, recognizing that "there is substantial ground for differences of opinion on this issue." Plaintiffs respectfully request that this Court recognize the patently inequitable effect that the Stein court's holding has, in incentivizing employers to implement FWW payments for workers while requiring them to work ever longer hours for ever less pay, and follow the reasoning of the numerous courts cited in Plaintiffs' original motion papers which hold that "fluctuation" within the FWW requires regular fluctuation both above and below 40 in a given week.

## POINT III:

## **DEFENDANTS' OVERTIME VIOLATIONS WERE WILLFUL**

While Plaintiffs recognize this Court's prior holdings that "[a]lthough willfulness can sometimes be determined at the summary judgment stage, the standard for proving willfulness is high" (Hart v. Rick's Cabaret Int'l, Inc., 967 F.Supp.2d 901, 937 (S.D.N.Y. 2013) (Engelmayer, D.J.), Defendants' acknowledged actions of reducing workers' fixed weekly salaries when they were ill or on pre-agreed vacation without accrued PTO meets that burden. "If [the employer] did not compensate the employees because they were ill or otherwise unable to come to work, the failure to compensate them would, as described above, be a willful violation of the FWW method of compensation." Martinez v. Refinery Terminal Fire Co., 2014 U.S.Dist.LEXIS 173234*14-15,

2:11-CV-295 (S.D.Texas Dec. 16, 2014) (Ramos, D.J.), *quoting* DOL Opinion Letter, 1991 WL 11648489 (Aug. 20, 1991).

## **CONCLUSION**

Wherefore, for the reasons set forth above, Plaintiffs respectfully request that this Court issue an Order granting partial summary judgment as to liability against BBB, and denying Defendants' motion for summary judgment seeking to dismiss Plaintiffs' overtime claims under the FLSA and New York Labor Law, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
January 19, 2018

VIRGINIA & AMBINDER, LLP

By: _____/s/_____
James Emmet Murphy, Esq.
Lloyd R. Ambinder, Esq.
40 Broad Street, 7th Floor
New York, New York 10004
Tel: (212) 943-9080

HANG & ASSOCIATES, PLLC
Jian Hang, Esq.
Keli Liu, Esq.
136-18 39th Avenue, Suite 1003
Flushing, New York 11354
Tel: (718) 353-8588

*Attorneys for Plaintiffs and the Putative Class*