UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x
                                :

DANYELL THOMAS, RASHAUN F. FRAZER,       :
ANDRAE WHALEY, ELENI MIGLIS, CHERYL A.   :    Civil Action No. 16-cv-8160
STRYCHARZ, and DANIELLE BROWN, individually and :
on behalf of all other employees similarly situated,    :
                                :

                            Plaintiffs, :

                                :

                 v.                   :

BED BATH AND BEYOND, INC.            :

                          Defendant. :
-------------------------------------------------------------------- x

## PLAINTIFFS' RESPONSE TO DEFENDANT BED BATH & BEYOND INC.'S STATEMENT OF UNDISPUTED MATERIAL FACTS AND PLAINTIFFS' ADDITIONAL STATEMENTS OF MATERIAL FACTS <u>PURSUANT TO LOCAL RULE 56.1</u>

       Pursuant to Rule 56.1 of the Local Civil Rules of this Court, Plaintiffs' submit the following response to Defendant Bed Bath and Beyond Inc. ("BBB") statement of undisputed material facts in support of Defendants' motion for summary judgment. Plaintiffs also submit additional undisputed material facts in support of Plaintiffs' motion for summary judgment.

## I.     PLAINTIFFS' RESPONSE TO DEFENDANT BBB'S STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.     <u>Background</u>

       1.    BBB is a retailer in the home furnishing industry and, during the relevant time period here, BBB employed Department Managers ("DMs") in its retail stores. (Joint Statement of Undisputed Facts ("JSF"), ¶¶ 1-3 (Dkt. 147)).

       <u>Plaintiffs' Response:</u> Admitted.

       2.    All DMs were classified as non-exempt employees and were paid overtime

for all hours worked over 40. Prior to March of 2015, BBB paid its DMs in New York, New Jersey, and Connecticut overtime pursuant to the FWW methodology as set forth in 29 C.F.R. § 778.114. (JSF, ¶¶ 4–5).

Plaintiffs' Response: Admitted.

3.      BBB and the DM Plaintiffs[1] had a clear mutual understanding that BBB would pay the DM Plaintiffs their fixed weekly salary each week, regardless of the number of hours they worked. (*See* JSF, at Exhibits 5–47; Declaration of Lauren Alvarez ("Alvarez Dec."), ¶ 7).

Plaintiffs' Response: Denied. DM Plaintiffs testified that the FWW method was never properly explained to them and that they did not understand the compensation scheme. (See e.g. Thomas Dec., ¶¶ 17, 18, 19, 21; Whaley Dec., ¶¶ 13, 14, 27; Frazer Dec., ¶¶ 14, 15, 17, 35; Caraballo Dec., ¶¶ 22, 23, 41; Miglis Dec., ¶11; Kutwaru Dep., pg. 108: 19-23; Padilla Dep., pg. 54: 7-10; Ex. S, Cutajar Dec., ¶¶ 28-31.)

4.      The DM Plaintiffs' fixed weekly salaries were sufficient to provide compensation at a regular rate not less than the legal minimum wage. (JSF, ¶ 8).

Plaintiffs' Response: Denied that DM Plaintiffs' had fixed weekly salaries. The weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by $1/40^{th}$ of their weekly salary for each hour below 40. (*See generally* Murphy Declaration Exhibits D, E, and I). Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off. (*See* Alvarez Trans. pp. 51:6-12; 54:15-55:3).

---

[1] DM Plaintiffs refer to all Plaintiffs and opt-in Plaintiffs who worked as Department Managers during the relevant time period.

5.     The actual number of hours worked by the DM Plaintiffs fluctuated from week to week. (*See* Alvarez Dec., ¶ 5, Exhibits 25 – 28; 30 – 35; 37 – 40; 42 – 44; 46 – 48; 50 – 52; 54 – 55).

Plaintiffs' Response: Denied. "Fluctuated" is a term of art that calls for a legal conclusion and is not properly submitted in a statement of material facts. (*See* Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("S.D.N.Y. Local R.") 56.1(a)). DM Plaintiffs were regularly scheduled to work approximately 47.5 hours in a week and reported working more than 40 hours of work or paid time off in a week during 99.24% of their employment. (*See generally* Exhibit D).

6.     The DM Plaintiffs received their fixed weekly salaries each week, regardless of the number of hours they worked. (*See* Alvarez Dec., ¶ 4, Exhibits 25 – 28; 30 – 35; 37 – 40; 42 – 44; 46 – 48; 50 – 52; 54 – 55).

Plaintiffs' Response: Denied. The weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40th of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not receive a "fixed weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (see Alvarez Trans. pp. 51:6-12; 54:15-55:3).

7.     The DM Plaintiffs received a fifty percent (50%) overtime premium in addition to their fixed weekly salary for all hours worked over 40 during each work week. (*See* Alvarez Dec., ¶ 6, Exhibits 25 – 28; 30 – 35; 37 – 40; 42 – 44; 46 – 48; 50 – 52; 54 – 55); (JSF, ¶ 4).

Plaintiffs' Response: Denied in part. DM Plaintiffs deny that they received a fixed weekly

salary. (*See* Plaintiffs' Response to Paragraph 6).

8.    Upon being hired or promoted to the position of DM, all DMs received and signed documents showing what their base annual salary would be if they worked 40 (or fewer) hours per week and that the dollar value (per overtime hour) for hours worked over 40 would vary due to BBB's use of the FWW. (JSF, ¶¶ 6 – 7; 9 – 10).

> Plaintiffs' Response: Admitted as to DM Plaintiffs. Denied as to absent class member
> DMs for whom discovery has not been conducted and who are not subject to Defendants'
> motion for summary judgment.

9.    Upon hire, DMs also attended orientation where they were given an example paystub demonstrating the FWW calculation. (Alvarez Dec., ¶ 7, Exhibit 1); (Declaration of Justin F. Keith ("Keith Dec."), at Exhibit 1 (Furlong Dep., 85:18 – 21)).

