## SETTLEMENT AND GENERAL RELEASE AGREEMENT

This Settlement and General Release Agreement ("Agreement") is made by and between Eleni Miglis ("Miglis"), Hector Caraballo ("Caraballo"), Bryan LaForest ("LaForest"), Guy-Robert Desir ("Desir"), Radica Kutwaru ("Kutwaru"), Andrew Certoma ("Certoma"), John Cutajar ("Cutajar"), Alexis Carree ("Carree") collectively ("Plaintiffs"), and Bed Bath & Beyond Inc. ("BBB") (collectively referred to as the "Parties").

WHEREAS on October 16, 2016, Miglis commenced a lawsuit by filing a complaint in the United States District Court for the Southern District of New York entitled *Thomas et al. v. Bed Bath & Beyond Inc.*,16-CV-8160 ("the Lawsuit"); and

WHEREAS the complaint in the Lawsuit alleges certain violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* ("FLSA") as well as the New York Labor Law ("NYLL"); and

WHEREAS on November 18, 2016, the First Amended Complaint was filed; and

WHEREAS on June 28, 2017, the Second Amended Complaint (the "SAC") was filed; and

WHEREAS on May 10, 2018, the parties agreed to amend the case caption to *Miglis et al. v. Bed Bath & Beyond Inc.*,16-CV-8160; and

WHEREAS Caraballo filed an opt-in consent to join the Lawsuit on February 2, 2017; and

WHEREAS LaForest filed an opt-in consent to join the Lawsuit on April 26, 2017; and

WHEREAS Desir filed an opt-in consent to join the Lawsuit on April 26, 2017; and

WHEREAS Kutwaru filed an opt-in consent to join the Lawsuit on April 26, 2017; and

WHEREAS Certoma filed an opt-in consent to join the Lawsuit on May 4, 2017; and

WHEREAS Cutajar filed an opt-in consent to join the Lawsuit on June 22, 2017; and

WHEREAS Carree filed an opt-in consent to join the Lawsuit on June 23, 2017; and

WHEREAS the parties, though their counsel have since the filing of the lawsuit engaged in discovery with respect to all claims set forth in the Lawsuit; and

WHEREAS the parties participated in a Settlement Conference before Magistrate Judge Moses on February 21, 2019, where they reached an agreement to resolve this matter; and

WHEREAS BBB expressly denies any and all allegations made or which could have been made in the Lawsuit, and also expressly denies that it violated any law, statute, contract, rule, policy or duty owed Plaintiffs or engaged in any conduct that was wrong or improper and contends that it has complied with all state, local and federal laws, rules and regulations and any other obligations, including FLSA and NYLL, as it or they relate to the employment of Plaintiffs or any similarly situated individual; and

WHEREAS as a result of counsel discussions it appears there exists a bona fide dispute between the parties regarding the amount of compensation alleged to be due; and

WHEREAS the Plaintiffs and BBB desire to avoid the cost and expense of further legal proceedings and to settle and resolve all existing and potential disputes, actions, lawsuits, complaints, charges, and claims of any nature or description the Plaintiffs currently have, had or currently could have against BBB or its current or former employees (except as specifically set forth herein), without any admission of liability or wrongdoing by BBB or any of BBB's current or former employees, and without any party being a prevailing party for any purposes in the Lawsuit, with respect to claims asserted in the Lawsuit or otherwise.

Now therefore in consideration of the mutual covenants set forth herein, the Plaintiffs and BBB hereby agree as follows:

1.      Plaintiffs will withdraw with prejudice the claims brought in the Lawsuit based on their former roles as Assistant Store Managers and hereby direct their counsel of record in the

Lawsuit to withdraw those claims with prejudice and execute a stipulation of Dismissal with Prejudice in the form attached as Exhibit 1 to be filed with the Court along with this Agreement. It is specifically understood and agreed that claims any Plaintiffs herein may have had arising out of their employment by BBB as a Department Manager receiving pay based on the Fluctuating Work Week methodology, as alleged in the SAC in the Lawsuit, and only such claims ("the Excluded Claims") shall not be settled and released however.

