UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELENI MIGLIS, et al.,

        Plaintiffs,

-against-

BED BATH AND BEYOND, INC.,

        Defendant.

1:16-CV-08160 (PAE)

**ORDER**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/26/19

**BARBARA MOSES, United States Magistrate Judge**.

      The Court has received and reviewed the parties' joint letter dated March 22, 2019 (Dkt. No. 236), seeking approval of their proposed Settlement and Release Agreement (Agreement) (Dkt. No. 236-1) pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). For the reasons that follow, the application will be denied, without prejudice to renewal after the parties have modified ¶¶ 7 and 19 of the Agreement in accordance with this Order.

### Background

      Plaintiffs Eleni Miglis, Hector Caraballo, Bryan LaForest, Guy-Robert Desir, Radica Kutwaru, Andrew Certoma, John Cutajar, and Alexis Carree were Assistant Store Managers (ASMs) at stores operated by defendant Bed, Bath & Beyond, Inc. (BBB) in New York. They brought (or opted into) this action under the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL), alleging principally that defendant misclassified them as "exempt" under the federal and state statutes and consequently failed to pay them overtime compensation for their hours in excess of 40 per week. *See* Second Am. Compl. (Dkt. No. 90), ¶¶ 15-18, 103.[1]

      The parties reached agreement on the material terms of the Agreement at a settlement conference supervised by the undersigned Magistrate Judge on February 21, 2019. (*See* Dkt. Nos. 227, 231.) Thereafter, the parties consented to disposition of their motion for approval of the Agreement by a Magistrate Judge. (Dkt. No. 237.)

### The Agreement

      The Agreement requires defendant BBB to pay a total of $237,500 to plaintiffs and their attorneys in full settlement of plaintiffs' FLSA and NYLL claims arising out of their work for BBB as ASMs. Ag. ¶¶ 1-2. The attorneys' fee portion will be $78,595.29, which is one-third of the net settlement amount after reimbursement of costs in the amount of $1,714.12. *Id.* ¶ 2(i).

---

[1] Some of the current plaintiffs also served as Department Managers (DMs) at BBB stores, *see* Ag. ¶ 1, and in that capacity sought to challenge defendant's use of a "fluctuating work week." *See* Second Am. Compl. ¶¶ 5-9, 102. Those claims were dismissed on summary judgment on February 21, 2018 (Dkt. No. 177), and are excluded from the scope of the Agreement. *See* Ag. ¶ 1.

The Agreement includes a one-way general release whereby the plaintiffs will "waive, release and forever discharge BBB, including its predecessors, parent, subsidiaries, affiliates, and related companies, and all of its and their respective past and present employees, directors, officers, shareholders, attorneys, representatives, insurers, agents, successors, and assigns . . . from and with respect to any and all legally waivable claims, grievances, injuries, controversies, agreements, covenants, promises, debts, accounts, actions, causes of action, suits, arbitrations, sums of money, attorneys' fees and costs . . . damages, or any right to any monetary recovery or any other personal relief, whether known or unknown, in law or in equity, by contract, tort or pursuant to federal, state or local statute, regulation, ordinance or common law, which the Plaintiffs now have, ever had, or now could have, based upon or arising from any fact or set of facts, whether known or unknown to the Plaintiffs, from the beginning of time until the Effective Date of this Agreement." Ag. ¶ 7(a). The release does *not* extend to: (i) claims arising after the Agreement's effective date; (ii) claims under the Agreement itself; or (ii) the "Excluded Claims," that is, claims arising out of plaintiffs' employment as DMs receiving pay based on "the Fluctuating Work Week methodology." *Id*. ¶¶ 1, 7(b). The release also excludes "rights which as a matter of law cannot be waived" and "does not limit" the plaintiffs' rights to file a charge with an appropriate government agency or participate in a government investigation or proceeding. *Id*. ¶ 7(d).

The Agreement does not contain any confidentiality or non-disparagement clause. However, it provides that plaintiffs "shall not solicit current or former employees of BBB to pursue claims against BBB, or its affiliated companies." Ag. ¶ 19.