> Plaintiffs' Response: Admitted as to DM Plaintiffs. Denied as to absent class member
> DMs for whom discovery has not been conducted and who are not subject to Defendants'
> motion for summary judgment.

10.    DMs were paid on a bi-weekly basis and were given pay stubs from BBB each pay period setting forth their pay. (JSF, ¶ 12).

> Plaintiffs' Response: Admitted as to DM Plaintiffs. Denied as to absent class member
> DMs for whom discovery has not been conducted and who are not subject to Defendants'
> motion for summary judgment.

11.    DMs were also given an employee handbook, which explicitly informs the DMs that it is their responsibility to review their pay stub, the hours they worked, the pay they received, and any deductions taken. The handbook instructs the DMs that, if they notice an error in their paycheck, to tell their supervisor immediately. (Alvarez Dec., ¶ 8, Exhibit 2).

Plaintiffs' Response: Admitted as to DM Plaintiffs. Denied as to absent class member DMs for whom discovery has not been conducted and who are not subject to Defendants' motion for summary judgment.

12.   During the relevant time period, BBB had two versions of the pay stubs received by the DM Plaintiffs (one referencing "additional pay" and the other containing a "Fluctuating Overtime Breakdown"). Both versions contained (i) the dates of work covered by that payment of wages; (ii) the name of the employee; (iii) the name of the Company; (iv) the Company's address and phone number (v) the employee's rate of pay; (vi) the employee's gross wages; (vii) deductions; and (viii) net wages. (Alvarez Dec., ¶ 9, Exhibits 3; 4).

Plaintiffs' Response: Admitted.

13.   BBB also employs Assistant Store Managers ("ASMs") in its retail stores. ASMs are classified as exempt and do not receive overtime for hours worked over 40. ASMs also receive(d) pay stubs from BBB each pay period. (JSF, ¶ 14).

Plaintiffs' Response: Admitted in part. Admitted that BB also employs ASMs in its retail stores and were classified as exempt and did not receive overtime compensation. Cannot admit or deny that ASMs also received pay stubs from BBB each pay period because discovery has not been conducted on absent ASM class members.

14.   The pay stubs received by ASMs contained (i) the dates of work covered by that payment of wages; (ii) the name of the employee; (iii) the name of the Company; (iv) the Company's address and phone number; (v) the employee's rate of pay; (vi) the employee's gross wages; (vii) deductions; and (viii) net wages. (Alvarez Dec., ¶ 10, Exhibit 5).

Plaintiffs' Response: Admitted as to Plaintiff ASMs, denied as to absent ASM class members for whom discovery has not been conducted.

**B.** **Plaintiff Rashaun Frazer**

15.     Rashaun Frazer worked as a DM for BBB in New York from October 31, 2011 to January 17, 2015.  (Alvarez Dec., ¶ 29, Exhibit 29).

Plaintiffs' Response: Admitted.

16.     Upon being hired and annually thereafter, Rashaun Frazer received and signed written Notice and Acknowledgement of pay rate forms that contained: (i) his rate of pay and the basis thereof; (ii) the regular pay day designated by BBB; (iii) BBB's name; (iv) the physical address of BBB's main office; and (v) BBB's telephone number. (*See* JSF, at Exhibit 6).

Plaintiffs' Response: Admitted.

17.     In his first year as a DM, from on or about October 31, 2011 to on or about October 28, 2012, Rashaun Frazer's fixed weekly salary was $996.40. (JSF, at Exhibit 6). During this time period, Rashaun Frazer received his fixed weekly salary each bi-weekly pay period, regardless of the number of hours he worked, and a fifty percent (50%) overtime premium for all hours worked over 40. (Alvarez Dec., ¶ 25, Exhibit 25).

Plaintiffs' Response: Denied that Plaintiff Frazer received a fixed weekly salary. The weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40th of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I).  Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3).

18.     The number of hours Rashaun Frazer worked in his first year as a DM

fluctuated from week to week and ranged anywhere from 47.5 or 48.25 hours to 55.25 or 57.25 hours, and anywhere in between. (*See id.*).

        <u>Plaintiffs' Response:</u> Admitted in part and denied in part. Admitted that Rashaun Frazer's hours worked ranged from 47.5 or 48.5 hours to 55.25 or 57.25 hours in a week. Denied that Plaintiff Frazer's hours "fluctuated" as "fluctuated" is a term of art that calls for a legal conclusion and not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

        19.    In his second year as a DM, from on or about October 29, 2012, to on or about December 8, 2013, Rashaun Frazer's fixed weekly salary was $1,013.94. (JSF, at Exhibit 6). During this time period, Rashaun Frazer received his fixed weekly salary each bi-weekly pay period, regardless of the number of hours he worked, except for the pay period ending November 10, 2013, when Rashaun Frazer was on a leave of absence. Rashaun Frazer also received a fifty percent (50%) overtime premium for all hours worked over 40. (Alvarez Dec., ¶¶ 16; 26, Exhibits 20; 26).

        <u>Plaintiffs' Response:</u> Denied that Plaintiff Frazer received a fixed weekly salary. The weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40th of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3).

        20.    The number of hours Rashaun Frazer worked in his second year as a DM fluctuated from week to week and ranged anywhere from 47.5 or 48 hours to 51.5 or 52.25 hours, and anywhere in between. (*See* Alvarez Dec., ¶ 26, Exhibit 26).

        <u>Plaintiffs' Response:</u> Admitted in part and denied in part. Admitted that Rashaun Frazer's

16

hours worked ranged from 47.5 or 48 hours to 51.5 or 52.25 hours in a week. Denied that Plaintiff Frazer's hours "fluctuated" as "fluctuated" is a term of art that calls for a legal conclusion and not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

21.   In his third year as a DM, from on or about December 9, 2013, to on or about November 8, 2014, Rashaun Frazer's fixed weekly salary was $1,034.05. (JSF, at Exhibit 6). During this time period, Rashaun Frazer received his fixed weekly salary each bi-weekly pay period, regardless of the number of hours he worked, and a fifty percent (50%) overtime premium for all hours worked over 40. (Alvarez Dec., ¶ 27, Exhibit 27).