       2.     In consideration of Paragraph 1 and 7 hereof in particular and the mutual covenants contained herein in general, BBB shall pay the Plaintiffs a total of $237,500.00.  This shall be payable as follows:

       (a)    a payment by BBB check made out to Miglis in the gross amount of $24,565.34 (who shall supply the Company a completed Form W-4 as well as a completed Form W-9 within three (3) business days from the Effective Date, and from which shall be deducted all applicable taxes and withholdings) to be reported on IRS Form W-2 in full and final settlement of any and all claims Miglis currently has, had or currently could have had arising out of or in connection with her employment by BBB, including without limitation 1) any and all claims relating in any way to the manner, method, amount, calculation, or timing of payment of any wage, tip, or other compensation owed or claimed to be owed to Miglis on account of or in connection with her employment with BBB but not the Excluded Claims; and 2) any and all claims for incentive payments in connection with the Lawsuit;

       (b)    a payment by BBB check made out to Caraballo in the gross amount of $18, 217.00 (who shall supply the Company a completed Form W-4 as well as a completed Form W-9 within three (3) business days from the Effective Date, and from which shall be deducted all applicable taxes and withholdings) to be reported on IRS Form W-2 in full and final settlement of any and all claims Caraballo currently has, had or currently could have had arising out of or in

connection with his employment by BBB, including without limitation 1) any and all claims relating in any way to the manner, method, amount, calculation, or timing of payment of any wage, tip, or other compensation owed or claimed to be owed to Caraballo on account of or in connection with his employment with BBB but not the Excluded Claims; and 2) any and all claims for incentive payments in connection with the Lawsuit;

(c)     a payment by BBB check made out to LaForest in the gross amount of $39,608.16  (who shall supply the Company a completed Form W-4 as well as a completed Form W-9 within three (3) business days from the Effective Date), and from which shall be deducted all applicable taxes and withholdings) to be reported on IRS Form W-2 in full and final settlement of any and all claims LaForest currently has, had or currently could have had arising out of or in connection with his employment by BBB, including without limitation 1) any and all claims relating in any way to the manner, method, amount, calculation, or timing of payment of any wage, tip, or other compensation owed or claimed to be owed to LaForest on account of or in connection with his employment with BBB but not the Excluded Claims; and 2) any and all claims for incentive payments in connection with the Lawsuit;

(d)     a payment by BBB check made out to Desir in the gross amount of $18,078.99  (who shall supply the Company a completed Form W-4 as well as a completed Form W-9 within three (3) business days from the Effective Date), and from which shall be deducted all applicable taxes and withholdings) to be reported on IRS Form W-2 in full and final settlement of any and all claims Desir currently has, had or currently could have had arising out of or in connection with his employment by BBB, including without limitation 1) any and all claims relating in any way to the manner, method, amount, calculation, or timing of payment of any wage, tip, or other compensation owed or claimed to be owed to Desir on account of or in

4

connection with his employment with BBB but not the Excluded Claims; and 2) any and all claims for incentive payments in connection with the Lawsuit;

(e)     a payment by BBB check made out to Kutwaru in the gross amount of $10,074.55  (who shall supply the Company a completed Form W-4 as well as a Form W-9 within three (3) business days from the Effective Date), and from which shall be deducted all applicable taxes and withholdings) to be reported on IRS Form W-2 in full and final settlement of any and all claims Kutwaru currently has, had or currently could have had arising out of or in connection with her employment by BBB, including without limitation 1) any and all claims relating in any way to the manner, method, amount, calculation, or timing of payment of any wage, tip, or other compensation owed or claimed to be owed to Kutwaru on account of or in connection with her employment with BBB but not the Excluded Claims; and 2) any and all claims for incentive payments in connection with the Lawsuit;