The Agreement also contains a severability clause: "If any provision of this Agreement . . . is held invalid, such invalidation shall not affect other provisions or applications of this Agreement and to this end, the provisions of this Agreement are declared to be severable." Ag. ¶ 13. However, the severability clause does not extend to the general release in ¶ 7. Instead, the Agreement provides: "if the Release provided for in Paragraph 7 is declared or adjudged invalid or unenforceable for any reason, as a result of any challenge to its validity or enforceability not initiated or maintained or participated in by the Plaintiffs or anyone acting on their behalf, the entire Agreement shall be a nullity and BBB may pursue a claim against the Plaintiffs for repayment of the consideration provided in this Agreement." Ag. ¶ 13.

## Analysis

The Court concludes that the terms of the Agreement are fair and reasonable as required by *Cheeks*, 796 F.3d at 206, except for the release and solicitation provisions in ¶¶ 7 and 19.

The Court cannot approve the Agreement's release provision, in its current form, for two reasons. First, the definition of "BBB Releasees" – which includes defendant's "predecessors, parent, subsidiaries, affiliates, and related companies, and all of its and their respective past and present employees, directors, officers, shareholders, attorneys, representatives, insurers, agents, successors, and assigns" – is overly broad. As written, the Agreement could be used, for example, to bar any claim by a plaintiff against any individual or institutional investor of BBB, a company listed on the NASDAQ stock exchange. "To pass muster under *Cheeks*," the release "must be limited to include only . . . the corporate defendants' predecessors and successors, and any other person or entity that plaintiffs claim, or may claim, to have been their employer for purposes of

their work at" BBB. *See Garcia v. Good for Life by 81, Inc.*, 2018 WL 3559171, at *4 (S.D.N.Y. July 12, 2018) (Moses. M.J.) (providing an example of acceptable language); *Lopez v. Poko-St. Ann L.P.*, 176 F. Supp. 3d 340, 346 (S.D.N.Y. 2016) (same)

Second, the release itself is broad – extending well beyond the wage and hour claims being settled – but runs only in favor of defendant. This Court's practice is to approve general releases in FLSA settlements, but only if (i) the plaintiffs no longer work for the defendants and (ii) the general release is mutual. *See Cionca v. Interactive Realty, LLC*, 2016 WL 3440554, at *3-4 (S.D.N.Y. June 10, 2016) (Moses, M.J.); *Weng v. T&W Rest., Inc.*, 2016 WL 3566849, at *5 (S.D.N.Y. June 22, 2016) (Moses, M.J.). If defendant is unwilling to reciprocate, plaintiffs' release should be limited to their wage and hour claims. *See, e.g., De Jesus Galindo v. BLL Rest. Corp.*, 2018 WL 1684412, at *2 (S.D.N.Y. Apr. 6, 2018) ("the general release provision is impermissible because it is not mutual").

Additionally, the Court cannot approve the provision prohibiting plaintiffs from soliciting other current or former employees of BBB to pursue claims against BBB. Ag. ¶ 19. "To prohibit those who have vindicated their rights from sharing their success with others by threatening their livelihood – whether by denying them the agreed upon settlement money or penalizing them with liquidated damages – undermines the basic purpose of FLSA." *Pena v. San Miguel Transp., Inc.*, 2015 WL 1938144, at *2 (S.D.N.Y. Apr. 7, 2015) (declining to enforce a provision "requiring that plaintiffs refrain from 'encourag[ing] any current or former employee . . . to bring any charge, lawsuit, or legal action against'" defendants).

Were the solicitation prohibition provision the Court's only concern, the Court could modify the Agreement, *sua sponte*, to exclude the offending language from the Agreement, and approve the Agreement as modified. *See, e.g., Garcia*, 2018 WL 3559171, at *5 (relying on a severability clause to approve an FLSA settlement agreement as modified). However, pursuant to paragraph 13 of the Agreement, the Court may not modify the Agreement's release provision without nullifying the entire Agreement. Ag. ¶ 13.

## Conclusion

For the reasons set forth above, I cannot approve the Agreement as fair and reasonable until and unless the parties modify the release in ¶ 7 and remove the employee solicitation clause in ¶ 19 to address the issues outlined above. If the parties wish to do so, they shall submit their revised Agreement (or an appropriate addendum thereto) no later than **April 20, 2019**.

Dated: New York, New York
March 26, 2019

**SO ORDERED.**

**BARBARA MOSES**
**United States Magistrate Judge**