Plaintiffs' Response: Denied that Plaintiff Frazer received a fixed weekly salary. The weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40th of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I).   Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3).

22.   The number of hours Rashaun Frazer worked in his third year as a DM fluctuated from week to week and ranged anywhere from 47.5 or 48 hours to 50 or 50.25 hours, and anywhere in between. (*See id*.).

Plaintiffs' Response: Admitted in part and denied in part. Admitted that Rashaun Frazer's hours worked ranged from 47.5 or 48 hours to 50 or 52.25 hours in a week. Denied that Plaintiff Frazer's hours "fluctuated" as "fluctuated" is a term of art that calls for a legal conclusion and not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

23.   In his final months as a DM, from on or about November 9, 2014 to on or

about January 17, 2015, Rashaun Frazer's fixed weekly salary was $1,054.89. During this time period, Rashaun Frazer received his fixed weekly salary each bi-weekly pay period, regardless of the number of hours he worked, and a fifty percent (50%) overtime premium for all hours worked over 40. (Alvarez Dec., ¶ 28, Exhibit 28).

Plaintiffs' Response: Denied that Plaintiff Frazer received a fixed weekly salary. The weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40th of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I).  Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3).

24.   The number of hours Rashaun Frazer worked in his final months as a DM fluctuated from week to week and ranged anywhere from 45.98 or 46.96 hours to 50.16 hours, and anywhere in between. (*See id*.).

Plaintiffs' Response: Admitted in part and denied in part. Admitted that Rashaun Frazer's hours worked ranged from 45.98 or 46.96 hours to 50.16 hours in a week. Denied that Plaintiff Frazer's hours "fluctuated" as "fluctuated" is a term of art that calls for a legal conclusion and not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

25.   Throughout his entire time as a DM during the relevant period, Rashaun Frazer was paid: 1) a fixed weekly salary each week for all hours worked, except for the one pay period where he was on an unpaid leave of absence in 2013 as set forth in ¶ 20 above; and 2) overtime calculated pursuant to the FWW for each hour worked over 40 in a workweek.

Plaintiffs' Response: Denied. The weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by

1/40[th] of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3). Further denied that overtime was properly calculated pursuant to "FWW" as it calls for a legal conclusion and is not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

### C.      Plaintiff Danyell Thomas

26.      Danyell Thomas worked as a DM for BBB in New York from December 7, 2009 to May 11, 2015. (Alvarez Dec., ¶ 36, Exhibit 36).

Plaintiffs' Response: Admitted.

27.      Beginning January 6, 2012 and annually thereafter, Danyell Thomas received and signed written Notice and Acknowledgement of pay rate forms that contained: (i) her rate of pay and the basis thereof; (ii) the regular pay day designated by BBB; (iii) BBB's name; (iv) the physical address of BBB's main office; and (v) BBB's telephone number. (*See* JSF, at Exhibit 8).

Plaintiffs' Response: Admitted.

28.      From on or about October 18, 2010 to on or about December 12, 2010, Danyell Thomas's fixed weekly salary was $961.51. During this time period, Danyell Thomas received her fixed weekly salary each bi-weekly pay period, regardless of the number of hours she worked, and a fifty percent (50%) overtime premium for all hours worked over 40. (Alvarez Dec., ¶ 30, Exhibit 30).

Plaintiffs' Response: Denied that Plaintiff Thomas received a fixed weekly salary. The weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40[th] of their weekly salary for each

hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3).

29.    The number of hours Danyell Thomas worked from October 18, 2010 to December 12, 2010 fluctuated from week to week and ranged anywhere from 47.5 hours to 52.25 hours, and anywhere in between. (*See id.*).

Plaintiffs' Response: Admitted in part and denied in part. Admitted that Danyell Thomas's hours worked ranged from 47.5 hours to 52.25 hours in a week. Denied that Plaintiff Thomas's hours "fluctuated" as "fluctuated" is a term of art that calls for a legal conclusion and not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

30.    From on or about December 13, 2010 to on or about December 11, 2011, Danyell Thomas's fixed weekly salary was $975.92. During this time period, Danyell Thomas received her fixed weekly salary each bi-weekly pay period, regardless of the number of hours she worked, and a fifty percent (50%) overtime premium for all hours worked over 40. (Alvarez Dec., ¶ 31, Exhibit 31).

Plaintiffs' Response: Denied that Plaintiff Thomas received a fixed weekly salary. The weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40th of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3).

31.    The number of hours Danyell Thomas worked from December 13, 2010 to

December 11, 2011 fluctuated from week to week and ranged anywhere from 47.5 or 48.25 hours to 52.5 or 55 hours, and anywhere in between. (*See id.*).

> Plaintiffs' Response: Admitted in part and denied in part. Admitted that Danyell Thomas's hours ranged from 47.5 or 48.5 hours to 52.5 or 55 hours in a week. Denied that Plaintiff Thomas's hours "fluctuated" as "fluctuated" is a term of art that calls for a legal conclusion and not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

32.    From on or about December 12, 2011 to on or about December 9, 2012, Danyell Thomas's fixed weekly salary was $1,000.40. (JSF, at Exhibit 8). During this time period, Danyell Thomas received her fixed weekly salary each bi-weekly pay period, regardless of the number of hours she worked, and a fifty percent (50%) overtime premium for all hours worked over 40. (Alvarez Dec., ¶ 32, Exhibit 32).

> Plaintiffs' Response: Denied that Plaintiff Thomas received a fixed weekly salary. The weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by $1/40^{th}$ of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3).

33.    The number of hours Danyell Thomas worked from December 12, 2011 to December 9, 2012 fluctuated from week to week and ranged anywhere from 47.5 hours to 48.75 hours. (*See id.*).