(f)     a payment by BBB check made out to Certoma in the gross amount of $7,590.41  (who shall supply the Company a completed Form W-4 as well as a completed Form W-9 within three (3) business days from the Effective Date), and from which shall be deducted all applicable taxes and withholdings) to be reported on IRS Form W-2 in full and final settlement of any and all claims Certoma currently has, had or currently could have had arising out of or in connection with his employment by BBB, including without limitation 1) any and all claims relating in any way to the manner, method, amount, calculation, or timing of payment of any wage, tip, or other compensation owed or claimed to be owed to Certoma on account of or in connection with his employment with BBB but not the Excluded Claims; and 2) any and all claims for incentive payments in connection with the Lawsuit;

(g)     a payment by BBB check made out to Cutajar in the gross amount of $24,427. 33 (who shall supply the Company a completed Form W-4 as well as a completed Form

W-9 within three (3) business days from the Effective Date), and from which shall be deducted all applicable taxes and withholdings) to be reported on IRS Form W-2 in full and final settlement of any and all claims Cutajar currently has, had or currently could have had arising out of or in connection with his employment by BBB, including without limitation 1) any and all claims relating in any way to the manner, method, amount, calculation, or timing of payment of any wage, tip, or other compensation owed or claimed to be owed to Cutajar on account of or in connection with his employment with BBB but not the Excluded Claims; and 2) any and all claims for incentive payments in connection with the Lawsuit;

(h)      a payment by BBB check made out to Carree in the gross amount of $14,628.80 (who shall supply the Company a completed Form W-4 as well as a completed Form W-9) within three (3) business days from the Effective Date), and from which shall be deducted all applicable taxes and withholdings) to be reported on IRS Form W-2 in full and final settlement of any and all claims Carree currently has, had or currently could have had arising out of or in connection with her employment by BBB, including without limitation 1) any and all claims relating in any way to the manner, method, amount, calculation, or timing of payment of any wage, tip, or other compensation owed or claimed to be owed to Carree on account of or in connection with her employment with BBB but not the Excluded Claims; and 2) any and all claims for incentive payments in connection with the Lawsuit;

(i)      a payment by BBB check made out to Hang & Associates, PLLC in the amount of $80,309.41, of which $78, 595.29 as attorney's fees and $1, 714. 12 as costs, for which a form 1099 shall be issued to Hang & Associates, PLLC, (which shall supply the Company a completed Form W-9 within three (3) business days from the Effective Date), in full and final settlement of any and all attorneys' fees the Plaintiffs currently have, had or currently could have had against BBB that were incurred by the Hang & Associates, PLLC law firm in

6

connection with prosecuting the Plaintiffs' claims brought in the Lawsuit based on their former roles as Assistant Store Managers; and

(j)     All such payments to be sent by BBB to Hang & Associates within eighteen (18) business days of the Effective Date of this Agreement, as defined in Paragraph 17, provided that each Plaintiff has provided a completed Form W-4 as well as a completed Form W-9 within three (3) business days from the Effective Date, and provided that Hang & Associates, PLLC has provided a completed Form W-9 within three (3) business days from the Effective Date. In the event Hang & Associates fails to timely provide a completed Form W-9 and any Plaintiff fails to timely provide a completed Form W-4 and/or Form W-9, that Plaintiff's payment shall be due within fifteen (15) business days of receipt of the aforementioned completed tax forms.

3.     The Parties agree that each is responsible for its or his own tax reporting and filing with the appropriate authorities, and that the Plaintiffs are solely responsible for any and all tax liabilities and payment of taxes due as a consequence of these payments to them under this Agreement.  In the event that the Plaintiffs fail to pay such taxes owed by them, and as a result the IRS or any other federal, state, or local taxing authority (collectively, "Taxing Authorities") seek to hold BBB liable for payment of such taxes, including any penalties and interest, the Plaintiffs agree to indemnify and hold harmless BBB from and against any such liability.

4.     Further, the Plaintiffs expressly indemnify and hold BBB harmless with respect to any tax liabilities or penalties imposed on them or BBB by the Taxing Authorities associated with the payments pursuant to Paragraph 2, it being understood and agreed that BBB will follow its normal procedures with respect to any tax reporting obligations arising out of or in connection with this Agreement.