> Plaintiffs' Response: Admitted in part and denied in part. Admitted that Danyell

16

Thomas's hours ranged from 47.5 to 48.5 hours in a week. Denied that Plaintiff Thomas's hours "fluctuated" as "fluctuated" is a term of art that calls for a legal conclusion and not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

34.    From on or about December 10, 2012 to on or about December 8, 2013, Danyell Thomas's fixed weekly salary was $1,000.36. (JSF, at Exhibit 8). During this time period, Danyell Thomas received her fixed weekly salary each bi-weekly pay period, regardless of the number of hours she worked, and a fifty percent (50%) overtime premium for all hours worked over 40. (Alvarez Dec., ¶ 33, Exhibit 33).

Plaintiffs' Response: Denied that Plaintiff Thomas received a fixed weekly salary. The weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40th of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3).

35.    The number of hours Danyell Thomas worked from December 10, 2012 to December 8, 2013 fluctuated from week to week and ranged anywhere from 47.5 hours to 49 hours. (*See id*.).

Plaintiffs' Response: Admitted in part and denied in part. Admitted that Danyell Thomas's hours ranged from 47.5 to 49 hours in a week. Denied that Plaintiff Thomas's hours "fluctuated" as "fluctuated" is a term of art that calls for a legal conclusion and not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

36.    From on or about December 9, 2013 to on or about December 20, 2014,

Danyell Thomas's fixed weekly salary was $1,045.69. (JSF, at Exhibit 8). During this time period, Danyell Thomas received her fixed weekly salary each bi-weekly pay period, regardless of the number of hours she worked, except for the pay period ending January 5, 2014, in which a payroll error occurred and for which Danyell Thomas will be reimbursed. Danyell Thomas also received a fifty percent (50%) overtime premium for all hours worked over 40. (Alvarez Dec., ¶¶ 13; 21; 34, Exhibit 34).

> Plaintiffs' Response: Denied that Plaintiff Thomas received a fixed weekly salary. The weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40th of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3).

37.    The number of hours Danyell Thomas worked from December 9, 2013 to December 20, 2014 fluctuated from week to week and ranged anywhere from 45.73 hours to 49.25 hours. (*See* Alvarez Dec., ¶ 34, Exhibit 34).

> Plaintiffs' Response: Admitted in part and denied in part. Admitted that Danyell Thomas's hours ranged from 45.73 to 49.25 hours in a week. Denied that Plaintiff Thomas's hours "fluctuated" as "fluctuated" is a term of art that calls for a legal conclusion and not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

38.    From on or about December 20, 2014 to March of 2015 when BBB stopped using the FWW, Danyell Thomas's fixed weekly salary was $1,066.78. During this time period,

Danyell Thomas received her fixed weekly salary each bi-weekly pay period, regardless of the number of hours she worked, and a fifty percent (50%) overtime premium for all hours worked over 40. (Alvarez Dec., ¶ 35, Exhibit 35).

Plaintiffs' Response: Denied that Plaintiff Thomas received a fixed weekly salary. The weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40th of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3).

39.    The number of hours Danyell Thomas worked from December 20, 2014 through February of 2015 fluctuated from week to week. (*See id.*).

Plaintiffs' Response: Denied that Plaintiff Thomas's hours "fluctuated" as "fluctuated" is a term of art that calls for a legal conclusion and not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

40.    Throughout her entire time as a DM during the relevant period, Danyell Thomas was paid: 1) a fixed weekly salary each week for all hours worked, except for the one pay period where a payroll error occurred and for which she has been reimbursed; and 2) overtime calculated pursuant to the FWW for each hour worked over 40 in a workweek.

Plaintiffs' Response: Denied. DM Plaintiffs did not receive a fixed weekly salary as the weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40th of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not

receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3). Further denied that overtime was properly calculated pursuant to "FWW" as it calls for a legal conclusion and is not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

**D.** **Plaintiff Andrae Whaley**

41.     Andrae Whaley worked as a DM for BBB in New York from July 18, 2011 to July 23, 2016. (Alvarez Dec., ¶ 41, Exhibit 41).

Plaintiffs' Response: Admitted.

42.     Upon being hired and annually thereafter, Rashaun Frazer received and signed written Notice and Acknowledgement of pay rate forms that contained: (i) his rate of pay and the basis thereof; (ii) the regular pay day designated by BBB; (iii) BBB's name; (iv) the physical address of BBB's main office; and (v) BBB's telephone number. (*See* JSF, at Exhibit 10).

Plaintiffs' Response: Admitted.

43.     In his first year as a DM, from on or about July 18, 2011 to on or about August 19, 2012, Andrae Whaley's fixed weekly salary was $1,101.40. (JSF, at Exhibit 10). During this time period, Andrae Whaley received his fixed weekly salary each bi-weekly pay period, regardless of the number of hours he worked, and a fifty percent (50%) overtime premium for all hours worked over 40. (Alvarez Dec., ¶ 37, Exhibit 37).

Plaintiffs' Response: Denied that Plaintiff Whaley received a fixed weekly salary. The weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40th of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not

receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3).

44.    The number of hours Andrae Whaley worked in his first year as a DM fluctuated from week to week and ranged anywhere from 47.5 or 47.75 hours to 56.75 or 58.25 hours, and anywhere in between. (*See id*.).

Plaintiffs' Response: Admitted in part and denied in part. Admitted that Andrae Whaley's hours ranged from 47.5 or 47.75 hours to 56.75 or 58.25 hours in a week. Denied that Plaintiff Whaley's hours "fluctuated" as "fluctuated" is a term of art that calls for a legal conclusion and not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

45.    In his second year as a DM, from on or about August 20, 2012 to on or about July 21, 2013, Andrae Whaley's fixed weekly salary was $1,131.68. (JSF, at Exhibit 10). During this time period, Andrae Whaley received his fixed weekly salary each bi-weekly pay period, regardless of the number of hours he worked, and a fifty percent (50%) overtime premium for all hours worked over 40. (Alvarez Dec., ¶ 38, Exhibit 38).

Plaintiffs' Response: Denied that Plaintiff Whaley received a fixed weekly salary. The weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40th of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3).