5.     The Plaintiffs understand and agree that they are receiving compensation, payments and/or benefits and agreements under this Agreement that are in excess of those to which they are now entitled from BBB and BBB Releasees (as defined in Paragraph 7), and that such compensation, payments and benefits are being provided to them in consideration of their acceptance and execution of, and in reliance upon their representations in, this Agreement. The Plaintiffs acknowledge that such consideration is adequate and satisfactory to them.

6.     Except for the payments and benefits provided for in Paragraph 2, and for the payments subject to the Excluded Claims, the Plaintiffs acknowledge and agree that through and including the Effective Date of this Agreement as defined in Paragraph 17 that they are entitled to no other compensation, payments, or benefits from BBB of any kind or nature whatsoever, including, without limitation, for salary, tips, severance pay, fringe benefits, vacation pay, bonuses, incentive compensation, sick pay, insurance, disability insurance, medical benefits, paid or unpaid leave, or any other allowance.

7.     (a) In further consideration of the covenants undertaken herein by BBB, including, without limitation, the payments described in Paragraph 2, the Plaintiffs, each individually and collectively, hereby waive, release and forever discharge BBB, including its predecessors, parent, subsidiaries, affiliates, and related companies, and all of its and their respective past and present employees, directors, officers, shareholders, attorneys, representatives, insurers, agents, successors, and assigns (individually and collectively "BBB Releasees") from and with respect to any and all legally waivable claims, grievances, injuries, controversies, agreements, covenants, promises, debts, accounts, actions, causes of action, suits, arbitrations, sums of money, attorneys' fees and costs, except those incurred in connection with the Excluded Claims in the Lawsuit, damages, or any right to any monetary recovery or any other personal relief, whether known or unknown, in law or in equity, by contract, tort or

8

pursuant to federal, state or local statute, regulation, ordinance or common law, which the Plaintiffs now have, ever had, or now could have, based upon or arising from any fact or set of facts, whether known or unknown to the Plaintiffs, from the beginning of time until the Effective Date of this Agreement, as defined in Paragraph 17, but not the Excluded Claims.  Without limiting the generality of the foregoing, this waiver, release, and discharge includes any claim or right asserted or which could have been asserted in the Lawsuit and/or based upon or arising under any federal, state or local fair employment practices, equal opportunity, or wage and hour laws, including, but not limited to, Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, the New York City Human Rights Law, the Americans with Disabilities Act, the Age Discrimination in Employment Act, 42 U.S.C. Section 1981, the Equal Pay Act, the Fair Labor Standards Act, the National Labor Relations Act, the New York Labor Law, and the Employee Retirement Income Security Act, including all amendments thereto, but not the Excluded Claims.

(b)     Notwithstanding the generality of the foregoing, nothing herein constitutes a release or waiver by the Plaintiffs of: (i) any claim or right that may arise after the Effective Date of this Agreement, as defined in Paragraph 17; (ii) any claim or right the Plaintiffs may have under this Agreement; or (iii) the Excluded Claims.

(c)     Plaintiffs represent and affirm that (i) except for the Lawsuit, they have not commenced, maintained, prosecuted, or participated in any complaint, claim or action against BBB and/or the BBB Releasees, in any court or before any administrative, investigative or arbitral body or agency, (ii) that to the best of the Plaintiffs' knowledge and beliefs, except for the Excluded Claims, there is no outstanding claim or demand for relief against BBB and/or the BBB Releasees by the Plaintiffs or any person, organization, or entity acting on Plaintiffs' behalf, and (iii) that the Plaintiffs will not in the future commence, maintain, prosecute or

9

participate in any complaint, claim of any nature or description or action, arising out of or relating in any way to their employment relationship with BBB against BBB or any BBB Releasee, through the Effective Date of the Agreement as defined in Paragraph 17 in any court or before any administrative, investigative or arbitratial body or agency, but not the Excluded Claims.