46.   The number of hours Andrae Whaley worked in his second year as a DM fluctuated from week to week and ranged anywhere from 47.5 or 48 hours to 55.75 or 66 hours, and anywhere in between. (*See id.*).

Plaintiffs' Response: Admitted in part and denied in part. Admitted that Andrae Whaley's hours ranged from 4747.5 or 48 hours to 55.75 or 66 hours in a week. Denied that Plaintiff Whaley's hours "fluctuated" as "fluctuated" is a term of art that calls for a legal conclusion and not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

47.   In his third year as a DM, from on or about July 22, 2013 to on or about August 2, 2014, Andrae Whaley's fixed weekly salary was $1,156.58. (JSF, at Exhibit 10). During this time period, Andrae Whaley received his fixed weekly salary each bi-weekly pay period, regardless of the number of hours he worked, and a fifty percent (50%) overtime premium for all hours worked over 40. (Alvarez Dec., ¶ 39, Exhibit 39).

Plaintiffs' Response: Denied that Plaintiff Whaley received a fixed weekly salary. The weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40[th] of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3).

48.   The number of hours Andrae Whaley worked in his third year as a DM fluctuated from week to week and ranged anywhere from 47.75 or 48 hours to 51.75 or 62.06 hours, and anywhere in between. (*See id.*).

<u>Plaintiffs' Response:</u> Admitted in part and denied in part. Admitted that Andrae Whaley's hours ranged from 47.75 or 48 hours to 51.75 or 62.06 hours in a week. Denied that Plaintiff Whaley's hours "fluctuated" as "fluctuated" is a term of art that calls for a legal conclusion and not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

49.   From on or about August 3, 2014 to March of 2015 when BBB stopped using the FWW, Andrae Whaley's fixed weekly salary was $1,182.02. During this time period, Andrae Whaley received his fixed weekly salary each bi-weekly pay period, regardless of the number of hours he worked, and a fifty percent (50%) overtime premium for all hours worked over 40. (Alvarez Dec., ¶ 40, Exhibit 40).

<u>Plaintiffs' Response:</u> Denied that Plaintiff Whaley received a fixed weekly salary. The weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40th of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3).

50.   The number of hours Andrae Whaley worked from August 3, 2014 through the end of February 2015 fluctuated week to week and ranged anywhere from 46.05 or 47.5 hours to 50 hours, and anywhere in between. (*See id.*).

<u>Plaintiffs' Response:</u> Admitted in part and denied in part. Admitted that Andrae Whaley's hours ranged from 46.05 or 47.5 hours to 50 hours in a week. Denied that Plaintiff Whaley's hours "fluctuated" as "fluctuated" is a term of art that calls for a legal conclusion

and not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

51.   Throughout his entire time as a DM during the relevant period, Andrae Whaley was paid: 1) a fixed weekly salary each week for all hours worked; and 2) overtime calculated pursuant to the FWW for each hour worked over 40 in a workweek.

Plaintiffs' Response: Denied. DM Plaintiffs did not receive a fixed weekly salary as the weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40th of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3). Further denied that overtime was properly calculated pursuant to "FWW" as it calls for a legal conclusion and is not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

**E.     Plaintiff Cheryl Strycharz**

52.   Cheryl Strycharz worked as a DM for BBB in New York from January 7, 2008 to July 20, 2012. (Alvarez Dec., ¶ 45, Exhibit 45).

Plaintiffs' Response: Admitted.

53.   On January 9, 2012, Cheryl Strycharz received and signed a written Notice and Acknowledgement of pay rate form that contained: (i) her rate of pay and the basis thereof; (ii) the regular pay day designated by BBB; (iii) BBB's name; (iv) the physical address of BBB's main office; and (v) BBB's telephone number. (*See* JSF, at Exhibit 12).

Plaintiffs' Response: Admitted.

54.   From on or about October 18, 2010 to on or about June 26, 2011, Cheryl Strycharz's fixed weekly salary was $1,218.34. During this time period, Cheryl Strycharz received her fixed weekly salary each bi-weekly pay period, regardless of the number of hours she worked, and a fifty percent (50%) overtime premium for all hours worked over 40. (Alvarez Dec., ¶ 42, Exhibit 42).

Plaintiffs' Response: Denied that Plaintiff Strycharz received a fixed weekly salary. The weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40th of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3).

55.   The number of hours Cheryl Strycharz worked from October 18, 2010 to June 26, 2011 fluctuated week to week and ranged from 47.5 hours to 47.66 hours. (*See id.*).

Plaintiffs' Response: Admitted in part and denied in part. Admitted that Cheryl Strycharz's hours ranged from 47.5 hours to 47.66 hours in a week. Denied that Plaintiff Strycharz's hours "fluctuated" as "fluctuated" is a term of art that calls for a legal conclusion and not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

56.   From on or about June 27, 2011 to on or about June 24, 2012, Cheryl Strycharz's fixed weekly salary was $1,242.8. (JSF, at Exhibit 12). During this time period, Cheryl Strycharz received her fixed weekly salary each bi-weekly pay period, regardless of the number of hours she worked, and a fifty percent (50%) overtime premium for all hours worked over 40.

(Alvarez Dec., ¶ 43, Exhibit 43).

Plaintiffs Response: Denied that Plaintiff Strycharz received a fixed weekly salary. The weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40th of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3).

57.    The number of hours Cheryl Strycharz worked from June 27, 2011 to June 24, 2012 fluctuated week to week and ranged from 47.5 hours to 51.25 hours. (*See id*.).

Plaintiffs' Response: Admitted in part and denied in part. Admitted that Cheryl Strycharz's hours ranged from 47.5 hours to 47.66 hours in a week. Denied that Plaintiff Strycharz's hours "fluctuated" as "fluctuated" is a term of art that calls for a legal conclusion and not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

58.    From on or about June 25, 2012 to on or about July 20, 2012, when Cheryl Strycharz was terminated from BBB, Cheryl Strycharz's fixed weekly salary was $1,270.02. During this time period, Cheryl Strycharz received her fixed weekly salary each bi-weekly pay period, regardless of the number of hours she worked, and a fifty percent (50%) overtime premium for all hours worked over 40. (Alvarez Dec., ¶ 44, Exhibit 44).