(d)     Notwithstanding the foregoing, this Agreement (i) does not extend to those rights which as a matter of law cannot be waived; and (ii) does not limit the right to file a charge with federal, local, or state governmental agencies ("Government Agencies"), or participate in an investigation or proceeding that may be conducted by any Government Agencies (but the Plaintiffs do, pursuant to this Agreement, waive the right to obtain any monetary damages resulting from any action or proceeding that may be brought by any state or federal agency). This Agreement does not limit Plaintiffs' ability to communicate with the Securities and Exchange Commission (SEC) or otherwise participate in any investigation or proceeding that may be conducted by the SEC, including providing documents or other information, without notice to the Company. This Agreement does not limit Plaintiffs' right to receive an award for information provided to the SEC. This Agreement does not limit Plaintiffs' right to continue prosecuting the Excluded Claims.

(e)     Nothing in this Agreement in intended to restrict Plaintiffs' from exercising rights under the Defend Trade Secrets Act of 2016, which provides that an individual shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made: (1) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney, and solely for the purpose of reporting or investigating a suspected violation of law; or (2) in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

8.      Neither this Agreement, nor anything contained in it, shall constitute or shall be used as an admission by BBB or any BBB Releasee or as evidence of any liability or wrongdoing by BBB or any BBB Releasee whatsoever.  Neither this Agreement, nor anything contained in it, shall be introduced in any proceeding in any forum of any nature or description except: i) as set forth in paragraph 17; ii) to enforce this Agreement; or iii) to defend against any claim relating to the subject matter of the releases contained herein or as required by court order, subpoena, or other legal process. Such introduction under these exceptions shall be pursuant to an appropriate order protecting its confidentiality.

9.      For employment reference information, Plaintiffs agree to direct prospective employers or others seeking employment verification information regarding him/her to the Work Number (an automated system administered by a third party [800-367-5690 or www.theworknumber.com] using Defendant's Employer Code 13452), or such other third party as Defendant may contract with in the future, which will provide Plaintiffs' dates of employment, last position held and, with Plaintiffs' express authorization, salary information

10.     The rights and obligations of the parties hereunder shall be construed and enforced in accordance with, and shall be governed by, the laws of the State of New York, without regard to principles of conflict of laws.

11.     This Agreement constitutes and contains the entire agreement and understanding between the Plaintiffs and BBB concerning the subject matters addressed herein and supersedes and replaces all prior negotiations and all agreements proposed or otherwise, whether written or oral, concerning the subject matter hereof.  This is an integrated document.

12.     This Agreement may be executed in counterparts, and each counterpart, when executed, shall have the efficacy of a signed original.  Photographic and facsimiled copies of such signed counterparts may be used in lieu of the originals for any purpose.

13.    If any provision of this Agreement or the application thereof is held invalid, such invalidation shall not affect other provisions or applications of this Agreement and to this end, the provisions of this Agreement are declared to be severable, provided, however, that if the release provided for in Paragraph 7 or any part thereof is declared or adjudged invalid or unenforceable for any reason, as a result of any challenge to its validity or enforceability initiated or maintained by or participated in by the Plaintiffs, (or anyone acting for or on their behalf) the entire Agreement shall be a nullity and all consideration provided in this Agreement shall be repaid by the Plaintiffs to BBB, and provided further that if the Release provided for in Paragraph 7 is declared or adjudged invalid or unenforceable for any reason, as a result of any challenge to its validity or enforceability not initiated or maintained or participated in by the Plaintiffs or anyone acting on their behalf, the entire Agreement shall be a nullity and BBB may pursue a claim against the Plaintiffs for repayment of the consideration provided in this Agreement.

14.    Each party has cooperated in the drafting and preparation of this Agreement. Hence, in any construction or interpretation of this Agreement, the same shall not be construed against any party on the basis that the party was the drafter.

15.    This Agreement cannot be modified except in writing signed by all parties.

16.    Plaintiffs hereby acknowledge:

(a)    They have been advised to consult with an attorney before signing this Agreement;

(b)    They have obtained independent legal advice from an attorney of their choice with respect to this Agreement, or have knowingly and voluntarily chosen not to do so;

(c)    They freely, voluntarily, and knowingly entered into this Agreement after due consideration;

(d)      They have had sufficient time to review and consider this Agreement; and

(e)      In exchange for their waivers, releases and commitments set forth herein, including their waiver and release of all claims arising under the Age Discrimination in Employment Act, the payments, benefits and other considerations that they are receiving pursuant to this Agreement exceed any payment, benefit or other thing of value to which they would otherwise be entitled, and are just and sufficient consideration for the waivers, releases, and commitments set forth herein.