Plaintiffs' Response: Denied that Plaintiff Strycharz received a fixed weekly salary. The weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40th of their weekly salary for each

hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3).

59.     The number of hours Cheryl Strycharz worked in her final few weeks at BBB fluctuated. (*See id*.).

Plaintiffs' Response: Denied. "Fluctuated" is a term of art that calls for a legal conclusion and not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

60.     Throughout her entire time as a DM during the relevant period, Cheryl Strycharz was paid: 1) a fixed weekly salary each week for all hours worked; and 2) overtime calculated pursuant to the FWW for each hour worked over 40 in a workweek.

Plaintiffs' Response: Denied. DM Plaintiffs did not receive a fixed weekly salary as the weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40[th] of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3). Further denied that overtime was properly calculated pursuant to "FWW" as it calls for a legal conclusion and is not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

**F.    Plaintiff Danielle Brown**

61.     Danielle Brown worked as a DM for BBB in New York from November 27,

2006 to July 5, 2012. (Alvarez Dec., ¶ 49, Exhibit 49).

Plaintiffs' Response: Admitted.

62.    On January 2, 2012, Danielle Brown received and signed a written Notice and Acknowledgement of pay rate form that contained: (i) her rate of pay and the basis thereof; (ii) the regular pay day designated by BBB; (iii) BBB's name; (iv) the physical address of BBB's main office; and (v) BBB's telephone number. (*See* JSF, at Exhibit 14).

Plaintiffs' Response: Admitted.

63.    From on or about October 18, 2010 to on or about November 28, 2010, Danielle Brown's fixed weekly salary was $882.16. During this time period, Danielle Brown received her fixed weekly salary each bi-weekly pay period, regardless of the number of hours she worked, and a fifty percent (50%) overtime premium for all hours worked over 40. (Alvarez Dec., ¶ 46, Exhibit 46).

Plaintiffs' Response: Denied that Plaintiff Brown received a fixed weekly salary. The weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40th of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3).

64.    The number of hours Danielle Brown worked from October 18, 2010 to November 28, 2010 fluctuated week to week and ranged from 50.5 hours to 54.49 hours. (*See id.*).

Plaintiffs' Response: Admitted in part and denied in part. Admitted that Danielle Brown's hours ranged from 50.5 hours to 54.49 hours in a week. Denied that Plaintiff Brown's

hours "fluctuated" as "fluctuated" is a term of art that calls for a legal conclusion and not

properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

65.   From on or about November 29, 2010 to on or about November 27, 2011,

Danielle Brown's fixed weekly salary was $895.35. During this time period, Danielle Brown

received her fixed weekly salary each bi-weekly pay period, regardless of the number of hours she

worked, and a fifty percent (50%) overtime premium for all hours worked over 40. (Alvarez Dec.,

¶ 47, Exhibit 47).

> Plaintiffs' Response: Denied that Plaintiff Brown received a fixed weekly salary. The
>
> weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a
>
> week, their salary was proportionately reduced by 1/40th of their weekly salary for each
>
> hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not
>
> receive a "flat weekly salary" as they received extra compensation in the form of
>
> additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans.
>
> pp. 51:6-12; 54:15-55:3).

66.   The number of hours Danielle Brown worked from November 29, 2010 to

November 27, 2011 fluctuated week to week and ranged anywhere from 48.5 or 49.25 hours to

61.5 hours, and anywhere in between. (*See id.*).

> Plaintiffs' Response: Admitted in part and denied in part. Admitted that Danielle Brown's
>
> hours ranged from 48.5 or 49.25 hours to 61.5 hours in a week. Denied that Plaintiff
>
> Brown's hours "fluctuated" as "fluctuated" is a term of art that calls for a legal conclusion
>
> and not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R.
>
> 56.1(a)).

67.   From on or about November 28, 2011 to July 5, 2012 when Danielle Brown

voluntarily resigned from BBB, Danielle Brown's fixed weekly salary was $915.20. (JSF, at Exhibit 14). During this time period, Danielle Brown received her fixed weekly salary each bi-weekly pay period, regardless of the number of hours she worked, and a fifty percent (50%) overtime premium for all hours worked over 40. (Alvarez Dec., ¶ 48, Exhibit 48).

Plaintiffs' Response: Denied that Plaintiff Brown received a fixed weekly salary. The weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40th of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3).

68. The number of hours Danielle Brown worked from November 28, 2011 to July 5, 2012 fluctuated week to week and ranged anywhere from 49.25 hours to 52.5 hours, and anywhere in between. (*See id.*).

Plaintiffs' Response: Admitted in part and denied in part. Admitted that Danielle Brown's hours ranged from 49.25 hours to 52.5 hours in a week. Denied that Plaintiff Brown's hours "fluctuated" as "fluctuated" is a term of art that calls for a legal conclusion and not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

69. Throughout her entire time as a DM during the relevant period, Danielle Brown was paid: 1) a fixed weekly salary each week for all hours worked; and 2) overtime calculated pursuant to the FWW for each hour worked over 40 in a workweek.

Plaintiffs' Response: Denied. DM Plaintiffs did not receive a fixed weekly salary as the weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a

week, their salary was proportionately reduced by 1/40th of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3). Further denied that overtime was properly calculated pursuant to "FWW" as it calls for a legal conclusion and is not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

**G.     Opt-in Plaintiff Radica Kutwaru**

70.     Radica Kutwaru worked as a DM for BBB from April 9, 2012 to October 5, 2015, when she was promoted to the position of Assistant Store Manager. (Alvarez Dec., ¶ 53, Exhibit 53).

Plaintiffs' Response: Admitted.

71.     From April 9, 2012 to July 7, 2013, Radica Kutwaru worked as a DM in Store 42 in Manhattan New York. (*See id.*).

Plaintiffs' Response: Admitted.