17.      Provided that none of the Plaintiffs has revoked their assent to this Agreement, the parties shall file this Agreement with the Court. This Agreement shall become effective upon the issuance of an Order fully, finally, and unconditionally (1) approving this Agreement; (2) extinguishing claims (but not the Excluded Claims) against the BBB Releasees; and (3) dismissing the claims based on Plaintiffs' employment as Assistant Store Managers with prejudice (but not the Excluded Claims) (the "Effective Date").

18.      This Agreement and Release shall inure to the benefit of and shall be binding upon BBB, its successors and assigns, and any entity with which BBB may merge or consolidate or to which BBB may sell all or substantially all its assets.  Plaintiffs agree that they may not sell or otherwise assign rights, obligations or benefits under this Agreement and any attempt to do so shall be void; Plaintiffs further covenants and agree that they have not assigned or otherwise transferred any claim released in this Agreement, in whole or party, to any person or entity.

19.      Plaintiffs each and all agree(s) that he and/or they shall not solicit current or former employees of BBB to pursue claims against BBB, or its affiliated companies.  Plaintiffs' Counsel represents and warrants that neither the firm nor any attorneys affiliated with the firm (individually, together, or in conjunction with other attorneys) currently represent any other

13

employee or former employee of BBB in connection with an employment-related issue against BBB, but not the Excluded Claims.

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, have caused this Agreement to be executed as of the dates set for below.

_____        _____
Eleni Miglis                                                             Date

_____        _____
Hector Caraballo                                                     Date

_____        _____
Bryan LaForest                                                       Date

_____        _____
Guy-Robert Desir                                                    Date

_____        _____
Radica Kutwaru                                                     Date

_____        _____
Andrew Certoma                                                    Date

_____        _____
John Cutajar                                                           Date

_____        _____
Alexis Carree                                                         Date


BED BATH & BEYOND INC.
By: _____        _____
      Name: Allan N Rauch                                          March 11, 2019
      Title: General Counsel                                        Date


HANG & ASSOCIATES, PLLC
*Attorneys for Plaintiffs*
By: _____        _____
      Name: Jian Hang                                               3/14/2019
      Title: Attorneys For plaintiffs                          Date

15

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, have caused this Agreement to be executed as of the dates set for below.

_____     _____
Eleni Miglis                        Date

_____     _____
Hector Caraballo                    Date

_____     _____
Bryan LaForest                      Date

_____     _____
Guy-Robert Desir                    Date

_____     _____
Radica Kutwaru                      Date

_____     _____
Andrew Certoma                      Date

_____     _____
John Cutajar                        Date   3/11/19

_____     _____
Alexis Carree                       Date


BED BATH & BEYOND INC.

By:
    _____     _____
    Name:                               Date
    Title:


HANG & ASSOCIATES, PLLC
*Attorneys for Plaintiffs*

By:
    _____
    Name:                               _____
    Title:                              Date

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, have caused this Agreement to be executed as of the dates set for below.

| | |
|---|---|
| Eleni Miglis | Date |
| Hector Caraballo | Date    03-14-2019 |
| Bryan LaForest | Date |
| Guy-Robert Desir | Date |
| Radica Kutwaru | Date |
| Andrew Certoma | Date |
| John Cutajar | Date |
| Alexis Carree | Date |

BED BATH & BEYOND INC.

By:_____
    Name:
    Title:                                        Date


HANG & ASSOCIATES, PLLC
*Attorneys for Plaintiffs*

By:_____
    Name:
    Title:                                        Date

15

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, have caused this Agreement to be executed as of the dates set for below.