72.     From July 8, 2013 to July 28, 2013, Radica Kutwaru worked as a DM in Store 103 in Georgia. (*See id.*).

Plaintiffs' Response: Admitted.

73.     On July 29, 2013, Radica Kutwaru transferred back to Store 42 in Manhattan, New York and worked there as a DM until October 5, 2015. (*See id.*).

Plaintiffs' Response: Admitted.

74.     Upon being hired and annually thereafter, Radica Kutwaru received and signed written Notice and Acknowledgement of pay rate forms that contained: (i) her rate of pay

and the basis thereof; (ii) the regular pay day designated by BBB; (iii) BBB's name; (iv) the physical address of BBB's main office; and (v) BBB's telephone number. (*See* JSF, at Exhibit 16).

Plaintiffs' Response: Admitted.

75.    In her first year as a DM, from on or about April 9, 2012 to on or about April 14, 2013, Radica Kutwaru's fixed weekly salary was $966.49. (JSF, at Exhibit 16). During this time period, Radica Kutwaru received her fixed weekly salary each bi-weekly pay period, regardless of the number of hours she worked, except for the pay period ending June 24, 2012, when Radica Kutwaru was on a leave of absence. Radica Kutwaru also received a fifty percent (50%) overtime premium for all hours worked over 40. (Alvarez Dec., ¶¶ 17; 50, Exhibits 21; 50).

Plaintiffs' Response: Denied in part and Admitted in Part. Denied that Plaintiff Kutwaru received a fixed weekly salary. The weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40th of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3).

76.    The number of hours Radica Kutwaru worked in her first year as a DM fluctuated from week to week and ranged anywhere from 47.5 hours to 60.25 hours, and anywhere in between. (*See* Alvarez Dec., ¶ 50, Exhibit 50).

Plaintiffs' Response: Admitted in part and denied in part. Admitted that Radica Kutwaru's hours ranged from 47.5 hours to 60.25 hours in a week. Denied that Plaintiff Kutwaru's hours "fluctuated" as "fluctuated" is a term of art that calls for a legal conclusion and not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

77.    In her second year as a DM, from on or about April 15, 2013 to on or about April 27, 2014, Radica Kutwaru's fixed weekly salary was $990.65. (JSF, at Exhibit 16). During this time period, Radica Kutwaru received her fixed weekly salary each bi-weekly pay period, regardless of the number of hours she worked, except for the pay period ending August 4, 2013, when Radica Kutwaru was on a leave of absence. Radica Kutwaru also received a fifty percent (50%) overtime premium for all hours worked over 40. (Alvarez Dec., ¶¶ 18; 51, Exhibit 51).

Plaintiffs' Response: Denied in part and Admitted in Part. Denied that Plaintiff Kutwaru received a fixed weekly salary. The weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40th of their weekly salary for each hour below 40. (See generally Exhibits D, E, I). Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (see Alvarez Trans. pp. 51:6-12; 54:15-55:3).

78.    The number of hours Radica Kutwaru worked in her second year as a DM fluctuated from week to week and ranged anywhere from 47.5 hours to 63.25 hours, and anywhere in between. (See Alvarez Dec., ¶ 51, Exhibit 51).

Plaintiffs' Response: Admitted in part and denied in part. Admitted that Radica Kutwaru's hours ranged from 47.5 hours to 63.25 hours in a week. Denied that Plaintiff Kutwaru's hours "fluctuated" as "fluctuated" is a term of art that calls for a legal conclusion and not properly submitted in a statement of material facts. (See S.D.N.Y. Local R. 56.1(a))

79.    In her third year as a DM, from on or about April 28, 2014, to March of 2015 when BBB stopped using the FWW, Radica Kutwaru's fixed weekly salary was $1,020.37 (JSF, at Exhibit 16). During this time period, Radica Kutwaru received her fixed weekly salary each bi-

weekly pay period, regardless of the number of hours she worked, and a fifty percent (50%) overtime premium for all hours worked over 40. (Alvarez Dec., ¶ 52, Exhibit 52).

Plaintiffs' Response: Denied that Plaintiff Brown received a fixed weekly salary. The weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40th of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3).

80.   The number of hours Radica Kutwaru worked in her third year as a DM fluctuated from week to week and ranged anywhere from 47.5 hours to 51.75 hours, and anywhere in between. (*See id*.).

Plaintiffs' Response: Admitted in part and denied in part. Admitted that Radica Kutwaru's hours ranged from 47.5 hours to 51.75 hours in a week. Denied that Plaintiff Kutwaru's hours "fluctuated" as "fluctuated" is a term of art that calls for a legal conclusion and not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

81.   Throughout her entire time as a DM during the relevant period, Radica Kutwaru was paid: 1) a fixed weekly salary each week for all hours worked; and 2) overtime calculated pursuant to the FWW for each hour worked over 40 in a workweek.

Plaintiffs' Response: Denied. DM Plaintiffs did not receive a fixed weekly salary as the weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40th of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not

receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3). Further denied that overtime was properly calculated pursuant to "FWW" as it calls for a legal conclusion and is not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

**H.**     **Opt-in Plaintiff Karla Reynosa**

82.     Karla Reynosa worked as a DM for BBB in New York from May 20, 2013 to February 5, 2015. (Alvarez Dec., ¶ 56, Exhibit 56).

Plaintiffs' Response: Admitted.

83.     Upon being hired and annually thereafter, Karla Reynosa received and signed written Notice and Acknowledgement of pay rate forms that contained: (i) her rate of pay and the basis thereof; (ii) the regular pay day designated by BBB; (iii) BBB's name; (iv) the physical address of BBB's main office; and (v) BBB's telephone number. (*See* JSF, at Exhibit 21).

Plaintiffs' Response: Admitted.

84.     In her first year as a DM, from on or about May 20, 2013 to on or about May 11, 2014, Karla Reynosa's fixed weekly salary was $1,199.16. (JSF, at Exhibit 21). During this time period, Karla Reynosa received her fixed weekly salary each bi-weekly pay period, regardless of the number of hours she worked, except for pay periods ending July 7, 2013, August 4, 2013, and September 1, 2013, where she was on a personal leave of absence due to previous vacation plans she discussed with BBB upon being hired. Karla Reynosa also received a fifty percent (50%) overtime premium for all hours worked over 40. (Alvarez Dec., ¶¶ 19; 54, Exhibits 22; 54).

Plaintiffs' Response: Denied in part and Admitted in Part. Denied that Plaintiff Reynosa received a fixed weekly salary. The weeks in which DM Plaintiffs reported fewer than 40

hours of work or paid time off in a week, their salary was proportionately reduced by 1/40[th] of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3).

85.   The number of hours Karla Reynosa worked in her first year as a DM fluctuated from week to week and ranged anywhere from 47.5 hours to 52.5 hours, and anywhere in between. (*See* Alvarez Dec., ¶ 54, Exhibit 54).

Plaintiffs' Response: Admitted in part and denied in part. Admitted that Karla Reynosa's hours worked ranged from 47.5 hours to 52.5 hours in a week. Denied that Plaintiff Reynosa's hours "fluctuated" as "fluctuated" is a term of art that calls for a legal conclusion and not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

86.   In her second year as a DM, from on or about May 12, 2014 to on or about February 5, 2015 when Karla Reynosa was terminated, Karla Reynosa's fixed weekly salary was $1,199.16.  (JSF, at Exhibit 21). During this time period, Karla Reynosa received her fixed weekly salary each bi- weekly pay period, regardless of the number of hours she worked, except for the pay periods ending May 25, 2014 and June 8, 2014, for which there were payroll errors that were corrected the following pay periods ending June 8, 2014 and July 5, 2014, as well as the pay period ending February 14, 2015, in light of Karla Reynosa's termination in the middle of that pay period. Karla Reynosa also received a fifty percent (50%) overtime premium for all hours worked over 40. (Alvarez Dec., ¶¶ 22 – 24; 55, Exhibits 23; 24; 55).

Plaintiffs' Response: Denied in part and Admitted in Part. Denied that Plaintiff Reynosa

received a fixed weekly salary. The weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a week, their salary was proportionately reduced by 1/40th of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3). Admitted that there were payroll errors for the pay periods ending May 25, 2014 and June 8, 2014, and that Reynosa subsequently received additional payments relating to those weeks. Denied that those payroll errors were "corrected" as that constitutes a legal conclusion which is beyond the scope of Rule 56.1.

87.   The number of hours Karla Reynosa worked in her second and final year as a DM fluctuated from week to week and ranged anywhere from 47.5 hours to 50.57 hours, and anywhere in between. (*See* Alvarez Dec., ¶ 55, Exhibit 55).

Plaintiffs' Response: Admitted in part and denied in part. Admitted that Karla Reynosa's hours worked ranged from 47.5 hours to 52.5 hours in a week. Denied that Plaintiff Reynosa's hours "fluctuated" as "fluctuated" is a term of art that calls for a legal conclusion and not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

88.   Throughout her entire time as a DM during the relevant period, Karla Reynosa was paid: 1) a fixed weekly salary each week for all hours worked; and 2) overtime calculated pursuant to the FWW for each hour worked over 40 in a workweek.

Plaintiffs' Response: Denied. DM Plaintiffs did not receive a fixed weekly salary as the weeks in which DM Plaintiffs reported fewer than 40 hours of work or paid time off in a

week, their salary was proportionately reduced by 1/40[th] of their weekly salary for each hour below 40. (*See generally* Exhibits D, E, I). Additionally, DM Plaintiffs did not receive a "flat weekly salary" as they received extra compensation in the form of additional paid time off for working on holidays or scheduled days off (*see* Alvarez Trans. pp. 51:6-12; 54:15-55:3). Further denied that overtime was properly calculated pursuant to "FWW" as it calls for a legal conclusion and is not properly submitted in a statement of material facts. (*See* S.D.N.Y. Local R. 56.1(a)).

I.      **Plaintiff Eleni Miglis**

89.     Eleni Miglis worked as an ASM for BBB in New York from July 13, 2009 to March 19, 2015. (*See* Alvarez Dec., ¶ 58, Exhibit 58).

Plaintiffs' Response: Admitted.

90.     Beginning February 22, 2012, and annually thereafter while Eleni Miglis was an Assistant Store Manager, Eleni Miglis received and signed written Notice and Acknowledgement of pay rate forms that contained: (i) her rate of pay and the basis thereof; (ii) the regular pay day designated by BBB; (iii) BBB's name; (iv) the physical address of BBB's main office; and (v) BBB's telephone number. (*See* Alvarez Dec., ¶ 57, Exhibit 57).

Plaintiffs' Response: Admitted.

II.     **PLAINTIFFS ADDITIONAL UNDISPUTED MATERIAL FACTS**

1.      DM Plaintiffs were scheduled to work forty-seven and one half (47.5) hours per week. (Lauren Alvarez Dep. 28:8-22).

2.      DM Plaintiffs almost exclusively worked in excess of forty hours per week. (*See e.g.* **Exhibit D**).

3.      DM Plaintiffs were regularly scheduled to work five days per week – and, if they

worked a sixth day in the week, they would be compensated (along with their half-time overtime pay) with an additional paid-time-off day for the sixth day of work. (*See* Alvarez Trans., pp. 54:15-55:3).

4.      DM Plaintiffs were paid one-half of their purported "regular rate" of pay for overtime hours worked. (*See e.g.* **Exhibit** D).

5.      DM Plaintiffs received an additional compensation, in the form of additional paid-time-off, for all days in which they worked on an open paid holiday or scheduled days off. [*See* Alvarez Trans., p. 51:8-12; 54:19-55:7].

6.      BBB's "Department Level Manager Compensation" sets forth that workers would receive "this base salary for each week I work, whether or not I work 40 hours in that week, *subject to the Company's sick day and leave policies*." (*See e.g.*, **Exhibit G** (emphasis added)).


Respectfully submitted,

/s/ James M. Murphy
James M. Murphy