_____        _____
Eleni Miglis                            Date

_____        _____
Hector Caraballo                        Date

_____        _____
Bryan LaForest                          Date

_____        _____
Guy-Robert Desir                        Date

_____        _____
Radica Kutwaru                          Date

_____        _____
Andrew Certoma                          Date

_____        _____
John Cutajar                            Date      3/11/19

_____        _____
Alexis Carree                           Date


BED BATH & BEYOND INC.

By:_____
    Name:                           _____
    Title:                          Date


HANG & ASSOCIATES, PLLC
*Attorneys for Plaintiffs*

By:_____
    Name:                           _____
    Title:                          Date

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, have

caused this Agreement to be executed as of the dates set for below.

_____     _____
Eleni Miglis                    Date


_____     _____
Hector Caraballo                Date

_____     3 . 11 . 19
Bryan LaForest                  Date


_____     _____
Guy-Robert Desir                Date


_____     _____
Radica Kutwaru                  Date


_____     _____
Andrew Certoma                  Date


_____     _____
John Cutajar                    Date


_____     _____
Alexis Carree                   Date



BED BATH & BEYOND INC.

By:_____     _____
    Name:                          Date
    Title:



HANG & ASSOCIATES, PLLC
*Attorneys for Plaintiffs*

By:_____     _____
    Name:                          Date
    Title:

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, have
caused this Agreement to be executed as of the dates set for below.

_____     _____
Eleni Miglis                        Date

_____     _____
Hector Caraballo                    Date

_____     _____
Bryan LaForest                      Date

_____     _____
Guy-Robert Desir                    Date

_____     _____
Radica Kutwaru                      Date

_____     _____
Andrew Certoma                      Date    3/11/2019

_____     _____
John Cutajar                        Date

_____     _____
Alexis Carree                       Date


BED BATH & BEYOND INC.

By:_____     _____
   Name:                            Date
   Title:


HANG & ASSOCIATES, PLLC
*Attorneys for Plaintiffs*

By:_____     _____
   Name:                            Date
   Title:

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, have caused this Agreement to be executed as of the dates set for below.

| | |
|---|---|
| _____ | _____ |
| Eleni Miglis | Date |
| _____ | _____ |
| Hector Caraballo | Date |
| _____ | _____ |
| Bryan LaForest | Date |
| _____ | _____ |
| Guy-Robert Desir | Date |
| _____ | 03/11/2019 |
| Radica Kutwaru | Date |
| _____ | _____ |
| Andrew Certoma | Date |
| _____ | _____ |
| John Cutajar | Date |
| _____ | _____ |
| Alexis Carree | Date |

BED BATH & BEYOND INC.

By:_____
    Name:                _____
    Title:                 Date

HANG & ASSOCIATES, PLLC
*Attorneys for Plaintiffs*

By:_____
    Name:                _____
    Title:                 Date

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, have caused this Agreement to be executed as of the dates set for below.

_____     _____
Eleni Miglis                  Date

_____     _____
Hector Caraballo              Date

_____     _____
Bryan LaForest                Date

_____     _____
Guy-Robert Desir              Date                3/11/19

_____     _____
Radica Kutwaru                Date

_____     _____
Andrew Certoma                Date

_____     _____
John Cutajar                  Date

_____     _____
Alexis Carree                 Date


BED BATH & BEYOND INC.

By:_____    _____
      Name:                   Date
      Title:


HANG & ASSOCIATES, PLLC
*Attorneys for Plaintiffs*

By:_____    _____
      Name:                   Date
      Title:

IN WITNESS WHEREOF, the parties hereto, intending to be legally bound, have caused this Agreement to be executed as of the dates set for below.

_____          3/11/2019
Eleni Miglis                               Date

_____          _____
Hector Caraballo                           Date

_____          _____
Bryan LaForest                             Date

_____          _____
Guy-Robert Desir                           Date

_____          _____
Radica Kutwaru                             Date

_____          _____
Andrew Certoma                             Date

_____          _____
John Cutajar                               Date

_____          _____
Alexis Carree                              Date


BED BATH & BEYOND INC.

By:_____          _____
    Name:                                  Date
    Title:


HANG & ASSOCIATES, PLLC
*Attorneys for Plaintiffs*

By:_____          _____
    Name:                                  Date
    Title: